UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WNET, THIRTEEN, FOX TELEVISION STATIONS, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WPIX, INC., UNIVISION TELEVISION GROUP, INC., THE UNIVISION NETWORK LIMITED PARTNERSHIP, and PUBLIC BROADCASTING SERVICE, | Civil Action No. 12-CV-1543 (AJN) [rel. 12-CV-1540 (AJN)] ECF CASE |
| Plaintiffs/Counterclaim Defendants, v. AEREO, INC., f/k/a BAMBOOM LABS, INC., Defendant/Counterclaim Plaintiff. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AEREO, INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendant Aereo, Inc. ("Aereo") submits this memorandum of law in support of its Motion for Partial Judgment on the Pleadings. The "unfair competition" claim (Count III) of the Plaintiffs in *WNET et al. v. Aereo, Inc.*, No. 12-Civ-1543 (the "Fox Plaintiffs"), is squarely preempted by 17 U.S.C. § 301(a), and should be dismissed.

## INTRODUCTION

As the Court is aware, Plaintiffs' principal claims in this case are for copyright infringement. Plaintiffs are television networks, broadcasters, and other content providers whose television programs are broadcast over the air pursuant to license agreements with the American public (through the Federal Communications Commission ("FCC")) that explicitly make these broadcasts available to the public for free. Defendant Aereo provides technology (the "Aereo Technology") that enables members of the public to receive those broadcast signals as intended, to record unique copies of the programming content, and to play their own unique recordings

back to themselves (either immediately or at a later time) so that they can enjoy the benefits of the bargain that the public made with the broadcasters. For their copyright claims, Plaintiffs assert, *inter alia*, that by providing this technology Aereo infringes one of Plaintiffs' "exclusive rights" as copyright holders—the right to make a "public performance" under 17 U.S.C. § 106.

The Fox Plaintiffs have also brought a purported state law claim, *in the alternative*, for "unfair competition." This is a most curious claim. According to the Fox Plaintiffs, *if* this Court rules that Aereo does not engage in a public performance and thus does not infringe the right of copyright established by Congress, *then* Aereo is nonetheless liable under state law for conducting a "private performance." The Fox Plaintiffs are seeking to use state law to expand copyright protection and prohibit a private performance of a copyrighted work.

The Fox Plaintiffs' unfair competition claim is expressly preempted by the copyright preemption statute, 17 U.S.C. §301(a). That section provides that the Copyright Act exclusively governs any claim that "seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law . . . ." *Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Contrary to the Fox Plaintiffs' assertions, this preemption provision does not stop at the exact boundaries of the rights granted by federal law. Consistent with the essential purpose of copyright preemption, this provision prohibits states from augmenting the rights of an author by providing a remedy for conduct that Congress necessarily decided was lawful, such as the *private* performance of a copyrighted work. As the Second Circuit has held, copyright preemption must apply to any state law claim that addresses the same general subject matter as the Section 106 rights of copyright; otherwise "states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of material not meeting federal

statutory standards." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997)

(quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983),

*rev'd on other grounds*, 471 U.S. 539 (1985)).

There can be no claim under state law for the alleged private performance of a

copyrighted work.  Indeed, Professor Nimmer in his well-known copyright treatise identifies an

attempt to extend such protection to *private* performances as the paradigmatic example of a

preempted state law claim.  *See* 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON

COPYRIGHT § 1.01[B][1] (2011).  The Fox Plaintiffs' unfair competition claim accordingly

should be dismissed.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not

to delay trial—a party may move for judgment on the pleadings."  "The same standard applicable

to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed R. Civ. P. 12(c) motions for

judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.

2010).  "Accordingly, a motion under Rule 12(c) for judgment on the pleadings requires the

court to determine 'whether the complaint itself is legally sufficient.'"  *Durabla Mfg. Co. v.

Goodyear Tire & Rubber Co.*, 992 F. Supp. 657, 659 n.1 (S.D.N.Y. 1998) (quoting *Festa v.

Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).  Here, Aereo is entitled to

judgment because the Fox Plaintiffs' unfair competition claim fails as a matter of law.

