UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WNET, THIRTEEN, FOX TELEVISION STATIONS, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WPIX, INC., UNIVISION TELEVISION GROUP, INC., THE UNIVISION NETWORK LIMITED PARTNERSHIP, and PUBLIC BROADCASTING SERVICE,<br><br>*Plaintiffs,*<br><br>v.<br><br>AEREO, INC. f/k/a BAMBOOM LABS, INC.,<br><br>*Defendant.* | ECF Case<br><br>Case No. 12-civ-1543<br><br>[Related Case No. 12-civ-1540] |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION ON THE WNET PLAINTIFFS' CLAIM IN THE ALTERNATIVE FOR UNFAIR COMPETITION

Steven B. Fabrizio
   (sfabrizio@jenner.com)
Steven R. Englund
   (senglund@jenner.com)
Scott B. Wilkens
   (swilkens@jenner.com)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Washington, DC  20001-4412
Telephone (202) 639-6000
Facsimile (202) 639-6066

David J. Bradford
   (dbradford@jenner.com)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60656-3456
Telephone (312) 222-9350
Facsimile (312) 527-0484

Kenneth D. Klein
   (kklein@jenner.com)
JENNER & BLOCK LLP
633 West 5th Street
Suite 3600
Los Angeles, CA 90071-2054
Telephone (213) 239-5100
Fascimile (213) 239-5199

*Attorneys for Plaintiffs*

Redacted Public Filing

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.     AEREO UNFAIRLY COMPETES WITH THE WNET PLAINTIFFS ........................... 3

      A.     THE WNET PLAINTIFFS DEVOTE SUBSTANTIAL TIME, ENERGY
           AND MONEY TO CREATE THEIR PROGRAMMING AND THE
           BROADCASTING INFRASTRUCTURE THROUGH WHICH THEY
           DELIVER THAT PROGRAMMING. .................................................................. 5

      B.     AEREO MISAPPROPRIATES THE WNET PLAINTIFFS' VALUABLE
           PROPERTY WITHOUT AUTHORITY OR COMPENSATION. ........................ 6

      C.     AEREO'S CONDUCT HARMS PLAINTIFFS, INCLUDING BY USING
           PLAINTIFFS'    WORKS    TO    COMPETE    DIRECTLY    WITH
           PLAINTIFFS. ....................................................................................................... 8

CONCLUSION........................................................................................................................... 14

Redacted Public Filing

# TABLE OF AUTHORITIES

CASES

*Apple Corps, Ltd. v. Adirondack Group*, 124 Misc. 2d 351 (N.Y. Sup. Ct. 1983)..........................4

*Electrolux Corp. v. Val-Worth, Inc.*, 161 N.E.2d 197 (N.Y. 1959) ........................................4

*FTA Market Inc. v. Vevi, Inc.*, No. 11-cv-4789-VB, --- F. Supp. 2d ---, 2012 WL 383945
(S.D.N.Y. Feb. 1, 2012) .................................................................................................4

*ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852 (N.Y. 2007) ..................................................3

*Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786 (N.Y. Sup.
Ct. 1950), *aff'd*, 279 A.D. 632 (1st Dep't 1951)...................................................4, 7

*National Basketball Ass'n v. Motorola. Inc.*, 105 F.3d 841 (2d Cir. 1997)..............................7

*Roy Export Co. v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095 (2d Cir. 1982) .........4, 13

*Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co.*, 3 A.D.2d 227 (1st Dep't 1957) .........5

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ........................................................3

*Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037 (2d Cir. 1980).....................................4

*Telecom, International America Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001) .....................3

STATUTES

17 U.S.C. § 106(4) ...............................................................................................1

OTHER AUTHORITIES

3-15 N.Y. PRACTICE GUIDE: BUSINESS AND COMMERCIAL § 15.08[6][c][i] (2011) ........................3

Redacted Public Filing

## INTRODUCTION

This brief submitted by Plaintiffs WNET, THIRTEEN, Fox Televisions Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, Inc., Univision Television Group, Inc., The Univision Network Limited Partnership, and Public Broadcasting Service (collectively, "The WNET Plaintiffs"), addresses their unfair competition claim under New York common law, which is an alternative to their claim for direct infringement of the public performance right under 17 U.S.C. § 106(4).

