# EXHIBIT 3

C3DJABCM                    Motions
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   AMERICAN BROADCASTING
3   COMPANIES, INC., et al.,
4
4                 Plaintiffs,
5
5           v.                          12 Civ. 1540 AJN
6
6   AEREO, INC.,
7
7                 Defendant.
8
8   ------------------------------x
9
10
11
12                                      March 13, 2012
12                                      3:43 p.m
13
14
15
16  Before:
16
17                  HON. ALISON J. NATHAN,
17
18                                      District Judge
18
19
20
20
21
22
23
24
25

C3DJABCM                    Motions
1           (In open court)
2           (Case called)
3           THE COURT:  Please be seated.
4           As you say, there is a parallel matter with a motion
5   to consolidate pending in front of Judge Marrero.  He has not
6   acted on that yet.  I have attempted to contact him today and
7   was unable to reach him  He has got some family matters to
8   attend to, but I will see what he wants to do with that.
9           I don't know how that impacts what we need to do
10  today, which I gather is to set a schedule, but why don't I
11  hear from you, Mr. Keller.  To tell you what I have before me,
12  I reviewed the complaint, and then I have a letter from -- am I
13  saying it right, AEREO?
14          And then I have an answer as of today which I have
15  briefly seen and a letter indicating AEREO's views as to an
16  appropriate schedule, seeking to move to final disposition.
17  But, Mr. Keller, I don't believe I have your views on specific
18  process going forward.  So why don't you start situating me any
19  way that you like and then turning to the process.

11 judgment or not. We don't know that yet. We haven't had the
12 discovery. Maybe they're right and there isn't much, but I'm
13 not sure about that.
14         What we do know is that the fact that a defendant
15 wants summary judgment pretty quickly is not a defense or
16 reason not to grant an early preliminary injunction hearing.
17 We have a right to seek such a hearing. We have made the case
18 that, based on cases from this courthouse, irreparable harm
19 flows if, in fact, they are infringing not as a matter of
20 presumption, as a matter of fact that we can prove, that is
21 what Judge Buchwald ruled in her IVI, case and we are prepared
22 to build that record in the next six to eight weeks.
23         They would like, obviously, to drag it out. I don't
24 mean that pejoratively; I mean that factually. They're
25 thinking about four months out. We can't wait that long.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

C3DJABCM              Motions
1         By the way, your Honor, the proposal that they made to
2 you --
3         THE COURT: Can you just flesh out a little bit for me
4 why you can't?
5         MR. KELLER: Because irreparable harm happens every
6 day our rights are infringed, and they're going live, as we
7 understand it, in the New York market tomorrow, and according
8 to the press reports -- and we'll get discovery on this to find
9 out if it is so -- New York is still itself just a test market.
10 They plan to go nationally very quickly according to Mr.
11 Diller, one of their investors, 75 to 100 markets, and we are
12 not clear on the time-frame. We want to know about that, too.
13         New York is still a test market. We are not waiting
14 any longer. They think they can go live. They say that
15 they've been out there doing this for some time. Your Honor,
16 it is what is known as a beta test. It is an experimental
17 group. This is even more narrow. It was an invitation-only
18 beta test. It wasn't widely available according to what they
19 said about their own service. You had to be invited in some
20 way to be part of the beta group.
21         It was the most preliminary of experiments. Now they
22 think they can go live. We're here today to say you can't do
23 it without causing us irreparable injury, and we want to enjoin
24 it early, as early as we possibly can.
25         The summary judgment procedure that they've outlined
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

C3DJABCM              Motions
1 they've cited, that is what happened to Cablevision. They're
2 exactly right, that is what happened to Cablevision. What they
3 didn't tell you in their letter is that Cablevision agreed not
4 to launch its service while the courts had a chance to vet it
5 for whether it was copyright infringement or not.
6         The whole process that they've said is eminently
7 reasonable might be eminently reasonable if they didn't launch
8 tomorrow. But we have asked them would you not launch? That
9 is the first thing we asked. Then we can come up with an
10 agreed-upon schedule like Cablevision. They said we are not
11 waiting, we are ready to go. That is why we need preliminary
12 injunctive relief and we need it now.
13         THE COURT: Thank you, Mr. Keller. Let me hear from
14 Mr. Hosp.
15         MR. HOSP: Yes, your Honor, this is Mr. Englander.
Page 6

16          MR. ENGLANDER:  I am going to speak, your Honor, but
17   Mr. Hosp may need to straighten me out from time to time.
18          As we indicated in our letter, your Honor, we're
19   interested in resolving this as expeditiously and efficiently
20   as we can.  We are a small start-up.  We have been accused of
21   copyright infringement in connection with what we do.  We need
22   to have that resolved.
23          We think the preliminary injunction process being
24   proposed to you will actually delay things and get in the way
25   of that and that is why we have indicated an objection.  It is
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

