USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 1 8 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WNET, ET AL.,
                Plaintiffs,

    -v-

AEREO, INC.,
                Defendant,
------------------------------------------------------------X

12 Civ. 1543 (AJN)

OPINION

ALISON J. NATHAN, District Judge:

    Plaintiffs, a group of corporate entities engaged in the production, marketing, distribution, and transmission of television programs, filed a complaint against Defendant Aereo, Inc. ("Aereo") contending that Aereo's services are unlawful. (Compl. ¶¶ 1-5, 10-18). Aereo, according to Plaintiffs, "take[s] broadcast television signals for the New York-area television stations . . . and retransmits them over the Internet to Aereo subscribers." (Compl. ¶ 1). Plaintiffs, allegedly the holders of the copyrights on at least some of the programs that Aereo rebroadcasts, view Aereo's activities as violating their rights in this material. (Compl. ¶ 19).

    In particular, Plaintiffs assert three causes of action, styled as "Counts." Counts I and II assert liability for, respectively, infringement of Plaintiffs' exclusive rights of public performance and exclusive rights of reproduction under the Copyright Act, 17 U.S.C. § 101, *et seq.* (Compl. ¶¶ 42-58). Count III is brought "in the alternative to Count I" and alleges that Aereo is "guilty of unfair competition under the common law of the State of New York." Compl. ¶ 60). Plaintiffs claim that "by commercially exploiting Plaintiffs' programming and broadcasting infrastructure without authorization," Aereo is "unfairly exploiting Plaintiffs'

1

property interests in their audiovisual works for Aereo's own commercial benefit and in bad faith." (Compl. ¶ 60).

Aereo moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on Count III. (Def. Mot. at 1-2). Aereo argues that Plaintiffs' unfair competition claim is one that seeks to vindicate rights equivalent to those provided by the general scope of copyright law and is therefore preempted under 17 U.S.C. § 301, the Copyright Act's express preemption provision. Plaintiffs' opposition to Aereo's motion makes clear that their "unfair competition claim for non-public performances is an alternative to their main claim under federal copyright law based on public performances," in the event that the Court concludes that Aereo's service does not infringe Plaintiffs' copyrights because it involves only private performances. (Pls. Opp. at 1-2). For purposes of this motion the Court therefore assumes, but does not decide, that Aereo's service involves a private performance not actionable under the Copyright Act.

Accordingly, Aereo's motion turns exclusively on a question of statutory interpretation—apparently one of first impression—regarding the breadth of preemption under § 301: does a state law unfair competition claim founded on the private performance of copyrighted works seek to vindicate rights that fall into the general scope of the exclusive rights created by the Copyright Act? The Court concludes that it does and grants Aereo's Motion for Judgment on the Pleadings.

I.     **LEGAL BACKGROUND ON PREEMPTION UNDER § 301**

A brief survey of preemption under the Copyright Act frames the issue. Section 301(a) provides for preemption of state law causes of action that seek to protect rights "equivalent to" the exclusive rights specified by the "general scope" of copyright protection. 17 U.S.C. § 301(a). In relevant part, the statute provides that

2

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . in works of authorship that . . . come within the subject matter of copyright . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). A parallel provision, § 301(b), makes clear that the Copyright Act does *not* preempt state laws governing "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(b).

Section 106, as these provisions suggest, articulates the exclusive property rights Congress has chosen to provide in copyrighted works, including "(1) to reproduce the copyrighted work;" "(2) to prepare derivative works based upon the copyrighted work;" "(3) to distribute copies or phonorecords of the copyrighted work to the public;" "(4) to perform the copyrighted work publicly;" and "(5) to display the copyrighted work publicly." 17 U.S.C. § 106. An individual who violates one or more of the rights articulated in § 106, as cabined by subsequent sections of the Copyright Act governing principles such as fair use, *see, e.g.*, 17 U.S.C. § 107, has engaged in copyright infringement. *See* 17 U.S.C. § 501(a); *S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 479 (2d Cir. 2007).

The Second Circuit has construed § 301 to require application of a two prong test to determine if a state law claim is preempted. First, courts consider the "subject matter requirement" and assess whether the state law claim asserts rights in the type of works protected by the Copyright Act. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Second, under the "general scope requirement," the rights provided by the state law claim must be "equivalent to one of the bundle of exclusive rights already protected by copyright law." *Id.* at 305. If both prongs are met, the state law claim is preempted.

