UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x
:
AMERICAN BROADCASTING COMPANIES,
INC., DISNEY ENTERPRISES, INC., CBS
BROADCASTING INC., CBS STUDIOS INC., :
NBCUNIVERSAL MEDIA, LLC, NBC STUDIOS,
LLC, UNIVERSAL NETWORK TELEVISION, LLC,
TELEMUNDO NETWORK GROUP LLC, and :
WNJU-TV BROADCASTING LLC,                         Civil Action No. 12-CV-1540 (AJN)
:
     Plaintiffs/Counterclaim Defendants,          FILED UNDER SEAL
:
v.
:
AEREO, INC.
:
     Defendant/Counterclaim Plaintiff.
---------------------------------------- X
:
WNET, THIRTEEN, FOX TELEVISION
STATIONS, INC., TWENTIETH CENTURY :
FOX FILM CORPORATION, WPIX, INC.,
UNIVISION TELEVISION GROUP, INC., THE :   Civil Action No. 12-CV-1543 (AJN)
UNIVISION NETWORK LIMITED
PARTNERSHIP, and PUBLIC BROADCASTING :     FILED UNDER SEAL
SERVICE,
:
     Plaintiffs/Counterclaim Defendants,
:
v.
:
AEREO, INC.
:
     Defendant/Counterclaim Plaintiff.
---------------------------------------- x

**AEREO, INC.'S OBJECTIONS TO MAGISTRATE JUDGE PITMAN'S
RULINGS ON DISCOVERY DISPUTES**

Pursuant to Fed. R. Civ. P. 72(a), Defendant Aereo, Inc. ("Aereo") submits the following objections to Magistrate Judge Pitman's March 29, 2013 Order (the "Order"). *See* Exh. 1.[1] While the Order addresses a number of specific, narrow discovery requests, some of which are discussed below, it fails to require Plaintiffs to produce *all* documents:

> … sufficient to identify what harms and commercial impacts Aereo causes that are distinct from the impacts and effects caused by other related technologies such as antennas, DVRs, remote DVRs, and place or media shifting devices such as SlingBox or dongles, as well as for each asserted copyrighted program information sufficient to identify the specific and detailed financial impact on the profit for that program resulting, specifically and only, from the Aereo technology.

*See* Exh. 2 at ¶ 13 (p.19); Exh. 3 at 16.

In virtually every case, a defendant requests (and is entitled to) discovery on the damages alleged by Plaintiffs.[2] In this case, certain Plaintiffs have also asserted claims for contributory infringement[3] and, in response, Aereo has asserted a fair use defense. This defense requires discovery on any commercial impact that Plaintiffs alleged would result from consumers' use of the Aereo technology or similar technology. In most cases, the entry of an explicit order would not be necessary because the discovery requested would simply be produced as required by the Federal Rules. Unfortunately, this has not happened in this case. As described in Aereo's February 1, 2013 letter to the Court, prior to February, Plaintiffs had not produced any documents, other than some copyright registrations and television schedules,[4] forcing Aereo to

---

[1] All exhibits ("Exh.") to these Objections are enclosed with the accompanying declaration of R. David Hosp.
[2] Generally, among document requests propounded by virtually every defendant in every case, is one that asks for "all documents which concern the damages that you allege you have suffered as a result of the defendant's alleged conduct." *E.g.*, *Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369, 374 (S.D.N.Y. 2011) (seeking "all documents pertaining to plaintiffs' calculation of damages"); *see also* Fed. R. Civ. P. 26 Advisory Committee Notes to 1993 Amendments ("A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents.").
[3] The ABC Plaintiffs now take the position, by letter and by comment that they have pleaded such a claim. No such claim appears in their complaint. *See* Exh. 4-6, 18, 19. Unfortunately, Plaintiffs are engaged in the same conduct as occurred at the preliminary injunction hearing where they refused to identify their specific claims until forced by the Court at the eleventh hour, i.e., during the hearing.
[4] Until after the briefing, Plaintiffs did not even begin producing those documents that they *agreed* to produce which are, in their own characterization, those documents that they intend to use to support their claims but not other documents on those topics including those documents that may contradict their claims. *See* Exh. 7 at 3; Exh. 8 at 2; Exh. 9 at 1, 17.

