UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------X
                                                :

AMERICAN BROADCASTING COMPANIES, INC.,   :
DISNEY ENTERPRISES, INC., CBS BROADCASTING  :
INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA,  :
LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK  :
TELEVISION, LLC, TELEMUNDO NETWORK GROUP  :
LLC, and WNJU-TV BROADCASTING LLC,  :
                                                :

       Plaintiffs,                                :

           v.                                   :  Case No. 12-civ-1540
                                             :  [consolidated]
AEREO, INC.,                                   :
                                                  :

       Defendant.                                :
                                                :
----------------------------------------------------------------------------X
----------------------------------------------------------------------------X
                                                  :

WNET, THIRTEEN, FOX TELEVISION STATIONS, INC.,  :
TWENTIETH CENTURY FOX FILM CORPORATION,  :
WPIX, INC., UNIVISION TELEVISION GROUP, INC.,  :
THE UNIVISION NETWORK LIMITED PARTNERSHIP,  :
and PUBLIC BROADCATING SERVICE  :
                                                  :

       Plaintiffs,                                :

           v.                                   :  Case No. 12-civ-1543
AEREO, INC. f/k/a BAMBOOM LABS, INC.,  :
                                                  :

       Defendant.                                :
                                                :
----------------------------------------------------------------------------X

**PLAINTIFFS' RESPONSE TO AEREO, INC.'S OBJECTIONS TO MAGISTRATE
JUDGE PITMAN'S RULINGS ON DISCOVERY DISPUTES**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ..................................................................................... 4

DISCUSSION ......................................................................................... 6

I.      Judge Pitman Properly Exercised His Discretion In Limiting Aereo's Overbroad
        and Vague Discovery Requests. ................................................... 6

        A.      The Contention That Plaintiffs Have Not Produced "Anything" (Obj. at 4)
                Is False. ........................................................................ 6

        B.      Judge Pitman Correctly Denied Further Discovery into Program-Related
                and Other Financial Information................................................ 8

        C.      Judge Pitman's Refusal to Grant Wide-Ranging Discovery Relating to
                Similar Technologies, "Like Antennas," Or Transmission Services,
                Whether Licensed Or Not, Was Appropriate................................... 10

                1.      Under the Relevant Standard, Correctly Applied by Judge Pitman,
                        Aereo Has All The Discovery It Needs. .................................. 11

                2.      Production of Antenna-Related Documents Is Irrelevant And
                        Would Be Overwhelmingly Burdensome.................................. 13

                3.      Discovery Into Licensed Technologies Is Irrelevant to Quantifying
                        Harm Because They Can Cause No Harm Relevant to Fair Use............. 14

        D.      The Time Frames For Production Of Documents Are More Than
                Generous And Not Clearly Erroneous. ..................................... 16

        E.      Permitting Redactions To Third-Party License Agreements Was Not
                Clearly Erroneous. ........................................................ 18

        F.      Judge Pitman Did Not Err In Setting A Discovery Schedule. ............. 19

CONCLUSION........................................................................................ 20

# TABLE OF AUTHORITIES

CASES

*Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373 (S.D.N.Y. 2012) ........................ 12, 13

*Arista Records LLC v. Lime Group LLC*, 06 CV 5936 KMW, 2011 WL 1486640
    (S.D.N.Y. Apr. 11, 2011) ........................................................................................... 9

*Bridgewater v. Taylor*, 745 F. Supp. 2d 355 (S.D.N.Y. 2010) ........................................... 4

*Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369 (S.D.N.Y. 2011) ................... 9

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........................................... 8, 11

*Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07-cv-9931 (S.D.N.Y. April 12,
    2010) ........................................................................................................ 9

*Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) ........................ 1

*Crawford-El v. Britton*, 523 U.S. 574 (1998) .......................................................... 13

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269 (S.D.N.Y. 1999) ...................... 13

*Flaherty v. Filardi*, 388 F. Supp. 2d 274 (S.D.N.Y. 2005) ............................................ 4

*Fox Television Stations v. Barry Driller Content Sys., PLC*, No. CV 12-6921, 2012
    WL 6784498 (C.D. Cal. Dec. 27, 2012) .............................................................. 12

*Hughes v. Lasalle Bank, N.A.*, No. 02 Civ. 6384, 2004 WL 414828 (S.D.N.Y. Mar.
    4, 2004) ................................................................................................. 1, 4

*In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399 (N.D. Ohio 2011) .................................. 18

*Moore v. Publicis Groupe SA*, No. 11-cv-1279, 2012 WL 517207 (S.D.N.Y. Feb.
    14, 2012) ................................................................................................ 18

*Pkfinans Int'l Corp v. IBJ Schrader Leasing Corp.*, Nos. 93 Civ. 5375 (SAS), 96
    Civ. 1816 (SAS), 1996 WL 675772 (S.D.N.Y. Nov. 21, 1996) .................................... 4

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282
    F.R.D. 76 (S.D.N.Y. 2012) ............................................................................ 4

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ...................................................... 12