**I.    THE COPYRIGHT ACT PREEMPTS STATE LAW CLAIMS THAT ASSERT
       RIGHTS EQUIVALENT TO THOSE PROTECTED BY COPYRIGHT LAW**

As indicated, the Copyright Act exclusively governs all claims concerning copyrightable

works that "seek[] to vindicate legal or equitable rights that are equivalent to one of the bundle of

exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch*, 373

F.3d at 305.  Section 301(a) of the Copyright Act provides as follows:

> On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

The purpose of this statute was to promote national uniformity in copyright law, and to

"avoid the practical difficulties of determining and enforcing an author's rights under the

differing laws and in the separate courts of the various States."  H.R. Rep. No. 94-1476, at 129

(1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5745; *see also Barclays Capital Inc. v.

Theflyonthewall.com, Inc.*, 650 F.3d 876, 897 (2d Cir. 2011) ("Indeed, central to the principle of

preemption generally is the value of providing for legal uniformity where Congress has acted

nationally.").

Section 301(a) creates a two-part test for determining whether a state law claim is

preempted by the Copyright Act.  A claim is preempted when "(1) the particular work to which

the claim is being applied falls within the type of works protected by the Copyright Act under 17

U.S.C. §§ 102 and 103"—the so-called "subject matter requirement," and "(2) the claim seeks to

vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights

already protected by copyright law under 17 U.S.C. § 106"—the "general scope requirement."

*Briarpatch*, 373 F.3d at 305.  The first of these, the "subject matter requirement," is not disputed

here, as the Fox Plaintiffs, in bringing their copyright and unfair competition claims, have

asserted that the "works" at issue are of the type protected by the Copyright Act.  Indeed, the Fox

Plaintiffs assert the same underlying "works" as the basis for both claims, and incorporate the allegations describing the works by reference in both claims pleaded in the alternative.

The second requirement—the "general scope requirement"—is also plainly satisfied here. Section 106 establishes that an author's rights in a copyrighted work include the rights of "reproduction, adaptation, *performance*, distribution or display." *Briarpatch*, 373 F.3d at 305 (emphasis added). The Fox Plaintiffs' state law claim here is simply for an allegedly unauthorized "performance"—a private performance—of a copyrighted work. Such a claim manifestly falls within the "general scope" of the copyright laws.[1] *See id.*

## II.   THE FOX PLAINTIFFS' UNFAIR COMPETITION CLAIM IS PREEMPTED

As set forth in their pre-hearing brief, the purported basis for the Fox Plaintiffs' unfair competition claim is that Aereo has somehow "misappropriated" their "property rights" in their over-the-air broadcasts. *See* Initial Pre-Hearing Memorandum on WNET Plaintiffs' Unfair Competition Claim at 2, *WNET et al. v. Aereo, Inc.*, No. 12-Civ-1543 (S.D.N.Y. Mar. 21, 2012), ECF No. 16 (hereinafter *Plaintiffs' Pre-Hearing Brief*). The fundamental flaw in this claim, however, is that the source of Plaintiffs' claimed "property right," federal copyright law, does not provide Plaintiffs with the exclusive right to perform a work privately. Put another way, there simply is no "property right" as the Fox Plaintiffs claim. Plaintiffs cannot avoid this basic logic by pounding the table and lamenting that if they have no "property right" under federal law, then state law ought to step in to vindicate a "property right" that does not exist. Such is the fundamental lesson of the preemption cases, as Plaintiffs' claim falls squarely within the

---

[1]     The case law sometimes addresses whether a particular state law claim includes "extra elements that [render] it qualitatively different from a copyright infringement claim." *Briarpatch*, 373 F.3d at 305. An example of that would be a claim based upon a breach of fiduciary duty. *See id.* at 306. In their pre-hearing brief here, however, the Fox Plaintiffs have not even attempted to invoke the "extra element" rule, as their theory is deeply grounded in copyright—it is based upon the claimed unauthorized performance of an alleged copyrighted work, without more. Indeed, if there were an "extra element" to the Fox Plaintiffs' unfair competition claim, the claim would have been pleaded *in addition* to the copyright claim, not "in the alternative" to it.

"general scope" of federal copyright law.  *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 919 (2d Cir. 1980) ("To the extent that [counterclaim plaintiff's] unfair competition claim seeks protection against [counterclaim defendant's] copying, it is a claim based on a right equivalent to 'exclusive rights within the . . . scope of copyright.'") (citing 17 U.S.C. § 301(a)).