The tort of unfair competition "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." The issue before this Court is whether Aereo – which does exactly that, *i.e.* retransmits the WNET Plaintiffs' live broadcast television programming in order to compete against the WNET Plaintiffs and their lawful licensees – is liable for unfair competition. It is undisputed that Aereo does not transmit any television programming of its own (or that it has licensed) to Aereo subscribers. Instead, Aereo captures live broadcast television programming from the WNET Plaintiffs and others and retransmits that content over the Internet in real time, in direct competition with Plaintiffs. *See* Declaration of Michael R Potenza ("Potenza Decl.") Ex. 1 (Kanojia Dep. Tr. 319:12-320:6). Aereo does this despite the fact that Aereo has not sought or obtained a license, or any other form of consent, from the WNET Plaintiffs to use, stream or otherwise exploit their content. *See* Declaration of Sherry Brennan ("Brennan Decl.") ¶ 3; Declaration of Stephen Segaller ("Segaller Decl."), ¶ 3. Through its retransmissions of the WNET Plaintiffs' broadcasts, Aereo has taken the "skill, expenditures and labors" of the WNET Plaintiffs to directly compete with them for viewers. That is the classic formulation of unfair competition under New York law, and it very obviously harms the WNET Plaintiffs in a multitude of ways.

Redacted Public Filing

To be clear, Aereo's conduct amounts to – and should be held to be – a violation of the Copyright Act, because Aereo's commercial retransmission of the WNET Plaintiffs' programming to thousands of New York subscribers is a quintessential "public" performance under the Copyright Act.  Thus, Aereo is infringing a federally protected property right, Plaintiffs' exclusive right to publicly perform their works.  Aereo's attempt to hide behind technological gimmickry (and an interpretation of *Cablevision* that stretches the decision beyond anything the Second Circuit would recognize) must fail.  Concurrently with the filing of this brief, the WNET Plaintiffs and the plaintiffs in the related case *American Broadcasting Companies, Inc. v. Aereo*, 12-cv-1540, are jointly submitting a memorandum demonstrating their entitlement to a preliminary injunction to prevent Aereo's continued infringement of their rights under the Copyright Act ("Plaintiffs' Joint PI Memorandum").

However, in the event this Court were to determine that the performances at issue are non-public, that does not mean Plaintiffs are without a remedy for Aereo's tortious conduct. New York law has long provided a remedy specifically tailored to those who would misappropriate the fruits of another's labor for their own competitive gain.  If the Court determines that Aereo's conduct does not violate the Copyright Act, Aereo's conduct nevertheless violates long-standing New York law prohibiting this precise form of unfair competition.

## ARGUMENT

The same preliminary injunction standard governs Plaintiffs' federal copyright and New York state law unfair competition claims.  Plaintiffs' Joint PI Mem. at 7.  The factual background of Aereo's tortious conduct, and the issues related to irreparable harm, balance of hardships and public interest, are fully addressed in Plaintiffs' Joint PI Memorandum and therefore, to avoid unnecessary repetition, are not addressed separately here.  This memorandum

2

Redacted Public Filing

addresses the WNET Plaintiffs' likelihood of success on the merits of their unfair competition

claim.  Under that element, Plaintiffs are entitled to a preliminary injunction by demonstrating

either a "likelihood of success on the merits" or "sufficiently serious questions going to the

merits to make them fair ground for litigation and a balance of hardships tipping decidedly in

[Plaintiffs'] favor."  *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (quotation marks

omitted; brackets in original).  In Plaintiffs' Joint PI Memorandum, at 34-35, Plaintiffs

demonstrate that the balance of hardships tips decidedly in Plaintiffs' favor, making "sufficiently

serious questions going to the merits" the appropriate standard here.  Nevertheless, Aereo's

unfair competition is so manifest that either merits-related standard is readily met.[1]