1    possible we can work something out so that that is not the
2    case.
3          THE COURT:  Is it right that there is no possibility
4    of an agreed-upon delay of launch to work out a schedule?
5          MR. ENGLANDER:  That's correct, your Honor.
6          THE COURT:  Okay.
7          THE COURT:  I thought maybe if I asked, it would be
8    different.
9          MR. ENGLANDER:  No, your Honor.  Maybe I should
10   address this first.
11         THE COURT:  Go right ahead.
12         MR. ENGLANDER:  There are a number, as Mr. Keller
13   said.  Maybe I should address this first.  They have delayed
14   the opportunity to get this resolved on a reasonable schedule
15   for at least nine months, your Honor.  There is no reason that
16   they could not have come to court and sought a declaratory
17   judgment.  We did everything but give blueprints, okay?
18         That is perhaps an exaggeration, but we have been very
19   transparent.
20         THE COURT:  I haven't looked at the IVI case, but can
21   you respond to the point?
22         MR. ENGLANDER:  It is a very, very different system
23   and set of ideas and concepts.  What we are doing is providing
24   a system that a consumer can use to do nothing different than a
25   consumer has every right to do right now.  A consumer right now
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

1    can get over-the-air broadcasting by having an antenna on the
2    roof of their home.  They can make a copy of that, unique copy
3    for their own personal use and they can play it back to
4    themselves.
5          All we are doing is remotely locating an antenna.
6    They're very small antennas.
7          THE COURT:  The size of a dime?
8          MR. ENGLANDER:  Exactly.  This is one of them and
9    there will be thousands of them  The consumer will tune in to
10   their own antenna.  In other words, they will sit at home, go
11   onto our system using our system and think of it as a machine
12   using our system, tune their antenna, make a copy, their own
13   unique copy of that television program and then play that back,
14   that unique copy that is theirs back to themselves.
15         Your Honor, two cases conclude that that is entirely
16   lawful.  One is the Cablevision decision from the Second
17   Circuit, four years' old, that dealt with the remote storage
18   DVR being offered by Cablevision, and I think other is Sony.
19   Sony came from the U.S. Supreme Court which says that a
20   consumer has the right to get over-the-air broadcasts, make a
                        Page 7

21    copy for their own personal use and play it back to themselves.
22            So that is what we have here.  We have told the
23    industry, and had specific meetings with many of Mr. Keller's
24    clients in which over the last several months we have explained
25    what we're doing.  If they needed relief and they were really

16
1     concerned about it on a preliminary basis, they could have
2     sought a declaratory judgment at any time.  They did not.  They
3     waited until just before the launch, and now they tell you it
4     is very urgent they get decided.
5             THE COURT:  Isn't that an argument you could
6     potentially make counter to their irreparable harm arguments?
7     Why would that preclude them from bringing a preliminary
8     injunction motion?
9             MR. ENGLANDER:  The answer is it doesn't.  The concern
10    we have is simply somehow they seem to be suggesting to you
11    that they're going to divide up discovery so that what we'll
12    have is one process where they seek a preliminary injunction
13    and then the case will still by out there not resolved and
14    hanging over the head of this start-up company.
15            If we can manufacture a schedule so that we can also
16    have in front of you the summary judgment motions that we
17    believe are appropriate on a record that they do not claim is
18    incomplete -- the thing we don't want to have happen is we go
19    through a process where they move for preliminary injunction,
20    we move for summary judgment, and they say 56 (e), we are not
21    ready yet to decide this.
22            They haven't given us all the facts.  We are going to
23    do discovery, get the complete discovery done that needs to be
24    done so your Honor has in front of you the full facts.  We
25    think this case is a case, primarily a case that gets decided

17
1     on the law.  We have to know how our system works.  That is
2     important.
3             There may be some other facts we need to do discovery
4     of from them but we can do that rapidly and then have before
5     your Honor all you need to decide a motion for summary
6     judgment, and if they choose to file a motion for preliminary
7     injunction, a motion for preliminary injunction.  We need to
8     work on a schedule that allows us to come before you.
9             In the Cablevision case which we were involved in --
10            THE COURT:  And you think you can do that, that can be
11    done in, accomplished in four months, a hearing in four months?
12            MR. ENGLANDER:  We hashed out a schedule in which it
13    was basically briefing completed in four months.  We may be
14    able to do it faster with cooperation from the parties, I
15    believe we could.  I am listening to Mr. Keller saying he is
16    going to have four to six weeks of discovery and a hearing in
17    eight weeks, and I am wondering where the briefing comes in.
18    We haven't even seen their motion yet.
19            Their schedule, it seems to me, I don't quite get it.
20    Are they saying they're going to file their motion before
21    discovery is complete or are we going to be, after 9 months are
22    they going to give us four days to respond to a preliminary
23    injunction motion?
24            We have, with respect to preliminary injunction
25    motion, we have a serious issue about irreparable harm that