3

The general scope requirement is satisfied "only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law. In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." *Id.* As part of the general scope inquiry, the Second Circuit also applies an "extra element test" that provides that even if the state law claim is one involving acts of reproduction, adaption, performance, distribution, or display, the claim will not be preempted if it "include[s] any extra elements that make it qualitatively different from a copyright infringement claim." *Id.* at 305-06.

The question before the Court is whether § 301 is properly construed to preempt Plaintiffs' New York law unfair competition claim, argued in the alternative, which seeks to attach liability for the *private* performance of Plaintiffs' copyrighted works. In particular, the Court must consider whether the "general scope requirement" for preemption is met by such a claim.[1]

In sum, Aereo argues that because Plaintiffs' unfair competition claim is essentially one imposing liability for the performance of copyrighted material, it is "equivalent to" the "general scope" of the exclusive public performance right under § 106. (*See, e.g.*, Def. Mot. at 2). Plaintiffs respond that the exclusive performance right "specified by" § 106 is one of public performance, not private performance, and that their unfair competition claim is, therefore, not preempted because rights in private performances are not "equivalent to" any right provided by § 106.

---

[1] Neither the "subject matter requirement" nor the "extra element test" are at issue in this motion, as no party disputes that the works at issue are of the type protected by copyright, and Plaintiffs do not argue that the extra element test would save their claim from preemption. (Compl. ¶¶ 30, 43, 50; Pls. Opp. at 5, 7-9, 22; Def. Mot. at 4-5).

4

II.  DISCUSSION

Statutory interpretation begins with determining whether the text of the statute has a plain and unambiguous meaning, viewing the particular provision being construed in the context of the statutory scheme as a whole. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, __ F.3d __, 2012 U.S. App. LEXIS 6391, at *68 (2d Cir. Mar. 29, 2012). If the Court can ascertain the plain meaning of the statutory provision from the text and statutory structure, it need not consider other sources. *See id.* at *68-69. If the plain meaning is ambiguous the Court may consider extrinsic materials, including the legislative history of the statute. *See id.* at *69.

A.  **Statutory Text**

Plaintiffs contend that § 301(a) unambiguously provides that state law claims imposing liability for private performances of copyright materials are not preempted. Noting that preemption under § 301(a) is defined by the rights "specified by section 106," Plaintiffs contend that because the right of performance granted in § 106 is limited to "public" performances, preemption under § 301 is similarly limited only to claims relating to public performances. (Pls. Opp. at 11).

The difficulty with Plaintiffs' position is that while the reference in § 301 to the rights "specified by section 106" at least partially defines the breadth of preemption, these words do not stand alone. Section 301 provides that preemption applies not merely to the rights "specified by section 106," but instead extends to the "*general scope* of the rights specified by section 106," resulting in a tension between the "specifi[c]" rights enumerated in § 106 versus the "general scope" of those rights.

Read in this context, the plain language of § 301 can be reasonably construed to foreclose not just those state law claims that directly parallel the scope of the rights granted in the

5

Copyright Act. Rather, the "general scope" of the rights specified by § 106 arguably refers broadly to the type of rights protected by copyright, including performance rights generally rather than public performance rights specifically. In this case, preemption would extend to those state laws that seek to impose liability for misappropriation of a person's creative works based on the performance of such works, whether public or private.

Similarly, preemption applies to rights "equivalent to" the general scope of those specified in § 106, not merely to the precise rights specified by § 106. Plaintiffs counter that "equivalent to" in § 301 should be construed to mean "identical to," citing *Ad Hoc Telecommunications Users Committee v. FCC*, 680 F.2d 790, 801 (D.C. Cir. 1982), which applied a similar interpretation to the "functional equivalency" test employed by the FCC in regulating telecommunications. (Pls. Opp. at 11 n.3) However, *Ad Hoc Telecommunications Users Committee* did not construe the meaning of "equivalent" in the context of § 301, and its persuasive value is therefore limited. *See id.* Moreover, there are multiple definitions of the word "equivalent," not all of which suggest that the term should be interpreted to mean "identical." Merriam-Webster's Dictionary provides, for example, an alternative definition of "like in signification or import." Given that the equivalency at issue in § 301 relates to the "general scope" of the rights provided in § 106, the "equivalent to" language need not be read to require that the rights at issue be identical.