1

seek relief from the Court.  While Aereo completed substantially all of its document production prior to the original discovery deadline in February,[5] Plaintiffs have repeatedly delayed and obfuscated to avoid producing anything.  Plaintiffs have now even refused to identify a specific date by which they will conclude even the very limited production ordered, and have indicated that they will likely still be producing documents well into May.[6]

As a result of Plaintiffs' refusal to abide by the rules or to engage in any semblance of a cooperative discovery process, Aereo requested the entry of a comprehensive order requiring Plaintiffs to produce documents related to harm (usually not a controversial request), and Aereo also identified several sub-categories of specific types of documents that relate to harm and commercial impact.  While the Magistrate Judge has now entered orders regarding certain narrow categories of documents, because Plaintiffs have treated discovery as a game of "hide the ball," Aereo is concerned that without a comprehensive order simply requiring Plaintiffs to produce documents related to the harm and commercial impact that Plaintiffs allege, Aereo will be utterly hamstrung and highly prejudiced in its defense of this case.

Aereo is also concerned that Judge Pitman so narrowly circumscribed harm discovery—even as to those documents that he ordered produced—that it will be denied key documents (some that Aereo knows exist, and others that it may never learn about).  For example, as this Court knows from the two-day preliminary injunction hearing, one of Plaintiffs' contentions is that because Aereo provides technology that allows consumers to receive over-the-air ("OTA") television broadcasts on mobile devices, Aereo is going to harm Plaintiffs by siphoning off—or "cannibalizing"—viewership for Plaintiffs' programming.  Since the preliminary injunction hearing, Aereo has learned that NBC operates what it calls a "Billion Dollar Research Lab" that

---

[5] The Court may recall that Plaintiffs represented then that they had only discrete additional discovery to complete.  Ex. 2 at 20-22. In contrast to those representations, Plaintiffs have pursued a scorched earth path directed to trying to obtain literally every document within Aereo.

[6] It is important to note that, without further discussion with the parties, Judge Pitman also has now set a discovery deadline of June 14, 2013.  *See* Exh. 10 at ¶ 1. Accordingly, Aereo may potentially be forced to proceed with depositions without appropriate document discovery.  Similarly, the new scheduling order makes no mention of the staging of expert discovery, *i.e.*, Plaintiffs' reports, followed by Aereo's responsive reports, as was the case during the prior discovery period in this case.  Aereo intends to raise these and other concerns about the scheduling order with Judge Pitman.

has specifically investigated what happens when consumers are given the ability to watch programs on multiple platforms—*e.g.*, tablets, smart-phones, computers, etc.—in addition to watching programs on their traditional televisions.[7] In a presentation document produced over Plaintiffs' objection, NBC concludes that mobile viewing of OTA broadcasts is "Additive" and there is "No Cannibalization." *See* Exh. 11 at DNC0043390.[8] This is just one example. Given Plaintiffs' claims, this document (and all underlying research data and any related communications) is highly relevant. *See* Fed. R. Evid. 26(b). Yet, under Judge Pitman's Order, this document, and others like it, would not be discoverable. Likewise, as set forth below, certain of the specific categories are unreasonably limited by time[9] or seem to incorporate within them assumptions about facts, or even liability, that are not supportable or appropriate for a discovery order.[10]

## ARGUMENT

In early November 2012 Aereo served document requests seeking, among other things, documents related to Plaintiffs' claims of harm and commercial impact. Aereo made the typical comprehensive request for documents concerning harm but also propounded a number of specific requests on that topic. Plaintiffs resisted this discovery and produced nothing substantive[11] until this Court ordered the parties to submit letter briefs concerning document

---

[7] This is, of course, part of the same functionality that the Aereo technology provides, and that Plaintiffs have claimed is the source of the "harm" caused.

[8] The general theme of the document is that viewers of OTA programming on mobile devices end up watching substantially *more* programming on their televisions and also tend to watch programming on their mobile devices, *while simultaneously watching programming on their televisions*. *See* Exh. 11 at DNC0043378-439.

[9] For example, the Order restricts the production to documents created after Aereo came into existence. *See* Exh. 1 at ¶ 3. Without prior data for comparison, the information would be meaningless. The whole point of the inquiry into the fourth factor of the fair use analysis is to determine what the impact of the challenged use is *compared to* the market without the challenged use.

[10] For example, the Order limits the production of research and analysis concerning other technologies to set-top DVRs and "unlicensed" RS-DVRs and other unlicensed technologies that allow streaming of programming over the Internet. *See id.* at ¶ 3. The limitation of "unlicensed" presumes that research or analysis of the impact of licensed services, such as Hulu or Netflix, on Plaintiffs' OTA broadcasts is irrelevant. It is not. As discussed above, whether licensed or not, these technologies provide functionality that is similar in some ways to that which Aereo provides (at least with respect to recorded programs). Any research that shows how consumers actually behave when given access to that functionality is directly relevant to the issues in this case.