*Sheikhan v. Lenox Hill Hosp.*, No. 98 Civ. 6468 (WHP), 1999 WL 386714 (S.D.N.Y. Jun. 11, 1999)................................................................................................ 4

*Warner Bros. Entm't, Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008)...................... 12

*Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011)................ 13

*Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327 (2d Cir. 1983)............................................. 14

*World Wrestling Fed. Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263 (S.D.N.Y. 2001) ............................................................................................................... 1

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) ................................................................. 12

### STATUTES & RULES

28 U.S.C. § 636(b)(1)(A) ......................................................................................................... 1

Fed. R. Civ. P. 72(a)................................................................................................................ 1

Fed. R. Civ. P. 26 .................................................................................................................. 20

The ABC Plaintiffs and the WNET Plaintiffs (collectively, "Plaintiffs") submit this memorandum in response to the objections filed by Aereo, Inc. ("Aereo") to U.S. Magistrate Judge Henry B. Pitman's March 29, 2013 Order ("Order").  *See* Declaration of Michael R. Potenza ("Potenza Decl.") Ex. 1.

## PRELIMINARY STATEMENT

Nowhere does Aereo cite the standard governing this Court's review of Judge Pitman's Order.  Unless the Order is "clearly erroneous" or "contrary to law," it should be affirmed.  *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hughes v. Lasalle Bank, N.A.*, No. 02 Civ. 6384, 2004 WL 414828 at *1-2 (S.D.N.Y. Mar. 4, 2004) (Pollack, J.) (affirming Judge Pitman where plaintiffs "made no attempt" to show ruling was "clearly erroneous or contrary to law").[1]  For the reasons explained below, Aereo does not come close to meeting that standard.

Similarly, Aereo cites not a single case that holds a proper order would require the production of "documents related to harm and commercial impact from Aereo and similar technologies" on the theory that it is "comprehensive."  Aereo Objections at 2, 9 ("Obj."). The improper overbreadth of such an order is apparent on its face, and its burden is compounded by the further demand that Plaintiffs produce "*all* documents" sufficient to identify:

---

[1]   The "clearly erroneous" standard is met only if "the reviewing court on the entire evidence is left with the ***definite and firm conviction*** that a mistake has been committed."  *World Wrestling Fed. Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 264 (S.D.N.Y. 2001) (Berman, J.) (affirming Pitman, M.J.) (emphasis added).  Similarly, an order is "contrary to law" only when it "fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Id.*; *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

- "harms and commercial impacts Aereo causes" that are distinct from "related" technologies such as antennas, DVRs, SlingBox or dongles; and

- for every television program broadcast by Plaintiffs "the specific and detailed financial impact on the profit for [each copyrighted] program resulting, specifically and only, from the Aereo technology."

Obj. at 1 (emphasis in original).

Aereo has no support for good reason:  As Judge Pitman recognized in rejecting Aereo's request, its objections are based on a misstatement of the governing substantive law of copyright, which sets the standard for relevance.[2]  In particular, Aereo incorrectly characterizes the market harm inquiry of the fourth fair use factor, which – as Judge Pitman noted on the record – does not support Aereo's demands.  Potenza Decl. Ex. 2 (3/21 Tr. 81:7-24).

Aereo also demands a forensic analysis, consisting of accounting-level details for each of the growing number of thousands of programs Aereo has infringed by retransmitting Plaintiffs' broadcast programs 24 hours a day, 7 days a week, even though Plaintiffs have elected only statutory damages.  That election, under the well-settled case law also cited on the record by Judge Pitman, makes such details irrelevant.  3/21 Tr. 32:15-33:10.

---

[2]   Aereo asserts, without specific authority, that an order of the sweep that it seeks is "usually not . . . controversial," based on the proposition that a plaintiff is required to prove its damages at common law once liability has been determined.  Aereo confuses damages with the market harm test under the fourth fair use factor and, for that reason, its citation to cases relating to damages are inapposite.  *See* Obj. at 1 n.2.

Worse still, to justify its sweeping objections, Aereo literally claims Plaintiffs have "avoid[ed] producing anything." Obj. at 2. That false statement should not be accepted at face value:

- As to market harm, Plaintiffs produced voluminous documents and information, including the documents described below, that both establish the markets adversely impacted by Aereo and Aereo-like services, and how Plaintiffs would be harmed if such services became widespread. *See* pp. 6-8 *infra*;

- As to the irreparable nature of the harm Aereo causes, the Second Circuit, this Court and other courts have already concluded that discovery of the sort produced to date and that Judge Pitman ordered is sufficient for an adequate record to be built. *See* pp. 10-16 *infra*.

- As to statutory damages, Plaintiffs have produced copyright registrations and the Court has found irreparable harm from Aereo's activities, which is more than sufficient to support (or contest) an award of statutory damages. *See* pp. 8-10 *infra*.