Indeed, both the Second Circuit and this Court have consistently and repeatedly held that unfair competition claims based on the misappropriation of copyrighted or copyrightable works are preempted by the Copyright Act.  *See Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (finding unfair competition and misappropriation claims preempted by Section 301 where they were "based solely on the copying of the protected expression"); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) ("Following this 'extra element' test, we have held that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (unfair competition claim preempted "to the extent it seeks protection against copying of [plaintiff's] book"); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 247 (2d Cir. 1983) ("state law claims that rely on the misappropriation branch of unfair competition are preempted"); *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 322 (S.D.N.Y. 2010) (where unfair competition claim was "essentially a claim for unauthorized use of copyrightable material," claim was preempted).  Because Plaintiffs' unfair competition claim is "essentially a claim for unauthorized use of copyrightable material," *Stadt*, 719 F. Supp. 2d at 322, it is preempted under this long and unbroken line of authority.

### III.     THE FOX PLAINTIFFS MAY NOT ASSERT AN UNFAIR COMPETITION CLAIM MERELY BECAUSE THEY CANNOT ESTABLISH LIABILITY FOR COPYRIGHT INFRINGEMENT

In the face of this settled law holding that unfair competition claims based on the misappropriation of copyrighted material are preempted, the Fox Plaintiffs argue that their unfair competition claim is not preempted because it is necessarily outside the scope of Section 106—which only grants copyright holders the exclusive right to make *public* performances.  Thus, according to the Fox Plaintiffs, "[b]ecause the right to make a 'private' performance is not one of the exclusive rights granted under the Copyright Act, the Copyright Act does not preempt an unfair competition claim arising out of Aereo's misappropriation of plaintiffs' works through any 'private' performances." *Plaintiffs' Pre-Hearing Brief*, at 5.  The essence of their argument is that if they do not have a valid copyright claim under federal law, then they have a valid unfair competition claim under state law based upon exactly the same facts.  Copyright preemption doctrine, however, makes short work of this type of "heads I win, tails you lose" gambit.

By pleading in the alternative in this way, the Fox Plaintiffs suggest that any limitations that Congress creates on federal copyright rights can somehow be overridden by state common law.  But this attempt to use state law to try to expand the scope of copyright protection is precisely what Section 301(a) was intended to guard against.  Under the Fox Plaintiffs' theory, states would be free to create additional rights and protections for copyright owners beyond what is provided in Section 106, thus creating two parallel systems of copyright law: a uniform federal system, and a state system in which the rights accorded to copyright owners vary by state.  This would eviscerate the purpose of the preemption statute, which was to prevent states from expanding the scope of copyright protection, and "to promote national uniformity and [] avoid the practical difficulties of determining and enforcing an author's rights under the differing laws

and in the separate courts of the various States."  H.R. Rep. No. 94-1476, at 129 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5745.

Courts have repeatedly rejected attempts by plaintiffs to use state law to expand copyright protection to cover matters or situations that are not protected under federal copyright law.  In *National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997), for example, the plaintiffs asserted a misappropriation claim against pager transmission of sports scores—which facts and events cannot be protected by copyright—taken from their copyrighted broadcasts of the sporting events.  The Second Circuit held that the plaintiff's misappropriation claim was preempted, noting that "Congress, in extending copyright protection only to the broadcasts and not to the underlying events, intended that the latter be in the public domain. Partial preemption turns that intent on its head by allowing state law to vest exclusive rights in material that Congress intended to be in the public domain and to make unlawful conduct that Congress intended to allow."  *Id.* at 849.

In short, the Fox Plaintiffs' contention that a parallel or analogous state law claim should survive *because* there is no remedy available to a plaintiff under copyright law cannot be squared with the language or the purposes of the preemption statute.  As noted in the legislative history for Section 301(a), "[t]he preemption of rights under State law is complete with respect to any work coming within the scope of the bill, even though the scope of exclusive rights given the work under the bill is narrower than the scope of common law rights in the work might have been."  H.R. Rep. No. 94-1476, at 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5747.