## I.    AEREO UNFAIRLY COMPETES WITH THE WNET PLAINTIFFS.

The "'basic principle [of the tort of unfair competition] is that commercial unfairness

should be restrained whenever it appears that there has been a misappropriation, for the

advantage of one person, of a property right belonging to another.'"  *ITC Ltd. v. Punchgini, Inc.*,

880 N.E.2d 852, 859 (N.Y. 2007) (quoting *Vaudable v. Montmartre, Inc.*, 20 Misc. 2d 757, 759

(N.Y. Sup. Ct. 1959)); *Telecom Int'l Am. Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001)

(same).

A plaintiff proves unfair competition by showing "that (1) plaintiff invested substantial

time, effort, and money to establish the misappropriated property, (2) defendant appropriated that

property for its own use without paying compensation, [and] (3) plaintiff was injured by the

appropriation."  3-15 N.Y. PRACTICE GUIDE: BUSINESS AND COMMERCIAL § 15.08[6][c][i]

(2011).

---

[1] In addressing the merits in this memorandum, the WNET Plaintiffs do not address Aereo's
argument that Plaintiffs' unfair competition claim is preempted by the Copyright Act.  That issue
has been fully briefed for the Court in connection with Aereo's motion for partial judgment on
the pleadings.  ECF Nos. 32, 58 & 64.

Redacted Public Filing

At its essence, then, the tort of unfair competition is the bad faith "taking [of] 'the skill, expenditures and labors of a competitor.'" *Roy Export Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (quoting *Electrolux Corp. v. Val-Worth, Inc.*, 161 N.E.2d 197, 203 (N.Y. 1959)); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *FTA Market Inc. v. Vevi, Inc.*, No. 11-cv-4789-VB, --- F. Supp. 2d ---, 2012 WL 383945, at *6 (S.D.N.Y. Feb. 1, 2012) ("A defendant has acted unfairly when he misappropriates the skill, expenditures, or labor of a competitor").

Unfair competition is a "'broad and flexible doctrine,' that depends 'more on the facts set forth . . . than in most causes of action.'" *Roy Export Co.*, 672 F.2d at 1105 (quoting *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 792 (N.Y. Sup. Ct. 1950), *aff'd*, 279 A.D. 632 (1st Dep't 1951)). "The tort is adaptable and capacious." *Id.*; *see also Apple Corps, Ltd. v. Adirondack Group*, 124 Misc. 2d 351, 354 (N.Y. Sup. Ct. 1983) ("[W]here the apparent purpose is to reap where one has not sown, or to gather where one has not planted, or to build upon, or profit from, the name, reputation, good will or work of another such actions will be enjoined as unfair competition" (internal quotation marks omitted; bracket in original)). In its classic formulation – which fully describes Aereo's conduct here – the tort "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *Roy Export Co.*, 672 F.2d at 1105.

Moreover, the breadth and flexibility of the unfair competition tort allow it to keep pace with newly-emerging piratical businesses like Aereo's. "The growth of the protection against such 'parasitism' reflects the requirement that the courts and the law keep pace with the mushrooming increases in business complexity and the concomitant opportunities afforded thereby for chicanery." *Electrolux*, 161 N.E.2d at 204. Indeed, in words that could have been written for Aereo, New York courts have made clear that "'[t]he incalculable variety of illegal

Redacted Public Filing

commercial practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use.'" *Id.* (quoting *Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co.,*3 A.D.2d 227, 230-32 (1st Dep't 1957)).

Here, as described below, the WNET Plaintiffs devote substantial time, energy and money to create their programming and broadcasting infrastructure; Aereo unabashedly appropriates that programming for its own commercial purpose, without authority from or compensation to Plaintiffs; and, in doing so, Aereo uses Plaintiffs' programming to compete directly with Plaintiffs in ways that undeniably harm Plaintiffs.  Aereo's liability for unfair competition under New York law is clear.