Brief consideration of a counterfactual drafting of § 301 illustrates these points and, in fact, suggests that Plaintiffs' interpretation of § 301 should be disfavored. Had Congress intended the narrow scope of preemption that Plaintiffs argue for, it could have unambiguously signaled this intent by drafting § 301(a) without the words "general" or "equivalent to," providing that "all legal or equitable rights within the scope of copyright as specified by section

6

106 . . . are governed exclusively by this title." It did not do so and, Congress having decided to include these modifiers, the Court is bound to give the words "equivalent to" and "general scope" appropriate significance. *See United States v. Aleynikov*, __ F.3d __, 2012 U.S. App. LEXIS 7439, at *23-24 (2d Cir. Apr. 11, 2012) ("[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Contrary to Plaintiffs' argument, the Court finds that the plain text § 301(a) does not unambiguously provide that their state law claim survives preemption. While Plaintiffs' argument for narrow preemption finds support in § 301's reference to the rights "specified in" § 106, Aereo's argument for a broader reading is supported by the reference to the "general scope" of those rights.

### B.   Statutory Structure

Considering § 301 in the context of the statutory scheme as a whole further suggests preemption should not be limited to state law claims imposing liability for acts of public performance, but does not itself resolve the conflicting textual argument articulated above. In particular, Congress's careful definition of what constitutes a public performance,[2] and its decision not to create exclusive property rights to privately perform copyrighted works further suggests that preemption should bar Plaintiffs' unfair competition claim. *See Dole v. United*

---

[2] The full definition of to "perform or display a work 'publicly'" is

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or
> (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101.

7

*Steelworkers of Am.*, 494 U.S. 26, 35 (1990) (in interpreting statutes, courts should look to the whole law, and its object and policy); *SEC v. DiBella*, 587 F.3d 553, 572 (2d Cir. 2009) ("Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results plainly at variance with the policy of the legislation as a whole, that interpretation should be rejected." ). For example, Congress specifically excluded performances to "a normal circle of a family and its social acquaintances" from the scope of copyright protection by defining such performances as nonpublic. 17 U.S.C. § 101. Plaintiffs construction of § 301, however, would impose no bar to the assertion of state law claims for precisely this activity—the purely private viewing of copyrighted performances. *Cf. Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 136 (2d Cir. 2008) (rejecting an interpretation of "public performance" that would lead to "odd results" and "obviate any possibility of purely private transmission" as contrary to congressional intent).

Moreover, Plaintiffs' contention that Section 301(a) does not preempt their New York state law claim requires the unlikely conclusion that Congress extended copyright protection only to "public performances" because Congress intended to provide an opportunity for states to fill in the gaps with a varied regime of patchwork state regulation. This conclusion, although not out of the question, is less plausible than the conclusion that Congress intended to create a nationally uniform scheme of copyright protection and simply refused to create property rights over private performances. *See e.g., Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 897 (2d Cir. 2011) (noting the importance of national uniformity under the Copyright Act as a motivating factor for construing an exception to preemption narrowly and that "central to the principle of preemption generally is the value of providing for legal uniformity where Congress has acted nationally").

8

In short, § 301 could reasonably be read to support either Plaintiffs' or Aereo's position. Although the better reasoned position based on the text of § 301 and its relation to the statutory scheme as a whole is that Congress likely intended preemption to extend to state law claims imposing liability for private performances of copyrighted works, the matter is not entirely without ambiguity.

### C. Legislative History

Concluding that the statutory text does not unambiguously resolve the question before it, the Court turns to the legislative history for extrinsic evidence of congressional intent and finds it squarely in support of preemption in these circumstances. *See, e.g., Louis Vuitton Malletier S.A.*, __ F.3d __, 2012 U.S. App. LEXIS 6391, at *69 ("'We turn to the legislative history only when the plain statutory language is ambiguous or would lead to an absurd result.'") (quoting *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009) (per curiam)).

As an initial matter, the legislative history of § 301 provides that the Copyright Act was intended to provide a nationally uniform system of copyright and "avoid the practical difficulties of determining and enforcing rights under the differing laws and in the separate courts of the various States." H.R. REP. NO. 94-1476, at 129 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5745. Congress further intended preemption "to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between States and Federal protection." H.R. REP. NO. 94-1476, at 130 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5746.