[11] At that point, Plaintiffs' productions consisted primarily of copyright registrations, television schedules, and e-mails containing industry news.

3

discovery disputes by February 1, 2013.  *See* Exh. 2, 8.  Following these letter submissions, the Court referred all discovery disputes to Magistrate Judge Pitman.  On February 25 the parties appeared before Judge Pitman who, at that hearing, asked the parties to submit further briefing on March 8 (Aereo) and March 19 (Plaintiffs) on whether Plaintiffs are required to produce documents evidencing harm and/or commercial impact.  *See* Exh. 3, 7.

In its March 8 brief, Aereo argued that the discovery sought is directly relevant to the claims and defenses asserted in this case, including (i) the appropriate level of statutory damages in the unlikely event that Aereo were to be determined to have infringed Plaintiffs' works;[12] (ii) the fourth fair use factor—the effect of the allegedly infringing use on the market for and value of the work; and (iii) whether permanent injunctive relief is appropriate.

A further hearing was held on March 21, at which Judge Pitman in large part denied Aereo's request for the requested discovery.[13]  At the hearing, Judge Pitman would not enter an order compelling production in response to Aereo's ordinary request for all damages or commercial impact documents; instead he focused exclusively on sub-categories and, in the process, narrowly and improperly circumscribed harm discovery.  Because Plaintiffs have made clear that they intend to produce as few documents as possible, irrespective of relevance, this approach will severely limit Aereo's ability to defend itself from Plaintiffs' damage claims, to present a fair use defense,[14] will deny Aereo relevant documents it knows to exist, and will prevent Aereo from discovering other critical documents that it may never know exist.[15]

---

[12] Statutory damages can range from $200 per work to $150,000 per work.  17 U.S.C. § 504(c)(1), (2); *see also, e.g.*, *Bryant v. Media Right Prods.*, 603 F.3d 135, 139 (2d Cir. 2010) (citing 17 U.S.C. § 504(c)(1), (2)).

[13] The bases for the Court's Order are embodied in the Transcript of Proceedings dated March 21, 2013.  The relevant portions of the transcript are attached as Exh. 12 and highlighted with respect to the issues discussed herein.

[14] One purpose of discovery is to prevent unfair surprise.  *Taylor v. Ill.*, 484 U.S. 400, 425 (1988) ("Discovery helps . . . prevent[] factors such as surprise from influencing the outcome at the expense of the merits of the case."). Plaintiffs have shown a propensity for hiding the ball with their requested relief in the Preliminary Injunction, documents that contradict their irreparable harm testimony, and failure to commit to a contributory infringement claim (in the case of the ABC Plaintiffs).

[15] This is not speculation.  Aereo recently learned that despite its document requests propounded during the preliminary injunction stage, Plaintiffs did not produce documents that pre-dated the filing of the complaint from Ms. Brennan that concerned Aereo—despite calling her as a live witness.  *See* Exh. 13.  Plaintiffs likewise did not produce documents concerning their "Billion Dollar Research Lab," despite the fact that such documents also pre-dated the filing of the complaint.  Similarly, Plaintiffs initially refused to identify their document repositories so that Aereo could not challenge their document searches.  Judge Pitman ordered Plaintiffs to disclose their repositories,

4

The following are examples of the Magistrate's improper exclusive focus on narrow requests and why a comprehensive and simple damages order—as requested by Aereo—is essential.

**Limiting harm discovery to so-called "unlicensed services."** The Magistrate Judge's Order limiting discovery to certain categories of documents relating to alleged harm appears to be a product of incorrect presumptions about facts and even Aereo's liability. For example, the Magistrate concluded that only documents related to harm or commercial impact caused by "unlicensed" services are relevant.[16] The inference is that a consumer's use of Aereo's technology is "unlicensed"—a finding that has never been made and one that Aereo vigorously disputes.[17] And, of course, this characterization provides no real line because Plaintiffs and Aereo have a very different subjective view of what is licensed and what is not. Based on these apparent assumptions, the Magistrate Judge concluded that Plaintiffs need only produce documents "regarding damage or consumer research concerning home DVRs and, concerning home DVRs and unlicensed remote DVRs and *unlicensed* internet, and *unlicensed* technologies that provide for the transmission of plaintiffs' programming, or plaintiffs' copyrighted works over the internet." *See* Exh. 12 at 80:20-81:6; Exh. 1 at ¶ 3.[18]

Under this limitation, the "Billion Dollar Research Lab" document would not be subject

---

but even then they provided only a simple list of names, without identifying the individuals' position or even their employers.