Perhaps most significantly, Aereo also fails to advise the Court that Judge Pitman, aware of the scope of Plaintiffs' production, repeatedly asked Aereo to explain why the discovery already provided was and would not be enough. Aereo had no answer. 3/21 Tr. 5:13-6:8. Aereo also glosses over that Judge Pitman gave Aereo the specific opportunity to provide to him, *in camera*, the number of its current subscribers – on the theory that if the number were truly large enough, perhaps more detailed financial data from Plaintiffs possibly might be expected to yield meaningful information as to harm caused by Aereo. Aereo refused to do so. Instead, it expressly agreed that it would let "Your Honor's decision" as to damages discovery "stand." 3/21 Tr. 91:15-95:4. Nowhere does Aereo disclose this to the Court.

3

In short, Aereo's objections are based on the incorrect contention that case law

supports its request – it does not – and a distortion of the record on which Judge Pitman

ruled.  That is no basis on which to conclude Judge Pitman abused his discretion.  *See*

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D.

76, 78 (S.D.N.Y. 2012) ("highly deferential" review and reversal is appropriate only "if . . .

discretion is abused").  The burden on the "party seeking to modify or set aside an order of

a magistrate judge" is "heavy."  *See Pkfinans Int'l Corp v. IBJ Schrader Leasing Corp.*,

Nos. 93 Civ. 5375 (SAS), 96 Civ. 1816 (SAS), 1996 WL 675772 at *1 (S.D.N.Y. Nov. 21,

1996).[3]  Aereo has not met it, and this Court should affirm the Order.[4]

## BACKGROUND

This Court referred all general pre-trial matters to Judge Pitman.  Dkt. 135.  Judge

Pitman considered the arguments by the parties made in several discovery letters and held

a 3-hour hearing on February 25, 2013.  Potenza Decl. Ex. 3.  Before issuing the Order,

Judge Pitman ordered further briefing on the fair use/market harm factor and general

damages discovery.  *Id.* Exs. 4 – 5.  After that, Judge Pitman held a second, 4-hour

---

[3]   Under that standard, Magistrate Judge Pitman's pre-trial rulings repeatedly have been
affirmed by Judges of this Court.  *See, e.g., Bridgewater v. Taylor*, 745 F. Supp. 2d
355 (S.D.N.Y. 2010) (Marrero, J.); *Flaherty v. Filardi*, 388 F. Supp. 2d 274 (S.D.N.Y.
2005) (Swain, J.); *Hughes*, 2004 WL 414828 (Pollack, J.); *Sheikhan v. Lenox Hill
Hosp.*, No. 98 Civ. 6468 (WHP), 1999 WL 386714 (S.D.N.Y. Jun. 11, 1999) (Pauley,
J.); *Pkfinans*, 1996 WL 675772 (Scheindlin, J.).

[4]   The ABC Plaintiffs have asked Judge Pitman to reconsider his Order to the extent it
requires production of ***all*** documents concerning the renegotiation of retransmission
licenses that occurred after May 2011, as opposed to entering into an appropriate
stipulation, as Judge Pitman himself proposed.  Aereo and the WNET Plaintiffs have
submitted their own views on that proposal and the motion is pending.

hearing, this time focused exclusively on market harm and damages discovery issues.  *See* 3/21 Tr.  Aereo barely acknowledges this record.

The six "examples," Obj. at 5-10, Aereo offers in support of its objections actually illustrate why the Order is appropriate:

(1)    It denied the production of additional financial documents, Order at 2, ¶4; Obj. at 1, because Plaintiffs neither claim per program financial harm nor seek monetary recovery other than statutory damages.  Moreover, Aereo waived its request for more financial info.  *See* pp. 8-10, *infra*.

(2)    It denied Aereo's request for documents regarding "[h]ow consumers can and do use" purportedly "similar" technologies "like antennas," Order at 3, ¶7; Obj. at 7, because Judge Pitman recognized the relevance of such documents is "attenuated" and their production burdensome.  3/21 Tr. 124:18-21.  *See* pp. 13-14 *infra*.

(3)    It excluded discovery on licensed Internet retransmission technologies, beyond the license agreements Plaintiffs have already agreed to produce pending an addendum to the Protective Order in this case, Order at 2, ¶3; Aereo Obj. at 5, because, by definition, a licensed service cannot harm Plaintiffs and is irrelevant to any market harm caused by Aereo or similar services.  *See* pp. 14-16, *infra*.

(4)    It imposed time limits on Aereo's requests for documents relating to the renegotiation of retransmission agreements and research on in-home DVRs, unlicensed remote DVRs, unlicensed Internet retransmission and ad-skipping or fast-forwarding by in-home DVRs.  Order at 1, ¶1;  *id.* at 2, ¶3; *id.* at 3, ¶6; Obj. at 6-7.  These limitations were based in part on Aereo's own suggestion and, if anything, generous to Aereo given the marginal relevance of these documents and the discovery already had of Plaintiffs. *See* pp. 16-18, *infra*.

(5)    It allows for the redaction of commercially sensitive terms in certain of Plaintiffs' license agreements.  Order at 3, ¶8; Obj. at 9-10.  In doing so, Judge Pitman established an orderly procedure that properly balanced the marginal relevance, if any, of such terms and the need for confidentiality. *See* pp. 18-19, *infra*.