Again, the Fox Plaintiffs' view apparently is that if they lose the copyright claim, they should have an alternative remedy.  This view has been rejected by Professor Nimmer in his

copyright treatise, in which he examines the legislative history and identifies this exact

hypothetical as the paradigmatic example of a preempted claim:

> Is it necessary that a state-created right be exactly coextensive with a federally-created right under Section 106 for the state right to be pre-empted? Suppose the state right is broader than its federal counterpart. For example, the performance right under Section 106(4) is limited to *public* performances. Would a state law that required the author's consent for private as well as public performances be immune from pre-emption because it is not "equivalent" to the federal right? Clearly, Congress intended such a state-created right to be subject to pre-emption. "The preemption of rights under State law is complete . . . even though the scope of exclusive rights given the work under the [Copyright Act] is narrower than the scope of common-law rights in the work might have been."
>
> What if the state-created right is not broader than the comparable federal right, but simply complementary to it? For example, what of a state law that applied solely to private performances, leaving the federal remedy available for public performances? It seems clear that Congress equally intended such a law to be pre-empted. "The intention of Section 301 is to pre-empt and abolish any rights under the common law or statutes of a State that are equivalent to copyright. . ." Thus, the reference to Section 106 in the phrase found in Section 301— "equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106"—should be construed by way of identification and not limitation. Accordingly, if a state-created right is 'within the general scope of copyright,' it is subject to pre-emption, even if the precise contours of the right differ from any of those conferred by Section 106.

1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1] (2011)

(quoting H.R. Rep. No. 94-1476, at 130, 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659,

5746, 5747). Indeed, "[i]t is well established . . . that the scope of *preemption* under § 301 is not

the same as the scope of copyright *protection*, and the former is in fact broader than the latter."

*Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97 Civ. 7763 (TPG), 1999 WL

179603, at *2 (S.D.N.Y. Mar. 31, 1999) (emphases in original). Accordingly, "'[i]t is clear that

failure to meet the required standards for federal [copyright] protection will not negate federal

preemption.' Otherwise, failure to comply with the strictures of the copyright act would expand

the scope of state protection, and this would be contrary to congress's intent." *Computer Assocs.*

*Int'l, Inc. v. Altai, Inc.*, 775 F. Supp. 544, 565 (E.D.N.Y. 1991), *aff'd in part, vacated in part,*

982 F.2d 693 (2d Cir. 1992) (quoting 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B], at 1-22.2) (internal citations omitted); *see also Durham Indus.,* 630 F.2d at 918 (counterclaim plaintiff "cannot achieve by an unfair competition claim what it failed to achieve under its copyright claim"); BRUCE P. KELLER ET AL., COPYRIGHT LAW: A PRACTITIONER'S GUIDE § 11:3:3 (2012) ("The extra-element test also prevents parties from using state-law claims to get around a copyright claim they could not otherwise bring.").

Because the Fox Plaintiffs cannot rely on state law to expand the scope of copyright protection, their unfair competition claim based on "private" performances of copyrighted works is preempted.

## <u>CONCLUSION</u>

For the foregoing reasons, Aereo respectfully requests that this Court dismiss the Fox Plaintiffs' unfair competition claim (Count III), with prejudice.

Dated:  March 29, 2012

Respectfully submitted,

AEREO, INC.

By its attorneys,

/s/ R. David Hosp
R. David Hosp (DH 3344)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
617.570.1000 (tel.)
617.523.1231 (fax)
rhosp@goodwinprocter.com

Of Counsel:

John C. Englander (admitted *pro hac vice*)
Mark S. Puzella (admitted *pro hac vice*)
Yvonne W. Chan (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
617.570.1000 (tel.)
617.523.1231 (fax)
jenglander@goodwinprocter.com
mpuzella@goodwinprocter.com
ychan@goodwinprocter.com

Seth Greenstein (admitted *pro hac vice*)
CONSTANTINE | CANNON, LLP
One Franklin Square
1301 K Street, NW, Suite 1050 East
Washington, DC 20005
202.204.3514 (tel.)
202.204.3500 (fax.)
sgreenstein@constantinecannon.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies, via first class mail, postage pre-paid, will be sent to those indicated as non registered participants on March 29, 2012.

/s/ R. David Hosp