### A.   THE WNET PLAINTIFFS DEVOTE SUBSTANTIAL TIME, ENERGY AND MONEY TO CREATE THEIR PROGRAMMING AND THE BROADCASTING INFRASTRUCTURE THROUGH WHICH THEY DELIVER THAT PROGRAMMING.

It cannot be disputed that the WNET Plaintiffs devote substantial time, creative energy and money to create their valuable programming and the broadcast infrastructure through which Plaintiffs deliver that programming to members of the viewing public.  The WNET Plaintiffs have collectively invested hundreds of millions of dollars through the creative energy and the efforts of thousands of employees to create the valuable programming Plaintiffs deliver to the viewing public.  *See* Brennan Decl. ¶ 5; Segaller Decl. ¶ 15.  Plaintiffs' investments and efforts create over a thousand hours of new content each year. *See* Brennan Decl. ¶ 5.  Creating the films and television programs that capture and hold the imaginations of millions of viewers requires writers, videographers, editors, performers, directors, crew, and the efforts of countless individuals who work behind the scenes.  In addition to producing their own content, the WNET Plaintiffs also license content from third parties.  See Segaller Decl. ¶¶ 9, 10.  Such licensed content is no less the product of substantial effort and skill, for which the WNET Plaintiffs

5

compensate their licensors.  Aereo, of course, pays nothing for the vast quantity of professionally produced programming that it appropriates around the clock from the WNET Plaintiffs for Aereo's own commercial purpose.

Plaintiffs have also invested  millions of additional dollars in their websites and online platforms to enable the viewing public to watch Plaintiffs' content on their computers and mobile devices.  *See* Brennan Decl. ¶ 18; Segaller Decl. ¶ 8.  Plaintiffs also invest in broadcast infrastructure so that the viewing public receives high-quality content.  *See* Brennan Decl. ¶ 19; Segaller Decl. ¶ 15.  With the growth of High Definition programming, Plaintiffs have upgraded their production and transmission facilities in order to provide High Definition programming. *See* Brennan Decl. ¶ 19.  Plaintiffs have made further broadcast infrastructure investments to secure their programming from piracy, such as copy protection flags that accompany Plaintiffs' transmissions.  *See id.*

## B.  AEREO MISAPPROPRIATES THE WNET PLAINTIFFS' VALUABLE PROPERTY WITHOUT AUTHORITY OR COMPENSATION.

Aereo does not dispute that it takes the WNET Plaintiffs' valuable programming without compensation.  Aereo's own public statements and the expedited discovery in this matter confirm this basic point.  Aereo's arrays of antennas receive the WNET Plaintiffs' broadcast signals, and Aereo then transcodes and processes the content received via those signals and retransmits the content in real time to its subscribers for a fee.  These retransmissions occur without the WNET Plaintiffs' permission and without any payment to the WNET Plaintiffs.  Aereo's misappropriation could not be more clear.

Aereo appears to take the position that once Plaintiffs broadcast their content to members of the public, Plaintiffs relinquish any property interest in those broadcasts.  ECF No. 33 at 5. That position is simply incorrect and has long been rejected by the New York courts.  In

6

*Metropolitan Opera Association v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 792 (N.Y. Sup. Ct. 1950), *aff'd*, 279 A.D. 632 (1st Dep't 1951), plaintiffs brought an unfair competition claim to enjoin defendants from making and selling copies of plaintiffs' over-the-air radio broadcasts.  The defendant asserted that by broadcasting content over the air to a public audience, the plaintiff had abandoned any property interests in those broadcasts.  The court, however, firmly rejected that argument:  "[t]he fact that performances to-day can take place over the radio as well as in the theatre and thereby reach a wider audience does not change the [property law] principle[s] involved."  199 Misc. at 799.  The court observed that "'property rights,' as has often been pointed out, are rights which are recognized and protected by the courts by excluding others there from. The designation is therefore more in the nature of a legal conclusion than a description." *Id.* at 795.  The question then, is whether "[r]ights of a similar nature have been repeatedly recognized and upheld by the courts," a question that the *Metropolitan Opera* court answered in the affirmative. *Id.* at 799.  In granting injunctive relief, the court recognized "[t]he exclusive right of Metropolitan Opera to the productions which it creates by the use of its skill, artists, money and the organization it has developed." *Id.* at 797.[2]