These broad statements of purpose suggest three points in favor of finding that Congress did not intend to limit preemption under § 301 only to state law claims that seek to vindicate

9


precisely the exclusive rights provided in § 106. First, the House Report's emphasis on national uniformity confirms the Court's perspective that Congress likely did not envision the creation of state law schemes imposing what is essentially copyright liability where Congress declined to create such liability. Second, Plaintiffs' claim that Congress intended to allow state law to step in to regulate private performances is contrary to Congress's "unqualified intention . . . [to] act preemptively, and to avoid the development of vague borderline areas between State and federal protection." Third, that Congress intended to use the "clearest and most unequivocal language possible" in providing for this preemption counsels in favor of the Court granting significant weight to Congress's choice to extend preemption to the "general scope" of rights "equivalent to" those provided by the Copyright Act.

More directly, the House Report states that § 301's "preemption of rights under State law is complete with respect to any work coming within the scope of the bill, even though the scope of exclusive rights given the work under the bill is narrower than the scope of common law rights in the work might have been." H.R. REP. NO. 94-1476, at 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5746. Plaintiffs' position, that Congress intended preemption to be limited to state law claims asserting rights identical to those specified in § 106 and that state law may broaden the effective reach of the copyright protection, is flatly contrary to this statement that preemption is "complete" even when state law would provide for broader protection than the exclusive rights Congress has provided.

Plaintiffs contend that this discussion of the narrower scope of protection under the Copyright Act as compared to common law refers to Congress's decision to limit the types of works for which copyright protection is granted, not to Congress's decision to limit the scope of the exclusive rights provided in § 106. (Pls. Opp. at 16-17). They base this argument less on the

10

substance of the comment than on its location in the legislative history, arguing that the provision is "sandwiched between paragraphs discussing uncopyrighted material that is nonetheless within the subject matter of copyright." (Pls. Opp. at 16-17). This reading cannot be sustained. The quoted sentence plainly discusses the nature and scope of the "exclusive rights given the work under the [Copyright Act]" (*i.e.*, the exclusive rights under § 106) that inhere in "works coming within the scope of the bill."

The legislative history also lists the types of state law causes of action that Congress did not anticipate as likely preempted, including rights to privacy, publicity, trade secrets, defamation, and deceptive trade practices such as passing off and false representation.[3] H.R. REP. NO. 94-1476, at 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748. As noted by the House Report in explaining why these rights should survive copyright preemption, these causes of action vindicate rights "different *in nature* from the rights comprised in a copyright." H.R. REP. NO. 94-1476, at 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748 (emphasis added). The House Report also explained that "deceptive trade practices such as passing off and false representation" were included in an effort to distinguish the types of unfair competition claims that would survive enactment of § 301 from those that would not. H.R. REP. NO. 94-1476, at 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748. In contrast to each of these examples, Plaintiffs' unfair competition law is, at core, an attempt to extend copyright protection beyond

---

[3] The version of the statute on which the legislative history was commenting listed these examples of state law causes of action that would not be preempted by § 301, but this text was removed before the statute was enacted. *See Theflyonthewall.com*, 650 F.3d at 910 (Raggi, J., concurring). Notwithstanding this removal, several Second Circuit decisions have relied on this commentary in discerning congressional intent regarding the bounds of preemption. *Compare NBA v. Motorola*, 105 F.3d 841, 850 (2d Cir. 1997) (relying on this section of the legislative history); *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 716-17 (2d Cir. 1992) (same); *and Fin. Info., Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204, 208-09 (2d Cir. 1986) (same) *with Theflyonthewall.com*, 650 F.3d at 910 (Raggi, J., concurring) (noting the confusing nature of this history and opining that "it is not clear what weight the Report excerpt quoted in *NBA* can bear in any assessment of whether a particular 'hot news' claim survives federal copyright preemption.")

11

the scope of the exclusive rights granted in § 106 and is not different "in nature" from a copyright claim.[4]

Moreover, nothing in the legislative history of either §§ 101 or 106 suggests that Congress declined to provide for exclusive rights over private performances because it intended to leave a gap for state law to fill. Rather, the House Report suggests that Congress intended private performances to be exempted from copyright protection: "Certain other performances and displays, *in addition to those that are 'private,'* are exempted or given qualified copyright control under sections 107 through 118." H.R. REP. NO. 94-1476, at 63 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5677 (emphasis added).