[16] *See* Exh. 12 at 81:12-21 ("The issue under fair use is whether an unauthorized, unlicensed use or a use that's not permitted by the copyright holder constitutes fair use. If you include that, if you include licensed or permitted uses within that, you're necessarily talking about something that's not of the sort, not conduct of the sort engaged in by the defendant. If it were conduct of the sort engaged in by the defendant, you wouldn't even get to the question of fair use because the conduct would be licensed. So I'm limiting those three categories . . .").

[17] Aereo has consistently argued that by broadcasting their programs over the air in accordance with a license with the FCC, Plaintiffs have licensed consumers to use antenna technology (like that provided by Aereo) to access and watch those programs.

[18] Some of the topics that now have this "unlicensed" technologies limitation include Aereo's requests for documents concerning "documents on damages and commercial impact generally" (Exh. 2 at ¶ 13 (p.19); Exh. 3 at 16), "documents concerning other similar technology, including consumer use of placeshifting or media-shifting devices such as Slingbox, dongles, etc." (Exh. 2 at ¶ 7 (p. 13); Exh. 3 at 18), "documents related to consumer and other research, including ratings and viewership research on alternative platforms" (Exh. 2 at ¶ 8 (p. 14); Exh. 3 at 19). The Court also limited documents concerning the purported effect of "ad-skipping" to "any analysis regarding ad-skipping by home DVRs" (Exh. 12 at 108:24-109:3), which would improperly exclude similar relevant documents concerning the effect of ad-skipping by RS-DVRs and other technologies. *See* Exh. 1 at ¶ 6.

to production because it concerned how consumers behave when watching over-the-air broadcasts on mobile devices *where the plaintiffs would characterize the broadcast as licensed*. Judge Pitman was asked this question specifically and concluded that the document need not be produced under this limitation.[19]  That document is highly relevant, however, because the conclusions drawn—that consumers who view OTA programming on mobile devices are going to watch *more* OTA programming on their televisions and are likely to watch the OTA programming *simultaneously* on their mobile device and television—apply equally to Aereo consumers.  It makes no difference, for purposes of determining how consumers are likely to act when they watch OTA programming on a mobile device, whether the presence of the programming on that device is licensed—in plaintiffs' view—or not.  Consumers will act the same regardless.  NBC's research and conclusions that mobile use is not likely to "cannibalize" existing programming is highly relevant—indeed, *central* to this case.  *See* Fed. R. Civ. P. 26(b)(1) (court may order discovery into relevant material and material likely to lead to the discovery of admissible material); *Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) ("[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.").[20]

**Limiting harm discovery to the "post-Aereo" time frame.**  The Order also limits the scope of discovery by time in a manner that will deny Aereo access to fundamental discovery that should not be controversial.  Aereo disclosed its technology platform to the public and directly to several Plaintiffs or their affiliates in or about May 2011.  Magistrate Judge Pitman

---

[19] When asked the Court stated that if the document concerning licensed programming, it would be outside the order.  *See* Exh. 12 at 83:8-13 ("Well, it was just handed up to me about 20 minutes ago, and I haven't read it.  If it relates to home DVR's, unlicensed remote DVR's, and unlicensed technologies that provide for the transmission of plaintiffs' copyrighted works over the internet, yes.  If it doesn't relate to those three categories, no.").
[20] Judge Pitman also seemed to not understand that the Aereo technology begins with a remotely-located antenna. *See id.* at 64-66 ("I mean remotely accessing the signal seems to me to sort of be self-evident.  Anybody who watches TV, unless they're in the studio, they're remotely accessing the signal, aren't they?").  He incorrectly found that Plaintiffs' documents concerning Plaintiffs' efforts to limit consumer use of antennas was irrelevant.  *Id*. at 109:6-124:20-21 ("This just seems so attenuated that it really doesn't have any relevance here.  To the extent you're seeking documents concerning the consumer use of antennas, the objection is sustained.").  *See* Exh. 1 at ¶ 7.

limited discovery concerning the renegotiation of licensing agreements to those that occurred after May 2011, *i.e.*, a post-Aereo time frame. *See* Exh. 1 at ¶ 1. In order to evaluate Plaintiffs' claims that consumers' use of Aereo will impact—*i.e.,* change—the market for their programming, the Court must have an understanding of what that market was for a sufficient period *before* Aereo announced or entered the market. Simply looking at current data without comparative historical data, tells us nothing.