(6)    By separate Order, Judge Pitman also set a discovery cut-off of June 14, 2013.  Potenza Decl. Ex. 6 (4/1 Order); Obj. at 10.  The schedule allows time for Plaintiffs to produce the documents Judge Pitman ordered well

before Aereo's depositions of Plaintiffs' witnesses (subject to the resolution of one outstanding issue, *see* n.4, *supra*).[5]  *See* p. 19, *infra*.

## DISCUSSION

**I.**     **Judge Pitman Properly Exercised His Discretion In Limiting Aereo's Overbroad and Vague Discovery Requests.**

   **A.**     **The Contention That Plaintiffs Have Not Produced "Anything" (Obj. at 4) Is False.**

Aereo begins with the demonstrably false statement that Plaintiffs have not "produced any documents, other than some copyright registration and television schedules."  Obj. at 1.  In fact, Plaintiffs have produced tens of thousands of pages relating to damages and market harm[6] – far more than has been required in any similar case – including:

   (1)     pre-litigation documents that concern Aereo (including Bamboom, Aereo's former name);

   (2)     gross domestic broadcast television advertising revenue from 2011 and 2012, which is broken down by national and local advertising revenue;

   (3)     all retransmission consent agreements for the New York City DMA in effect as of April 2012, and any amendments thereto or additional agreements entered since that time;

   (4)     documents concerning negotiations of retransmission agreements or license agreements for online or mobile distribution of broadcast television

---

[5]     Should Judge Pitman deny the ABC Plaintiffs' motion for reconsideration, the June 14, 2013 deadline will not be sufficient time for the production of the voluminous documents related to the renegotiation of retransmission agreements that Judge Pitman has ordered be produced.

[6]     The details of the slight variations of the documents produced by the ABC Plaintiffs and WNET Plaintiffs is set forth in Exhibit A to the Shepard Declaration in Support of Plaintiffs' Memorandum of Law Pursuant to Magistrate Judge Pitman's February 26, 2013 Order.  Potenza Decl. Ex. 4, at Ex. A.

programs that reference Aereo, Filmon, Filmonx, Alki David, ivi, Aereokiller, BarryDriller, Zediva/Zedeva or Chet Kanojia;

(5)    Nielsen ratings for live and C+3 measurements of broadcast television viewing in 2011 and 2012;

(6)    comScore data on the viewership of broadcast television programs over the Internet or on mobile devices in 2011 and 2012;

(7)    market research from 2011 and 2012 concerning the impact of remote-storage DVRs, Slingbox, Aereo, as well as other unauthorized television retransmission services, such as ivi, Aereokiller, Zediva or Filmon, on Plaintiffs' domestic over-the-air retransmission, online or mobile markets for broadcast television programs;

(8)    documents from 2011 and 2012, regarding technology that Plaintiffs have developed and deployed to distribute broadcast television programming to mobile devices over the Internet;

(9)    documents concerning the adverse impact of Aereo on the potential market for Dyle;

(10)    Plaintiffs' communications with the government regarding Aereo or Bamboom; and

(11)    documents that establish the existence of and Plaintiffs' licensing into the video-on-demand ("VOD") market, specifically, domestic license agreements with iTunes, Hulu, Amazon and Netflix (subject to those third parties' redactions pursuant to the Order).[7]

Given this voluminous production, at the outset of the March 21 hearing, Judge Pitman put to Aereo a crucial question it never answered: "I guess the principal question I have for defendants is why is what plaintiffs have produced insufficient? Why do you need more?" 3/21 Tr. 5:13-6:8. Aereo was not able to answer Judge Pitman and its

---

[7]    The WNET Plaintiffs have also produced domestic license agreements with additional third parties, aggregated revenues derived from these licensing agreements on a quarterly basis, as well as some other additional documents. *See* Potenza Decl. Ex. 4, at Ex. A.

objections before this Court shed no more light on why it needs more documents from Plaintiffs.

**B.     Judge Pitman Correctly Denied Further Discovery into Program-Related and Other Financial Information.**

Under Aereo's view, a "comprehensive" order would compel production of, for each copyrighted television program broadcast by Plaintiffs, "detailed financial" information. *See* Obj. at 1. Judge Pitman denied Aereo's requests for such information for three reasons.

First, Judge Pitman recognized that, under a fair use analysis, market harm need not be based on detailed financial information regarding the current effect of the infringing activity on the infringed works. Here, Plaintiffs have acknowledged that the harm caused by Aereo to date is not quantifiable. *See* 3/21 Tr. 9:12-18. For that reason, the detailed financial information requested is of no relevance. Accordingly, the analysis of harm will turn on whether there would be an adverse impact on the market for the copyrighted works should conduct like Aereo's become widespread. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); 3/21 Tr. 45:8-18.