_____

[2] The Second Circuit noted in *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997), that the *Metropolitan Opera* case was decided at a time when simultaneously-recorded over-the-air radio broadcasts were not protected under the Copyright Act, and when, as a result, state law claims involving such broadcasts were not subject to copyright preemption. *Id.* at 852.  However, Congress amended the Copyright Act in 1976 "specifically to insure that simultaneously-recorded transmissions of live performances and sporting events" were protected by copyright. *Id.* at 847.  Given Congress's extension of such specific copyright protection, the Second Circuit reasoned that the unfair competition claim in *Metropolitan Opera* would be preempted if it were brought today.  The WNET Plaintiffs agree.  The unfair competition claim would also be pre-empted under the WNET Plaintiffs' pre-emption analysis, because the "acts" at issue in *Metropolitan Opera* – making and distributing copies of live radio broadcasts – would "in and of themselves" violate the Section 106 rights of reproduction and distribution. *NBA*, 105 F.3d at 850.  That stands in contrast to Aereo, which claims that its performances are not within Section 106 because they are non-public.  For all of the reasons stated in the WNET Plaintiffs' brief on copyright preemption, if Aereo is right about the non-public nature of its performances,

7

The WNET Plaintiffs' property rights here are no different, and they are protected by New York common law notwithstanding the WNET Plaintiffs' use of the broadcast medium.  As noted, Aereo cannot and does not dispute the WNET Plaintiffs' substantial investment of "skill, artists, and money" in their content.  Simply put, Aereo is acting in bad faith by knowingly and intentionally appropriating the fruits of the WNET Plaintiffs' labor for its own commercial advantage, and in order to compete with the WNET Plaintiffs.

### C.   AEREO'S CONDUCT HARMS PLAINTIFFS, INCLUDING BY USING PLAINTIFFS' WORKS TO COMPETE DIRECTLY WITH PLAINTIFFS.

Aereo competes directly with the WNET Plaintiffs for the viewers of WNET's content in two important ways, either of which would be sufficient to grant injunctive relief.  First, Aereo competes with the WNET Plaintiffs for television viewers by offering them <u>the exact same content in the exact same time period</u> as the WNET Plaintiffs.

REDACTED

Viewers who sign up for Aereo are liable to watch the WNET Plaintiffs' programs on Aereo instead of on television.

REDACTED

REDACTED

This direct competition for television viewers harms the WNET Plaintiffs' financial interests by threatening advertising revenues as well as the fees that cable and satellite companies pay to retransmit the WNET Plaintiffs' broadcasts.  *See* Brennan Decl.¶¶ 9, 10.  Second, Aereo also competes with the WNET Plaintiffs for internet viewers by offering them the same content that they would otherwise watch on the WNET Plaintiffs' own websites, on licensed third party services like Hulu and Netflix, and on

---

then it cannot simultaneously assert that the WNET Plaintiffs' New York unfair competition claim is preempted.  ECF No. 58.

8

the WNET Plaintiffs' own emerging offerings like Dyle (sometimes referred to as MCV), a joint venture between Fox, NBC Universal, and others that enables users to watch live broadcast programming on their mobile devices. *See id.* ¶ 15. The harm from this form of direct competition manifests itself in lost viewers of the WNET Plaintiffs' websites, lost licensing revenues from the WNET Plaintiffs' licensees, and greater barriers to launching new services like Dyle. *See id.* ¶¶ 15, 18.

Far from being a mere technology provider, Aereo competes head-to-head with the WNET Plaintiffs for viewers by providing them with the WNET Plaintiffs' content in real time, as it is broadcast by the WNET Plaintiffs.