Against this evidence of congressional intent, Plaintiffs argue that in enacting § 301 Congress rejected draft language that "might have allowed preemption based on a looser connection to the exclusive rights actually specified in § 106." (Pls. Opp. at 11, 17-18). In particular, Plaintiffs note that an earlier version of § 301(a) provided preemption for "all rights in the nature of copyright" and that this text was changed to the present wording of "rights . . . equivalent to any of the exclusive rights within the general scope of copyright," arguing that this reflects the adoption of a more exacting standard. (Pls. Opp. at 11-12, 17-18 (citing H.R. 4347, 89th Cong., 2d Sess. § 301(a) (1966))).

Even the text of § 301 as enacted, however, provides that preemption applies to rights "equivalent to" those falling in the "general scope" of copyright, not merely preemption applicable to state law claims asserting rights also provided by copyright. Regardless of whether

---

[4] The House Report also noted that not all unfair competition claims asserting misappropriation would be preempted by § 301, noting that state law should continue to have the flexibility to preserve the so-called "hot news" exception. This portion of the legislative history is best read as articulating exceptions that prove the general rule that Congress intended that the typical misappropriation claim, such as Plaintiffs' unfair competition claim here, be preempted.

the previous version of § 301(a) may have more clearly reflected an intent to broadly preempt state law claims imposing liability on private performances of copyrighted material, the text of § 301(a) as enacted still suggests such an intent. Moreover, Plaintiffs do not provide any support—beyond the change in the statutory text itself—for their claim that Congress chose the "general scope" language rather than the "nature of copyright language" with an eye toward restricting preemption. Although the legislative history explains that "the language in [§ 301] . . . has been modified from [earlier drafts] so as to more exactly define the intent of Congress," S. REP. 94-473, at 114 (1975), it does not indicate that this change was intended to narrow § 301's preemptive effect. With this in mind, Plaintiffs' argument cannot overcome the other evidence in the legislative history demonstrating that their unfair competition claim should be preempted.

Finally, the Court notes that its reading of the legislative history is in full accord with the conclusions of commentators who have considered this precise issue. *See* MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01(B)(1) & n.48 (2012); PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT § 17.2.1.1 (2005) ("Although section 106(4) limits its right to public performances, a state law that prohibited private performances would nonetheless come within the general scope of the right. . . . and thus be subject to preemption.").

### D. Related Second Circuit Law

Although the Second Circuit has not spoken on the issue before the Court, both Aereo and Plaintiffs argue divergent interpretations of Second Circuit cases articulating the general scope requirement, each claiming that Second Circuit precedent supports their position. Here too, the Court is persuaded that the weight of precedent supports a conclusion of preemption.

Arguing for preemption, Aereo cites statements by the Second Circuit that the general scope requirement is met when "the state law claim . . . involve[s] acts of reproduction,

13

adaptation, performance, distribution or display," and emphasizes that the word "performance" in these statements is not qualified by the word "public." (Def. Mot. at 5). *E.g.*, *Briarpatch*, 373 F.3d at 305; *see also Theflyonthewall.com*, 650 F.3d at 893. Plaintiffs point out, however, that the Second Circuit often precedes such language by enumerating the rights granted in § 106, including that of "public performance." (Pls. Opp. at 13). *See, e.g.*, *Theflyonthewall.com*, 650 F.3d at 893; *Briarpatch*, 373 F.3d at 305.

In support of their contrary position, Plaintiffs quote language, often found in these same cases cited by Aereo, that note that the general scope requirement for preemption is met by state law claims that impose liability for activity that "would, *by itself*, infringe one of the exclusive rights provided by federal copyright law." *E.g.*, *Briarpatch*, 373 F.3d at 305 (emphasis added); *see also, e.g.*, *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 716 (2d Cir. 1992). Plaintiffs characterize this as the "test" for the general scope requirement, and argue that a private performance does not "by itself" infringe one of the exclusive rights provided in § 106. (Pls. Opp. at 12).

The Court does not assign great weight to either of these arguments, which amount to parsing isolated statements from Second Circuit cases that did not consider the question the Court now confronts, without regard to the logic underlying the decisions in those cases. Far more persuasive are the holdings of and reasoning provided in the Second Circuit's precedent. Reviewing these cases, three principles emerge that suggest, consistent with the statutory text and structure as well as the legislative history, that the Second Circuit would extend preemption to Plaintiffs' unfair competition claim in this case.

First, the Second Circuit has not restricted preemption to the precise scope of the protections provided by the Copyright Act. In *NBA v. Motorola*, 105 F.3d 841, 843-44 (2d Cir.