Similarly, Judge Pitman limited discovery concerning the commercial impact of similar technologies (*id*. at ¶ 3) and impact of claimed ad-skipping (*id*. at ¶ 6) to the period after January 2010. The impact of similar technologies and ad-skipping has been a focus of Plaintiffs' research for many years—Magistrate Judge Pitman's limitation of the period to a brief period before Aereo's launch is likely to avoid production of documents that may be highly relevant to Aereo's defense. For these reasons, documents produced in response to these requests (*See* Exh. 2 at ¶¶ 5 (p. 10), 6 (p. 10), 7 (p. 11), 8 (p. 12), 11 (p. 14) and 13 (p. 16)) must extend back for some reasonable period. Aereo has suggested that January 1, 2005—immediately prior to the *Cablevision* case—is the appropriate time period to make a meaningful comparison.

**Limiting harm discovery regarding "similar" technologies.** The Order also denies discovery regarding consumer use of technologies that provide similar functionality—like antennas. *See* Exh. 1 at ¶ 7. This Court has already noted the relevance of the ways in which consumers use these similar available technologies, and has already noted that Aereo's technology provides functionality that is similar in many ways to what consumers can already have using traditional antenna technology. *See* Exh. 14 at 373, 377. How consumers can and do use that technology is relevant. Nonetheless, the Order does not require Plaintiffs to produce documents related to this topic.[21] Aereo provides consumers with a remote antenna. It is

---

[21] This limitation presents another problem insofar as Plaintiffs' views on whether services or products are "licensed" is subject to change, During the *Cablevision* case Plaintiffs took the view that the RS-DVR was not licensed, *see* Exh. 15 at 5, however, in this case, when trying to distinguish *Cablevision* from Aereo, Plaintiffs took the opposite position. *See* Exh. 16 at 14. Given Plaintiffs' willingness to characterize a service or product as licensed or unlicensed as it suits their litigation strategy any discovery limitation on that ground is improper and unfair to Aereo.

7

extremely relevant to understand if Plaintiffs' positions on harm in this case also apply in Plaintiffs' view to consumer use of antennas generally. In other words, do Plaintiffs take actions to discourage consumer use of antennas to boost retransmission fees? If so, Plaintiffs' actions toward Aereo may not be motivated by "harm" but rather by trying to prevent consumer use of antennas generally.

**Limiting harm discovery based on the present number of Aereo subscribers.** Aereo is also concerned that its ability to obtain discovery has been unfairly narrowed based on the number of subscribers it *had*, which is a number that can easily change from day to day. Judge Pitman repeatedly asked, in response to Plaintiffs' urging, how many subscribers Aereo currently has, suggesting that because Aereo is presently relatively small (at least as compared to Plaintiffs), it is not entitled to all documents concerning harm or commercial impact.[22] There is no case of which Aereo is aware in which a complaint of ongoing conduct, as here, is frozen at some arbitrary point (but only for the defendant) in order to limit a defendant's discovery of harm-related documents.

The present number of Aereo subscribers does not dictate whether Aereo is entitled to document discovery on Plaintiffs' claimed harm or commercial impact. As a threshold matter, commercial impact is based on the technology, not the specific number of Aereo subscribers. Even if Plaintiffs now admit that they cannot measure any present quantifiable harm due to Aereo,[23] Aereo is still entitled to documents to rebut Plaintiffs' alleged *unquantifiable* harm or to show that the claimed infringed works have had *increased* advertising sales or otherwise increased in value, since Aereo launched or based on adoption of its technology.

Aereo's present size as it relates to the Plaintiffs' carefully articulated category of

---

[22] For example, the Court found that, despite Plaintiffs' claims that Aereo would affect their ability to sell advertising, Aereo was not entitled to program-by-program discovery concerning costs, revenue, and advertising. *See* Exh. 12 at 79:10-20; Exh. 1 at ¶¶ 2, 4-5. He seemed to adopt Plaintiffs argument that because of Aereo's size there was unlikely to be any noticeable impact on program-by-program costs, revenue, and advertising. Even if this were true, Aereo is entitled to discover documents showing that Plaintiffs' claimed infringed works did not suffer harm, but their revenue *improved* during the relevant period.

[23] Exh. 7 at 12 ("Plaintiffs are not asserting that [Aereo] presently causes measurable, quantifiable harm that would be reflected in such information.").