For similar reasons, Aereo's assertion that, in order to respond to the "*unquantifiable* harm" it causes, it needs to show that (a) advertising sales have "*increased*," (b) Plaintiffs' programs have increased in value, and (c) how Plaintiffs revise "*future* financial projections," (something it did not seek before Judge Pitman) has no support in any copyright case. Obj. at 8-9 (emphases in original). These arguments make no sense. The type of market harm to which *Campbell* refers has nothing to do with **quantifiable** data, it is based on the inevitable erosion of existing or potential markets that

8

occurs when copyright exclusivity is lost.  In short, Aereo seeks to hold Plaintiffs to a harm threshold they do not argue and need not meet.

Second, Judge Pitman correctly recognized that detailed financial documents have extremely limited relevance where a copyright plaintiff has elected to recover statutory damages instead of actual damages based on lost revenues or profits.  *See* Potenza Decl. Ex. 4 (3/19 Brief at 12-14); 3/21 Tr. 32:15-33:10.[8]  Detailed accounting-level damages discovery of the type Aereo seeks is routinely rejected by judges of this Court in cases where copyright owners elect to recover statutory damages.  *See Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07-cv-9931 WHP-FM (S.D.N.Y. April 12, 2010), ECF No. 168, at 2-3 (affirming denial of profit discovery where statutory damages had been elected and defendants had failed to articulate how it would screen the plethora of factors impacting profitability to determine defendant's impact); *Arista Records LLC v. Lime Group LLC*, 06 CV 5936 KMW, 2011 WL 1486640, at *2-3 (S.D.N.Y. Apr. 11, 2011) ("Had Plaintiffs been pursuing actual damages rather than statutory damages for their post-1972 sound recordings, Defendants likely would have been entitled to greater profits and cost-based discovery."); *see also id.* at *2 n.2 (noting defendants were "denied royalty, profit and cost information").

---

[8]    Aereo incorrectly suggests that Plaintiffs have not agreed to provide and have not provided "documents which concern the damages that [Plaintiffs] allege they have suffered as a result of [Aereo's] alleged conduct."  *See* Obj. at 1 n.2 (quoting *Briese Lichttechnick Vertriebs GmbH v. Langton*, 272 F.R.D. 369, 374 (S.D.N.Y. 2011)). That is not true.  *See* Potenza Decl. Ex. 7 (Jan.15, 2013 Ltr. from Keller to Elkin); Hosp Decl. Ex. 8 at 2 (Dkt. 180).

9

Third, Judge Pitman also understood that, to the extent damages discovery remains relevant in a statutory damages case, "a multitude of factors" affect " profitability."  *See* 3/21 Tr. 32:14-33:10; 89:24-90:3.[9]  Nonetheless, he offered Aereo the specific opportunity to build the record that it was entitled to such documents.  He acknowledged the theory that had Aereo's service become commercially significant, it might have caused quantifiable financial harm and, in such case, that some of those "multitude of factors" that impact a particular work's profitability might take on less weight.  He therefore directly and repeatedly asked Aereo if its subscriber base was large enough to have had such an impact.  3/21 Tr. 90:20-94:8.

Aereo not only refused to disclose how many subscribers it has, even *in camera*, but also it stated it would rather abandon its request for more detailed financial data than do so.  *Id.* at 90:20-95:2.  Aereo also stated, that it would "come back to" Judge Pitman with its subscriber data, "if necessary."  *Id*.  It never did so, and any argument regarding its need for that data now is waived.

**C.**   **Judge Pitman's Refusal to Grant Wide-Ranging Discovery Relating to Similar Technologies, "Like Antennas," Or Transmission Services, Whether Licensed Or Not, Was Appropriate.**

In addition to seeking detailed, per program financial documents to assist it in proving that Aereo has had no financial impact, Aereo also seeks all documents in the possession of Plaintiffs related to the consumer use of "similar technologies," like

---

[9]   For this reason, Judge Pitman also was correct to reject further discovery based on whether Plaintiffs' revenues have "*improved*" since the launch of Aereo, Obj. at 8 n.22, because any such general "improvement" in Plaintiffs' financial results would demonstrate nothing relevant to the harm caused by Aereo.

antennas, or transmission services, whether such technologies are licensed or, like Aereo, are unlicensed.  Aereo claims it is entitled to defend its conduct by pointing out how little additional harm it causes, as compared to other technologies, whether licensed or not.  Obj. at 1, 5.  Judge Pitman denied Aereo's request for several reasons.

### 1.     Under the Relevant Standard, Correctly Applied by Judge Pitman, Aereo Has All The Discovery It Needs.

Judge Pitman began with the correct standard for assessing market harm under the fourth fair-use factor.  The relevant question is whether the spread of Aereo and other similar unauthorized Internet television retransmission services like Aereo – such as FilmOn, ivi and Aereokiller – would result in harm to one or more of the actual or potential markets for Plaintiffs' broadcast programming.  *See Campbell*, 510 U.S. at 590; 3/21 Tr. 45:8-18; 67:22-68:2.  The analysis looks to two inter-related issues:  (1) the existence of actual or potential markets for Plaintiffs' copyrighted programs and (2) the actual or potential harm Aereo and like services would cause to those markets.  As Judge Pitman correctly concluded, that is not a comparative analysis.  *See* 3/21 Tr. 67:22-68:2 ("[T]he Supreme Court tells us that 'the fourth  factor requires an inquiry into whether unrestricted and widespread conduct of the sort engaged in by the defendant" itself, not in comparison to others,  "would result in a substantially adverse impact on the potential market for the original.'"); *see also* 81:7-24 ("[I]f you include licensed or permitted uses within . . . conduct of the sort engaged in by the defendant, you wouldn't even get to the question of fair use because the conduct would be licensed.").