REDACTED


Aereo's direct competition for the WNET Plaintiffs' television viewers undermines the ability of commercial broadcasters Fox, Univision, and WPIX to earn advertising revenues, a major source of income. *See* Brennan Decl. ¶¶ 7-9. As is also described in Plaintiffs' Joint PI Memorandum, advertising revenue is dependent on viewership, which is measured using surveys conducted by The Nielsen Company ("Nielsen"). *See* Brennan Decl. ¶ 7. Viewers who watch television broadcasts using Aereo are not included in Nielsen's measurement metrics used for

9

advertising sales. *See id.* ¶ 8.  Consequently, Aereo's unauthorized exploitation of the

commercial broadcasters' content necessarily results is an undercount of those broadcasters'

viewership, which in turn adversely affects the amounts advertisers will pay to the commercial

broadcasters.[3] *See id.*

Aereo also competes directly with the WNET Plaintiffs' own websites and licensed

internet delivery services such as Hulu and Netflix, which enable viewers to watch WNET

programs in the home or on portable devices during the time windows carefully chosen and

authorized by the WNET Plaintiffs.  *See* Brennan Decl. ¶ 15.  The WNET Plaintiffs have

invested substantial sums to create, maintain and update the websites though which they deliver

content to users.  *See* Brennan Decl. ¶ 18.  The WNET Plaintiffs have also licensed their content

to be shown on third party internet streaming services like Netflix and Hulu.  *Id.* ¶ 15; Potenza

Decl. Ex. 47 (http://www.hulu.com/network/fox); *id.* Ex. 46

(http://www.hulu.com/network/univision).  Aereo's competition for viewers adversely affects

these means of internet delivery, in that Aereo subscribers who use Aereo to watch programming

will have no reason to watch the same programming through the WNET Plaintiffs' websites and

other authorized means.  *See* Brennan Decl. ¶ 15.

Moreover, Aereo also has an adverse impact on nascent services that are being developed

by the WNET Plaintiffs for the delivery of live broadcast content to viewers' mobile devices.

For example, Dyle, a joint venture between Fox, NBC Universal, and others, is set to launch this

year and "gives you the ability to watch live, local broadcast television on select mobile devices

---

[3] Advertising revenue depends not only on the size of the audience but also its demographic
profile.  Having additional viewers in desirable demographic categories yields greater advertising
revenue.  By siphoning off web-based viewers who are not reported by Nielsen, Aereo
undermines the broadcasters' efforts to ascertain an accurate demographic profile of their
audiences.  This in turn adversely affects their ability to obtain additional advertising revenue
based upon a favorable demographic profile of their viewers.

Redacted Public Filing

in select cities."  Potenza Decl. Ex. 48 (http://www.dyle.tv/faqs/).  The planned launch includes New York and many other metropolitan areas.  Potenza Decl. Ex. 49 (http://www.dyle.tv/mcv/news/17-more-stations-to-participate-in-upcoming-dyle-mobile-tv-launch/).  If it is not enjoined, Aereo will be competing head-to-head with Dyle for viewers who want to watch Fox, NBC Universal, and other content on mobile devices.  See Brennan Decl. ¶ 15.

Aereo's direct competition harms the WNET Plaintiffs not only by siphoning off viewers, but also by jeopardizing the WNET Plaintiffs' ability to obtain retransmission consent fees from their licensees, including Time Warner Cable, Verizon, and Direct TV, to name a few, who compensate commercial broadcasters for the right to retransmit their signals to paying cable and satellite subscribers.  *See id.* ¶ 10.

REDACTED

Of course, the reason that Aereo can offer its service for the low price of $12 per month is because Aereo is getting its content for free while cable and satellite companies must pay the commercial broadcasters including Fox, Univision, and WPIX for the same content.