14

1997), plaintiffs asserted a state law claim of unfair competition by misappropriation based on defendants' conduct in manufacturing a paging device, SportsTrax, which transmitted to subscribers information—obtained from plaintiffs' broadcasts—from sporting events. The Second Circuit held that the subject matter requirement for preemption was met, even though neither the sporting events themselves nor the facts taken from those games were copyrightable and, therefore, no copyright claim could be stated on those facts. *See id.* at 846-47. Analyzing the *NBA* decision in a subsequent case, the Second Circuit explained that "[i]n deciding whether a state-law claim is preempted by the Copyright Act, then, it is not determinative that the plaintiff seeks redress with respect to a defendant's alleged misappropriation of uncopyrightable material — e.g., facts — contained in a copyrightable work." *Theflyonthewall.com.*, 650 F.3d at 892. Importantly, "the *NBA* panel thought it clear that what the NBA was seeking to protect fell within the 'general scope of copyright.'" *Id.* at 893. As such, absent the extra-elements applicable to misappropriation claims falling within what is referred to as the "hot news" exception, preemption would have applied in that case. *See NBA*, 105 F.3d at 848-53.

As relevant here, the Second Circuit's holding in *NBA*, as further explained by *Theflyonthewall.com*, establishes that preemption under § 301 is broader than those state law claims for which a successful copyright claim can be stated. This is the case notwithstanding that § 301 requires that the state law claim pertain to rights equivalent to the general scope of those provided by copyright "in works of authorship that . . . come within the subject matter of copyright." 17 U.S.C. § 301. Thus, the Second Circuit adopted a broad approach to copyright preemption in *NBA* even though the statutory text arguably supported a more restrictive view that was limited to preemption of claims asserting rights over the copyrighted works themselves.

Moreover, in rejecting an alternative approach of "partial preemption" as counter to the

intent of Congress, the Second Circuit noted that partial preemption would "allow state law to vest exclusive rights in material that Congress intended to be in the public domain and to make unlawful conduct that Congress intended to allow." *NBA*, 105 F.3d at 849. As previously explained, the Court has reached a similar conclusion as to Congress's decision to limit the exclusive performance rights granted in § 106 to rights in public performances.

The decision in *NBA* also undercuts Plaintiffs' argument that "specified by" in § 301 must be read restrictively and in isolation. Section 106 provides that the "exclusive rights" granted by the Copyright Act are rights that apply with respect to the "copyrighted works": the heading of that section is "Exclusive rights in copyrighted works" and each subsection provides for exclusive rights with regard to "the copyrighted work." 17 U.S.C. § 106. Plaintiffs argue that the reference in § 301 to the rights "specified in" § 106 must be read to restrict preemption to the exact scope of the rights granted in § 106, such that the general scope requirement is not met if the tortfeasor's activity falls outside the precise boundaries of those rights. Thus, on Plaintiffs' narrow reading of § 301, the rights "specified in" § 106 are granted only as to the copyrighted works themselves. However, *NBA* suggests that the general scope requirement can be met by acts of reproduction, distribution, and display of the uncopyrightable *facts* in the works, not reproduction, distribution, or display of the copyrighted works themselves. *See Theflyonthewall.com*, Inc., 650 F.3d at 893. As such, the Second Circuit's analysis of the general scope requirement in *NBA* reinforces the other suggestions that Plaintiffs' interpretation of § 301 is too narrow.

Second, precedent on the "extra element test" provides an indication of the kind of claims that the Second Circuit believes are not preempted by § 301. As noted above, this test saves from preemption those state law claims that include an "extra element that make [the claim]

16

qualitatively different from a copyright infringement claim." *See Briarpatch*, 373 F.3d at 305. "To determine if a claim is qualitatively different, the Court considers what the plaintiff seeks to protect, the theories in which the matter is thought to be protected, and the rights sought to be enforced, taking a restrictive view of what extra elements transform an otherwise equivalent claim into one that is different from a copyright infringement claim." *Id.* at 306. "Awareness or intent, for instance, are not extra elements that make a state law claim qualitatively different. On the other hand, a state law claim is qualitatively different if it requires such elements as breach of fiduciary duty, or possession and control of chattels." *Id.* (citations omitted); *see also Computer Assocs.,* 982 F.2d at 717 (trade secret claim has extra element rendering claim qualitatively different than a copyright claim). The Second Circuit has further held that unjust enrichment claims related to the unauthorized use of copyrighted works are not "qualitatively different" than copyright claims. *See Briarpatch*, 373 F.3d at 306.