"present" and "measurable" and "quantifiable" harm likewise does not make irrelevant documents reflecting *future* financial projections for the claimed infringed works, any irreparable evidence harm that is necessarily unquantifiable, and Aereo's defense to the indirect infringement claim and assertion of the consumers' fair use. Moreover, Aereo has publicly announced that it intends to launch in 22 additional cities this year—its subscriber numbers will increase significantly in the near term. *If the number of subscribers changes, do the parties need to revisit the scope of discovery each time?* Relevance and the scope of discovery are not moving and indefinite targets. Aereo is entitled to an order that requires Plaintiffs to produce all documents related to harm and commercial impact from Aereo and similar technologies.

**Limiting production of license agreements based on confidentiality.** Aereo is also concerned that the Order ignores the protections set forth in this Court's Protective Order, and denies discovery of a whole new category of *relevant* information that cannot even be seen by outside litigation counsel based on the judgment of *third parties*. Specifically, several of Plaintiffs' licensing partners appeared at the March 21 conference and argued that their commercial information embodied in the Plaintiffs' licensing agreements was so confidential that even Aereo's outside counsel could not see it under the existing Protective Order. Despite the fact that counsel for those third parties was unable to articulate any specific terms of licensing and/or other agreements that are so highly confidential that outside counsel cannot even see the terms in order to defend against efforts to shut down Aereo, the Order allows third parties to redact relevant, non-privileged information from agreements that underlie Plaintiffs' claims of irreparable harm. Indeed, the information that Judge Pitman has allowed to be redacted is the most relevant information—the material and financial terms of the agreement that would either show or not show an impact on the market.

This Court previously ordered Plaintiffs to produce analogous agreements pursuant to the

9

existing Protective Order.[24]  The Protective Order was crafted as a two-tier order to specifically address the highly confidential nature of the retransmission agreements.  Aereo agreed to treat the Licensing Agreements in the same fashion, and maintain them as Attorney's Eyes' Only.  Even though counsel could not articulate why "Attorney's Eyes Only" treatment was not good enough, Magistrate Judge Pitman still allowed redaction of relevant, non-privileged information.  There is no precedent for excluding outside counsel from viewing such documents and it is at odds with this Court's prior decision when confronted with the same issue.  *See* Exh. 17.

**Setting discovery close before documents have been produced.**  Finally, Magistrate Judge Pitman has rewarded Plaintiffs for ignoring the rules and their dilatory and obfuscatory tactics.  Aereo materially completed all of its document productions long before the original close of discovery in this case in February.  By contrast, Plaintiffs had produced virtually nothing as of February 1, and even with respect to documents they have agreed to produce or have been ordered to produce, Plaintiffs have not been able to confirm that they will be able to complete the production of documents until well into May.  Shortly after entering the Order, Magistrate Judge Pitman entered a separate order setting, among other things, the close of discovery at June 14, 2013.  As a result, Aereo will have to start taking depositions before it has received or had the opportunity to review much of Plaintiffs' production.  This means that Plaintiffs are at a significant advantage in conducting their discovery because of their (successful) attempts to conceal documents.  This is fundamentally unfair.

## CONCLUSION

Aereo objects to the March 29, 2013 Order and requests that this Court enter an order compelling Plaintiffs to produce all documents concerning evidence of harm or commercial impact.  Without limitation on the foregoing, Plaintiffs should be compelled to produce information sufficient to identify what harms and commercial impacts Aereo and/or its

---

[24] Plaintiffs also have, without any legitimate basis, redacted material terms from the retransmission agreements that this Court ordered Plaintiffs to produce. Aereo has demanded the production of unredacted agreements and Plaintiffs have refused, but this issue was not specifically before Judge Pitman.

technology causes, overall and on a per program basis, that are distinct from the impacts and effects caused by other related technologies such as antennas, DVRs, remote DVRs, and place or media shifting devices such as SlingBox or dongles.

Dated: April 12, 2013                                Respectfully submitted,

                                                           __*/s/ R. David Hosp*__
R. David Hosp (DH 3344)
Mark S. Puzella   (Admitted *pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, Massachusetts 02210
Tel.: (617) 368-2125
Fax: (617) 542-8906
hosp@fr.com
puzella@fr.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
melkin@winston.com
tlane@winston.com

Jennifer A. Golinveaux (admitted pro hac vice)
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jgolinveaux@winston.com

*Attorneys for Defendant Aereo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2013, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Neil Ramsaroop*_____
Neil Ramsaroop