Plaintiffs already provided ample evidence of those actual or potential markets in the form of retransmission agreements, agreements with partners such as Netflix, Amazon,

Hulu and Apple, and Nielsen, as well as the evidence produced in the preliminary injunction phase.  *See Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 397-400 (S.D.N.Y. 2012) (Aereo will irreparably harm, among other things, Plaintiffs' markets for retransmission and advertising fees).  These markets include the cable and satellite retransmission market as well as markets for licensing programs for live or subsequent viewing via the Internet or on mobile devices.  *See* Potenza Decl. Ex. 4 (Pls.' 3/19 Br. at 6-7).  Plaintiffs have produced their retransmission consent agreements for New York City, and have agreed to produce Internet license agreements with Amazon, Apple, Hulu and Netflix, as soon as Aereo agrees to an addendum to the protective order.

There is no dispute about the existence of such markets.  Aereo is spending millions of dollars to enter them.  There is also no dispute under well-settled law that unauthorized uses of copyrighted works will adversely affect those markets – in ways that are not just harmful, but irreparably so.  *See Aereo, Inc.*, 874 F. Supp. 2d at 397-400; *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (finding irreparable harm where "ivi's live retransmissions . . . would substantially diminish the value of" plaintiffs' copyright works and "that damage would be difficult to measure and monetary damages would be insufficient to remedy the harms"); *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure[.]"); *Warner Bros. Entm't, Inc. v. RDR Books*, 575 F. Supp. 2d 513, 550-53 (S.D.N.Y. 2008) (evidence of irreparable harm used to find market harm); *Fox Television Stations v. Barry Driller Content Sys., PLC*, No. CV 12-6921, 2012 WL 6784498, at *6 (C.D. Cal. Dec. 27, 2012) (finding irreparable harm

because defendant's "service threatens Plaintiffs' ability to negotiate favorable retransmission consent agreements" and "competes with Plaintiffs' ability to develop their own internet distribution channels"); *Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1012 (C.D. Cal. 2011) (finding irreparable harm where "Defendants interfere with Plaintiffs' grant of exclusivity to their licensees, Plaintiffs' ability to negotiate similar agreements in the future . . . and Plaintiffs' overall ability to control the use and transmission of their Copyrighted Works").

Based on this, Judge Pitman recognized that the discovery he was granting went as far as "the broadest [extent to which] the fourth factor of fair use can be read." 3/21 Tr. at 81:7-11. He properly rejected the boundless discovery Aereo sought to compel in light of its marginal relevance and the burden of production. 3/21 Tr. 9:12-10:23; 32:15-33:5. There is nothing erroneous about that. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

## 2.   Production of Antenna-Related Documents Is Irrelevant And Would Be Overwhelmingly Burdensome.

According to Aereo, discovery relating to consumer use of antennas supports an unclean hands defense because Plaintiffs "discourage[] over-the-air broadcasts, vis-à-vis cable" in order to boost retransmission fees. 3/21 Tr. 121:16-21. Judge Pitman properly rejected that demand. Unclean hands, as a matter of law, must relate to the specific transaction at issue and, even assuming Aereo's wild speculations were correct, that shows Plaintiffs are trying to "maximiz[e] profits" generally, nothing more. 3/21 Tr. 122:17-123:3; *see Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999) ("[T]he defense of unclean hands applies only with respect to the right in suit[.]"

13

(quoting *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 324 (2d Cir. 1983))).  Profit maximization is not unclean hands.  *See also* Obj. at 7-8.

The very assertion of such a bizarre argument exposes the invalidity of Aereo's objections.  Aereo has refined its argument to contend, whether because of unclean hands or otherwise, Plaintiffs seek "to prevent consumer use of antennas generally."  Obj. at 7-8. Putting aside that the over-the-air broadcast business was built on the millions of viewers who use antennas, how those viewers receive Plaintiffs' broadcasts says nothing about whether ***Aereo's commercial retransmission*** of those broadcasts causes market harm.

In addition to the antenna-related documents being wholly irrelevant, the burden of searching for and having to produce documents relating to the term "antenna" cannot be overstated.  Plaintiffs are in the business of over-the-air broadcasting to consumers, many of whom receive such programs directly through their own antennas.  They will have a very large number of documents relating to antennas.  Given Aereo's assertion to this Court that it is entitled to "Plaintiffs' view to consumer use of antennas generally," its request is essentially boundless.  Judge Pitman did not clearly err in denying such discovery.