11

If Aereo is permitted to continue to retransmit the commercial broadcasters' television signals over the internet without compensating or obtaining consent from the broadcasters, it would have the effect of significantly reducing the revenues generated though contractual retransmission arrangements. *See* Brennan Decl. ¶¶ 10, 14. By replacing cable and satellite companies, Aereo will decrease the retransmission fees paid by those same satellite and cable companies to the WNET Plaintiffs. *See id.* To the extent that cable and satellite companies lose customers to Aereo, they will inevitably try to recoup their losses by negotiating lesser retransmission fees from the WNET Plaintiffs. *See id.* Indeed, cable companies have already referenced Aereo when discussing lowering the retransmission fees they pay to commercial broadcasters. *Id.* ¶ 10.[4]

Finally, Aereo's service is likely to disrupt the WNET Plaintiffs' commercial relationships with licensors of content. *See* Brennan Decl. ¶ 17; Segaller Decl. ¶ 9. For example, when Plaintiff WNET ("WNET," as distinct from the WNET Plaintiffs) enters agreements with licensors to broadcast their content on television, WNET often pays for the rights to stream that same content online for defined periods of time that do not necessarily overlap with WNET's television broadcasts of the programs. *See* Segaller Decl. ¶ 9. Aereo streams WNET's content simultaneously with the television broadcast, even though Aereo's streaming may be inconsistent with the online rights granted WNET. *Id.* Aereo's simultaneous

---

[4] Aereo's misappropriation of the WNET Plaintiffs' content will encourage cable and satellite providers to reduce the fees they pay the WNET Plaintiffs for the right to retransmit the WNET Plaintiffs' signals for another reason – why should they pay the full price when Aereo takes the WNET Plaintiffs' content for free? *See* Brennan Decl., ¶ 10.

REDACTED

Redacted Public Filing

broadcast may subject WNET to a fracturing of its relationship with content licensors.  *See id.*  In such circumstances, which are not uncommon, Aereo is not only competing for internet viewers with WNET, using WNET's own content, but it is also airing that WNET content on the internet in ways that WNET might be contractually prohibited from doing.  *See id.*

In these many different ways, Aereo competes head-to-head with the WNET Plaintiffs using their own content, thereby causing them substantial harm.  Simply put, Aereo is "endeavoring to reap where it has not sown."  *Roy Export*, 672 F.2d at 1105.  Its intentional and purposeful appropriation of the WNET Plaintiffs' valuable content for its own commercial ends, and in an effort to prevail over the WNET Plaintiffs in the television marketplace, is in bad faith and must be enjoined.

Redacted Public Filing

## CONCLUSION

For the foregoing reasons, WNET Plaintiffs are entitled to preliminary injunctive relief

on their alternative unfair competition claim under New York law.

Respectfully submitted,

May 1, 2012                                   /s/ Steven B. Fabrizio
                                              Steven B. Fabrizio (No. SF-8639)
                                              Steven R. Englund
                                              Scott B. Wilkens
                                              JENNER & BLOCK LLP
                                              1099 New York Avenue, N.W.
                                              Suite 900
                                              Washington, DC  20001-4412
                                              Telephone (202) 639-6000
                                              Facsimile (202) 639-6066

                                              David J. Bradford
                                              JENNER & BLOCK LLP
                                              353 N. Clark St.
                                              Chicago, IL 60656-3456
                                              Telephone (312) 222-9350
                                              Facsimile (312) 527-0484

                                              Kenneth D. Klein
                                              JENNER & BLOCK LLP
                                              633 West 5th Street
                                              Suite 3600
                                              Los Angeles, CA 90071-2054
                                              Telephone (213) 239-5100
                                              Fascimile (213) 239-5199

                                              *Attorneys for Plaintiffs*

14

Redacted Public Filing

**CERTIFICATE OF SERVICE**

I, Steven B. Fabrizio, hereby certify that on May 1, 2012, I caused a true copy of the

foregoing to be served on all parties via overnight mail.

May 1, 2012

Steven B. Fabrizio (No. SF-8639)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC  20001-4412
Telephone (202) 639-6000
Facsimile (202) 639-6066

15

Redacted Public Filing