Given this emphasis on the need for the state law claim to be "qualitatively different" from a copyright claim, the reasoning of these Second Circuit cases further supports the Court's conclusion that preemption extends to Plaintiffs' state law claim in this case. Qualitative differences are differences in kind, rather than in degree or scope. *See, e.g., Morris v. Board of Estimate*, 831 F.2d 384, 389 n.5 (2d Cir. 1987) ("We find absolutely no evidence that, in the instant case, the distinction on which the appellants rely is a qualitative difference, as opposed to a difference of degree."); *Harper & Row, Publishers v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983) ("[T]he fact that cross-appellants pleaded additional elements of awareness and intentional interference . . . goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental non-equivalence between the state and federal rights implicated."). This perspective that the state

17

law right may not merely be essentially a copyright claim in disguise is reinforced by the Second Circuit's directive to consider "what plaintiff seeks to protect, theories in which the matter is sought to be protected, and the rights sought to be enforced" and its "restrictive view" on what extra elements suffice to avoid preemption.

Plaintiffs' claim for unfair competition seeks redress for Aereo's unauthorized appropriation of Plaintiffs' content through private performances of that conduct—a claim that is fundamentally parallel to a copyright claim, seeking merely to extend its scope to activities that Congress did not protect under copyright. There is, for example, substantial similarity between the Plaintiffs' unfair competition claim and the unjust enrichment claim rejected by the Second Circuit in *Briarpatch*. *See Briarpatch*, 373 F.3d at 306. Thus, the extra element test, even though not directly at issue, suggests that Plaintiffs' unfair competition claim is the sort of claim that the Second Circuit would likely view preempted under § 301.

Third, the Second Circuit has broadly precluded unfair competition claims involving misappropriation of a plaintiff's creative works, suggesting as a general position that such claims satisfy the "general scope" requirement for preemption. *See NBA*, 105 F.3d at 845, 851 (explaining that "much of New York misappropriation law . . . is preempted" and that amorphous misappropriation claims based on "commercial immorality" are "virtually synonymous for wrongful copying and are in no meaningful fashion distinguishable from infringement of a copyright" and therefore preempted); *Computer Assocs.*, 982 F.2d at 717 (state law preemption claims "grounded solely in the copying of a plaintiff's protected expression are preempted by section 301" in contrast to claims that include an extra element); *Fin. Info., Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204, 208-09 (2d Cir. 1986); *Warner Bros., Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231, 247 (2d Cir. 1983) ("[S]tate law claims that rely on the

18

misappropriation branch of unfair competition are preempted . . . ."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 918-19 (2d Cir. 1980).

Plaintiffs correctly note that none of these cases is directly controlling because the misappropriations at issue were based on rights that were exclusive rights provided in § 106. (Pls. Opp. at 14). In addition, Plaintiffs bear down on the Second Circuit's reference to "copying" in these cases, contending that that this is a reference to the right of reproduction under § 106(1). (Pls. Opp. at 14). Plaintiffs' argument finds some traction in Second Circuit precedent holding that "[t]he word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in § 106." *Arista Records LLC v. Doe*, 604 F.3d 110, 117 (2d Cir. 2010). An argument can therefore be made that, in using the word "copying," the Second Circuit was referring to the five exclusive rights specified in § 106.

Again, however, this approach relies on parsing particular words in Second Circuit precedent that did not consider the issue before the Court to arrive at a result contrary to the reasoning and holdings of those cases. The Second Circuit's analysis focuses on the nature of the misappropriation claim and the similarity of those claims to the protections afforded by copyright, rather than considering whether a particular state law misappropriation claim precisely overlaps in scope with one of the specific rights under § 106. *See, e.g., NBA*, 105 F.3d at 845, 851; *Computer Assocs.*, 982 F.2d at 717; *Warner Bros.*, 720 F.2d at 247. Even though the Circuit has not considered the precise issue before the Court, the analytical implication of these cases supports the conclusion that Plaintiffs' alternative claim is preempted.

## CONCLUSION

Based on the statutory text and structure, the legislative history, and the consistent approach to the scope of preemption in Second Circuit precedent, the Court concludes that Count

19

III of Plaintiffs' Complaint is preempted by §301. Aereo's Motion for Judgment on the Pleadings is GRANTED as to Count III of Plaintiffs' Complaint.

SO ORDERED:

Dated: May 21, 2012
      New York, New York

_____
ALISON J. NATHAN
United States District Judge