> **3.    Discovery Into Licensed Technologies Is Irrelevant to Quantifying Harm Because They Can Cause No Harm Relevant to Fair Use.**

As for Aereo's request for documents concerning the harm caused by ***licensed*** technologies, that is, literally, a nonsensical request.  By definition, a licensed technology or retransmission service cannot harm the licensor.  Even if Aereo's request is confined to discovery relating to consumer research regarding licensed technologies, Judge Pitman was right to reject it.  Aereo appears to believe that its service is licensed (in the sense that once

14

a program is broadcast over the air, Aereo is free to copy and retransmit it) and, therefore, that research into the harm Aereo causes compared to other licensed service providers, is relevant.  This is wrong in two respects.

First, Aereo is in no sense licensed.  Plaintiffs do have a broadcast license issued by the Federal Communications Commission under the Communications Act to use spectrum to broadcast their programs to the public at large, but that does not mean that they are "licensing" consumers (or anyone else) to use antenna technology, Obj. at 5 n.17, or that Aereo is authorized or licensed to retransmit Plaintiffs' copyrighted programs under the Copyright Act.  *See also* Potenza Decl. Ex. 8 (Aereo Resp. To WNET Pls. Supp. Req. For Admissions 27 (admitting Aereo has no "written or oral agreements" with broadcasters)); *Id.* Ex. 3 (2/25 Tr. 69:6-70:12).

Second, research on the effect on Plaintiffs of licensed Internet retransmission technologies – not Aereo – is irrelevant to the harm caused by Aereo and similar Internet transmission services.  *Campbell* says as much.  Consistent with applicable law, Judge Pitman limited discovery to unlicensed Internet technologies – i.e., those most similar to Aereo – because "[t]he issue under fair use is whether an *unauthorized, unlicensed use or a use that's not permitted by the copyright holder constitutes fair use.*  If you . . . include licensed or permitted uses within that, you're necessarily talking about something that's not of the sort . . . engaged in by the defendant."  3/21 Tr. 81:12-24 (emphasis added). That was correct.

As noted, the documents Plaintiffs already have produced regarding licensed services are relevant to demonstrate actual or potential markets for their broadcast

programs.  These include NBC Universal's presentation entitled "The Billion Dollar Research Lab," Potenza Decl. Ex. 9 (DNC0043339-DNC0043439), which focused on streaming the Olympics *in addition to* viewing them through other authorized distribution channels, not, as Aereo advertises, through completely unauthorized means.  *See, e.g., id.* at DNC0043394 (discussing "[s]imultaneous viewing" of Olympics on TV and over the Internet).  The research studied viewing habits during the unique circumstances of the Summer Olympics, including the impact of providing streaming access to every Olympic event, most of which were never shown on broadcast TV.  *See id.* at DNC0043409. Moreover, for all of the pointed arguments Aereo makes relating to "The Billion Dollar Research Lab," it never acknowledges that, despite its marginal relevance, if any, it was not hidden, Obj. at 4 n.15, but voluntarily produced long before Judge Pitman's ruling.

Finally, Aereo's objections that it needs discovery into licensed technologies in connection with the fourth fair use factor is completely contrary to what it told Judge Pitman.  Judge Pitman asked Aereo whether "something like Netflix would [] be something that should be considered under the fourth fair use factor."  Aereo said "[t]he answer is no[.]"  3/21 Tr. 70:6-25.  Having told Judge Pitman it was not pressing for discovery into "something like Netflix" – a "licensed" technology – Aereo should not be heard to object to an Order that reflects the exact position it took.

> **D.    The Time Frames For Production Of Documents Are More Than Generous And Not Clearly Erroneous.**

Judge Pitman set May 2011 to the present as the relevant dates for retransmission consent negotiations and January 2010 to the present for documents relating to in-home

16

DVRs, unlicensed remote DVRs, unlicensed transmission technologies and ad-skipping or fast-forwarding by in-home DVRs.  Aereo takes issue with both periods.

If anything, however, looking back to May 2011 for documents relating to the renegotiations of retransmission consent agreements is far too generous to Aereo.  Judge Pitman accepted that May 2011 is when Aereo had not even launched, but instead was in "pre-beta" mode.  Potenza Decl. Ex. 10 (5/30/12 Tr. 55:17-56:7 (Franks Redirect)).  There is no reason to expect that Aereo, at such a nascent stage, possibly could have had any measurable effect at all on Plaintiffs' renegotiation of retransmission agreements with cable and satellite providers (against whom Aereo directly competes).

Furthermore, Aereo itself ***agreed*** before Judge Pitman that the only relevant retransmission agreements were those renegotiated after Aereo made its initial announcement in May 2011.  *See* 3/21 Tr. 14:4-22 ("THE COURT:  So we agree then, so we agree with retransmission we're limited to agreements, the only agreements that would be relevant would be agreements that were renegotiated after Aereo launched, agreed?  MR. HOSP:  Well, any agreements that were renegotiated after Aereo announced. . . .")).  Aereo has articulated no reason for going even further back in time.

Aereo now also claims to need Plaintiffs' research on in-home DVRs, remote DVRs and unlicensed Internet transmission technologies, as well as research relating to ad-skipping and fast forwarding, dating back to January 2005.  Obj. at 7.  When Judge Pitman set January 2010 as the cutoff, Aereo kept silent, never explaining why over three years of research would somehow be insufficient.  *See* 3/21 Tr. 82:16-23, 109:4-6.  Before this Court, Aereo claims that it needs Plaintiffs to search for research dating back ***eight*** years

on the theory that the *Cablevision* case is some sort of meaningful marker as a start date. Obj. at 7.  The scope of Aereo's request, however, encompasses in-home DVRs, ad-skipping technologies and Internet retransmission technologies.  None of those were even at issue in the *Cablevision* case.  The filing of that complaint as a benchmark for discovery is clearly incorrect and is not in any way explained by Aereo.

It is entirely proper for a court to impose time limitations on overly broad discovery requests.  *See Moore v. Publicis Groupe SA*, No. 11-cv-1279, 2012 WL 517207 (S.D.N.Y. Feb. 14, 2012) (magistrate judge properly limited "the temporal scope of discovery"); *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 409-10 (N.D. Ohio 2011) (overly broad document requests for financial information limited to two years).

### E.    Permitting Redactions To Third-Party License Agreements Was Not Clearly Erroneous.

Aereo also objects to the Order allowing third parties, such as Hulu, Netflix, Amazon and Apple, to make redactions to their license agreements with Plaintiffs.  Obj. at 9-10.  Aereo now asserts that information that Judge Pitman has allowed to be redacted is "most relevant," because it includes "material and financial terms" that would "show or not show an impact on the market."

There are two flaws with Aereo's argument.  First, Aereo ignores that the Order established a process by which the third parties could make redactions, as they deemed necessary, to their license agreements, and then "if defendants want to come back and challenge the redactions, you're free to do so."  3/21 Tr. 170:5-7.  Judge Pitman has not put his imprimatur on any particular redactions as he has not yet reviewed any of the redactions.  If Aereo is at some future point able to explain why it needs to see certain

18

information that was redacted, it can raise the issue with Judge Pitman.  Aereo's present

objection does not present any reason why this process is insufficient.

Second, on the merits, Aereo has not explained how the details of any particular

financial arrangement proves anything with respect to the harm caused by Aereo.

Plaintiffs have produced more than sufficient information to establish the existence of this

market.  The exact financial or other terms of Plaintiffs' agreements with their licensees

are irrelevant to the issues in this case:  whether Plaintiffs license into Internet-based

markets (the documents show they do); whether the unlicensed businesses of Aereo and

others would impair those markets (they will); and whether Aereo causes irreparable harm

(this Court has found that it does and will).  Absent Aereo's explanation as to the relevance

of this information, its objection to the authorization of limited redactions should be

overruled.

### F.    Judge Pitman Did Not Err In Setting A Discovery Schedule.

As explained above, Plaintiffs have provided Aereo with voluminous document

discovery to date.  Aereo has had much of this information for more than a year due to the

very extensive document and deposition discovery during the preliminary injunction phase.

Plaintiffs also have been producing the documents that Judge Pitman ordered be produced

on March 29, 2013.   Aereo will have the documents that it needs to depose Plaintiffs.

Assuming Judge Pitman grants Plaintiffs' motion for reconsideration, the discovery

schedule he set is workable.[10]

---

[10]    Aereo's complaint that Plaintiffs have not stated a date by which they will complete
the "limited production" ordered by Judge Pitman is incomplete, because it leaves out
that Judge Pitman's ruling on the pending stipulation proposal obviously will affect

Finally, Plaintiffs also note that, contrary to Aereo's assertion, Obj. at 2 n.6, Judge Pitman's scheduling order specifically provides a schedule for the disclosure of expert reports pursuant to Rule 26(a)(2) and expert depositions.  Aereo has provided no specific, factual reason why Judge Pitman's rulings should be overturned on this point.

## CONCLUSION

For the foregoing reasons, Aereo's objections should be overruled.

Respectfully submitted,

/s/ Bruce P. Keller
Bruce P. Keller
Jeffrey P. Cunard
Michael R. Potenza
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.:     (212) 909-6000
Fax:      (212) 909-6836

*Counsel for the ABC Plaintiffs*

Dated:  April 23, 2013

---

production dates.  It also leaves out that Aereo stated on April 3, 2013 that, regardless of what Plaintiffs produce pursuant to the Order, it likely would insist on the production of still more documents.

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on April 23, 2013, the foregoing Plaintiffs' Response To

Aereo, Inc.'s Objections To Magistrate Judge Pitman's Rulings On Discovery Disputes

was filed electronically with the Clerk of Court through the CM/ECF system and will be

sent electronically to the Filing Users listed on the Clerk's Notice of Electronic Filing

(NEF), and paper copies, via first class mail, will be sent on April 23, 2013 to those non

Filing Users who will not be served electronically.

/s/ Michael R. Potenza
Michael R. Potenza
