```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
AMERICAN BROADCASTING COMPANIES,
INC., et al.,                     :

                 Plaintiffs,      :   12 Civ. 1540 (AJN)(HBP)

     -against-                    :

AEREO INC.,                       :

                 Defendant.       :

----------------------------------X
                                  :
WNET, et al.,
                                  :
                 Plaintiffs,          12 Civ. 1543 (AJN)(HBP)
                                  :
     -against-                        ORDER
                                  :
AEREO INC.,                       :

                 Defendant.       :
----------------------------------X
```


          PITMAN, United States Magistrate Judge:


I.   Introduction


          By a letter dated April 1, 2013, the ABC Plaintiffs

seek reconsideration of paragraph 1 of my Order dated March 29,

2013 (the "March 29 Order").  In lieu of the document production

ordered in paragraph 1, the ABC Plaintiffs propose a stipulation

as to certain facts (Letter from Bruce P. Keller, Esq., dated

April 1, 2013 ("Keller Ltr.")).  By a letter dated April 5, 2013,

the WNET Plaintiffs, although not expressly seeking reconsideration, generally concur with the concerns raised by the ABC Plaintiffs and propose an alternate, but similar, stipulation (Letter from Steven B. Fabrizio, Esq., dated April 5, 2013 ("Fabrizio Ltr.")).[1]  Defendant Aereo opposes both of these requests and refuses to agree to either proposed stipulation (Letter from Michael S. Elkin, Esq., dated April 5, 2013 ("April 5 Elkin Ltr.") and Letter from Michael S. Elkin, Esq., dated April 10, 2013 ("April 10 Elkin Ltr.")).

For the reasons set forth below, plaintiffs' applications for relief are denied.

## II. Background

### A. Facts

The facts underlying this action are set forth fully in the July 11, 2012 Opinion of the Honorable Alison J. Nathan, United States District Judge.  See Am. Broad. Cos., Inc. v. Aereo, Inc., 874 F. Supp. 2d 373 (S.D.N.Y. 2012), aff'd sub nom., WNET, Thirteen v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013).  I

---

[1]After receiving the ABC Plaintiffs' letter, I requested that the WNET Plaintiffs write me with their views, if any, on the subject of the ABC Plaintiffs' letter.

assume familiarity with that opinion and recite only those facts necessary to the resolution of this motion.

Plaintiffs are a group of television networks that hold the copyrights in various over-the-air broadcast television programs. Am. Broad. Cos., Inc. v. Aereo, Inc., supra, 874 F. Supp. 2d at 375. Defendant Aereo provides a service that permits its subscribers, for a fee, to access plaintiffs' over-the-air broadcast signal through the Internet. Am. Broad. Cos., Inc. v. Aereo, Inc., supra, 874 F. Supp. 2d at 376-77. Plaintiffs assert various claims, including infringement of the right of public performance, infringement of the right of reproduction and contributory infringement. Am. Broad. Cos., Inc. v. Aereo, Inc., supra, 874 F. Supp. 2d at 376.

Plaintiffs moved for a preliminary injunction to enjoin that aspect of Aereo's services that allow its users to watch plaintiffs' copyrighted works contemporaneously with the over-the-air broadcasts, i.e., "live." Am. Broad. Cos., Inc. v. Aereo, Inc., supra, 874 F. Supp. 2d at 376. Judge Nathan denied plaintiffs' motion for a preliminary injunction because she concluded that they had failed to demonstrate that they were likely to succeed on the merits in light of the Court of Appeals' decision in Cartoon Networks LP LLLP v. CSC Holdings, Inc., 536

F.3d 121 (2d Cir. 2008).  Am. Broad. Cos., Inc. v. Aereo, Inc.,
supra, 874 F. Supp. 2d at 396.

Judge Nathan, however, did find that plaintiffs had
shown they would suffer irreparable harm in the absence of an
injunction.  Am. Broad. Cos., Inc. v. Aereo, Inc., supra, 874 F.
Supp. 2d at 396-402.  This conclusion was based, in part, on her
finding that "the evidence shows that by poaching viewers from
cable or other companies that license Plaintiffs' content,
Aereo's activities will damage Plaintiffs' ability to negotiate
retransmission agreements, as these companies will demand conces-
sions from Plaintiffs to make up for this decrease in
viewership."  Am. Broad. Cos., Inc. v. Aereo, Inc., supra, 874 F.
Supp. 2d at 398.  In support of this conclusion, Judge Nathan
cited to declarations of various employees of plaintiffs all of
whom stated that Aereo will adversely affect plaintiffs' ability
to negotiate retransmission agreements and fees with cable and
satellite providers (see Declaration of Martin D. Franks, dated
April 30, 2012, Docket Item 87, ¶¶ 11, 23-26; Declaration of Dave
Davis, dated April 30, 2012, Docket Item 86, ¶¶ 21-26; Declara-
tion of Matt Bond, dated April 30, 2012, Docket Item 83, ¶¶ 7-19;

Declaration of Sherry Brennan, dated April 30, 2012, Docket Item 84, ¶¶ 10, 14).[2]

On April 1, 2013, the Court of Appeals affirmed Judge Nathan's denial of plaintiffs' motion for a preliminary injunction.  <u>WNET, Thirteen v. Aereo, Inc.</u>, 712 F.3d 676 (2d Cir. 2013).  The Court of Appeals did not disturb Judge Nathan's finding that the plaintiffs were likely to suffer irreparable harm.  <u>WNET, Thirteen v. Aereo, Inc.</u>, <u>supra</u>, 712 F.3d at 696 ("The parties do not appear to contest the district court's factual determinations supporting these conclusions and we see no clear error in them.").

B.  <u>The Discovery Dispute</u>

The present dispute arises out of Aereo's request for documents concerning the renegotiation of plaintiffs' retransmission agreements.  Prior to the evidentiary hearing on the preliminary injunction, Aereo had requested plaintiffs' retransmission agreements because it claimed that these documents were relevant to plaintiffs' claim of irreparable harm.  On April 13, 2012, Judge Nathan ordered plaintiffs to produce the retransmission agreements requested by Aereo (Docket Item 34).  She reasoned, in

---

[2]Unless otherwise stated, all docket item references are to the docket in 12 Civ. 1540.

part, that "the retransmission agreements may contain discoverable information" with respect to "'the many ways in which [plaintiffs] monetize their copyrighted works'" (Docket Item 34 at 3).

The instant dispute arises out of Aereo's claim that plaintiffs failed to comply with Judge Nathan's April 13 Order by refusing to produce all such agreements or producing redacted copies of those agreements (Letter from David Hosp, Esq. to Judge Nathan, dated February 1, 2013, Docket Item 137, ("Hosp Ltr.") at 15). According to Aereo, it is entitled to documents concerning the negotiations of the retransmission agreements because these documents will enable it "to determine whether the existence of Aereo or other similar technologies has had any effect on those negotiations. Plaintiffs cannot make assertions regarding the manner in which Aereo affects their ability to license their programming and not turn over the documents that allow Aereo to test those assertions" (Hosp Ltr. at 15).

On February 25, 2013, I held a discovery conference, but did not resolve the dispute related to the retransmission agreements at that time. Instead, I ordered the parties to submit additional briefing "relating to the harm/damages suffered by plaintiffs, and explaining the relevance of such discovery to

plaintiffs' claims for statutory damages and defendant's fair use defense" (Docket Item 155 ¶ 4).

In response to my Order, Aereo argued that plaintiffs' retransmission and licensing agreements are relevant and discoverable because plaintiffs have claimed that Aereo will harm them in their renegotiations of retransmission and other license agreements, and, therefore, it was entitled to "documents that demonstrate how Aereo caused commercial effects on such agreements" (Defendant Aereo, Inc.'s Memorandum of Law Pursuant to Order of Magistrate Pitman dated February 26, 2013 Regarding Discovery on Damages, Harm, and Market Impact, Docket Item 159 ("Aereo's Mem.") at 13).

Plaintiffs responded that they have already agreed to produce "retransmission agreements covering the geographic region in suit and updates thereto" and "documents reflecting negotiations of the retransmission consent agreements and license agreements that refer to Aereo or other unauthorized broadcast television Internet transmission services" (Plaintiffs' Memorandum of Law Pursuant to Judge Pitman's February 26, 2013 Order Regarding Briefing on Discovery Pertaining to Plaintiffs' Claim for Statutory Damages and Aereo's Fair Use Defense, Docket Item 182, ("Pls.' Mem.") at 1; Ex. A to Declaration of Julie A. Shepard, Esq. in Support of Plaintiffs' Memorandum of Law Pursu-

7

ant to Magistrate Judge Pitman's February 26, 2013 Order at 3).
Plaintiffs also stated that they have produced documents related
to retransmission agreements that refer to Aereo-like Services[3]
(Pls.' Mem. at 6-7).  Plaintiffs argued, in part, that Aereo was
not entitled to additional documents concerning retransmission
agreements because plaintiffs "are not asserting that [Aereo]
presently causes measurable, quantifiable harm that would be
reflected in such information" (Pls.' Mem. at 12).

On March 21, 2013, I heard oral argument.  With respect
to the retransmission agreements, the issue was limited to the
production of those agreements that were renegotiated after
Aereo's announcement of its launch in May 2011 and the documents
associated with those renegotiations (the "Post May 2011 Retrans-
mission Documents").  During the argument, I quoted Judge Na-
than's finding in her July 11, 2013 opinion that plaintiffs would
suffer irreparable harm because "'the evidence shows that by
poaching viewers from cable and other companies that license
plaintiffs' content, Aereo's activities will damage plaintiffs'
ability to negotiate retransmission agreements as these companies
will demand concessions from plaintiffs to make up for this

---

[3]"Aereo-like Services" refer to Filmon, Filmonx, Alki David,
ivi, Aereokiller, BarryDriller or Zediva/Zedeva (Keller Ltr. at
2).

decrease in viewership'" (Transcript from March 21, 2013 Oral Argument, attached to Keller Ltr., ("Hr'g Tr.") at 20:17-23, quoting Am. Broad. Cos., Inc. v. Aereo, Inc., supra, 874 F. Supp. 2d at 398).  I then asked counsel for plaintiffs:  "if there was a renegotiation after Aereo announced and Aereo was not mentioned as a factor, isn't that also relevant [to] the fact that XYZ cable company was not con - did voice any concern about Aereo's siphoning customers from XYZ cable?" (Hr'g Tr. at 22:5-9).

Plaintiffs' counsel responded that Aereo could make the argument concerning its effect on the renegotiation of retrans-mission agreements by arguing in the negative, i.e., because plaintiffs have produced those retransmission agreements and negotiation documents in which Aereo is mentioned, those retrans-mission agreements and negotiation documents not produced did not mention Aereo and were not affected by Aereo's presence in the market (Hr'g Tr. at 22:25-23:8; 25:3-10; 26:22-27:10; 28:23-29:8).  Plaintiffs further argued that the appropriate way to explore the extent of Aereo's impact on retransmission negotia-tions would be for Aereo to depose those individuals involved (Hr'g Tr. at 21:10-14; 25:3-10; 27:5-10; 28:24-29:8).  Plaintiffs did not explain how Aereo would know how many retransmission agreements had not been produced.

Aereo's counsel countered that the retransmission agreements and negotiation documents in which Aereo is not mentioned would allow it to test the validity of plaintiffs' claim that Aereo will have an impact on plaintiffs' negotiations of retransmission agreements (Hr'g Tr. at 24:5-25:1).

In response to these arguments, I proposed that plaintiffs enter into a stipulation under which they would identify the retransmission agreements that had been renegotiated after Aereo's launch in May 2011 and would identify the negotiations in which Aereo was not referenced (Hr'g Tr. at 23:15-20; 27:12-17). Plaintiffs, at the oral argument, were unwilling to agree to such a stipulation.

As I explained on the record, the absence of any reference to Aereo during negotiations of retransmission agreements is relevant because it would permit Aereo to rebut plaintiffs' proposed theory of harm -- that is, if Aereo was not raised as an issue during renegotiations, then that would undermine plaintiffs' contention that Aereo or similar services have the potential to devalue retransmission rights (Hr'g Tr. at 28:5-13; 15-22).  I further reasoned that Aereo, in order to make this argument, was entitled to either the documents themselves, i.e., the documents related to renegotiations where Aereo was not mentioned, or a stipulation (Hr'g Tr. at 23:24-24:4; 28:7-13).

10

As I explained at oral argument, these options would ameliorate the difficulty inherent in plaintiffs' proposal that Aereo simply argue in the negative (Hr'g Tr. at 28:15-22).  In light of the fact that plaintiffs were unwilling to enter into the stipulation I proposed, I ordered that plaintiffs produce the Post May 2011 Retransmission Documents (Hr'g Tr. at 29:19-24; March 29 Order ¶ 1).

C.  The ABC Plaintiffs'
    Motion for Reconsideration

On April 1, 2013, the ABC Plaintiffs[4] sought reconsideration of paragraph 1 of my March 29 Order which directed:  "To the extent not previously produced, plaintiffs are to produce all documents concerning the renegotiations of retransmission licenses that occurred after May 2011."  The ABC Plaintiffs propose that they instead be permitted to stipulate that:

> 1.  No retransmission agreements were renegotiated from May 2011 through the date of this representation as a result of either the initial announcement or subsequent launch of Aereo or Aereo-like Services; and
>
> 2.  Neither the initial announcements nor the subsequent launches of Aereo or any Aereo-like Services affected the material terms of any retransmission

_____

[4]Although the actions brought by the ABC Plaintiffs and the WNET plaintiffs have been consolidated for all purposes (Docket Item 124), the April 1, 2013 letter requested relief only on behalf of the ABC Plaintiffs.

agreements renegotiated from May 2011 through the date
of this representation.

(Keller Ltr. at 4).  In exchange for this proposed stipulation,
the ABC Plaintiffs request that I modify the March 29 Order to
deny Aereo's motion to compel the production of the Post May 2011
Retransmission Documents and instead order that "the ABC Plain-
tiffs be precluded from advancing the specific argument that
Aereo or Aereo-like Services have caused the renegotiation of, or
affected the material terms of, any retransmission consent
agreements to date, without prejudice to the ABC Plaintiffs'
ability to advance any arguments or offer evidence explaining the
reasons why that is so" (Keller Ltr. at 4-5).  Aereo opposes this
request (April 5 Elkin Ltr. at 1).


III.  <u>Analysis</u>


    A.    Legal Principles
          Relating to
          <u>Motions for Reconsideration</u>


        Motions for reconsideration are appropriate only in
very limited circumstances.  As explained by the Honorable
Michael B. Mukasey, United States District Judge, now retired, in
<u>McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 727 F.
Supp. 833, 833 (S.D.N.Y. 1989):

Motions for reargument "are granted when new facts come to light or when it appears that controlling precedents were overlooked." Weissman v. Fruchtman, 658 F. Supp. 547 (S.D.N.Y. 1987). The proponent of such a motion is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use [Local Civil Rule 6.3] to advance new facts and theories in response to the court's rulings. The purpose of the rule is "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Lewis v. New York Telephone, No. 83 Civ. 7129, slip op. at 2, 1986 WL 1441 (S.D.N.Y. 1986) cited in Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169 (S.D.N.Y. 1988).

See also Mahmud v. Kaufmann, 496 F. Supp. 2d 266, 269-70 (S.D.N.Y. 2007) (Conner, D.J.). "A movant for reconsideration bears the heavy burden of demonstrating that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Quinn v. Altria Grp., Inc., 07 Civ. 8783 (LTS)(RLE), 2008 WL 3518462 at *1 (S.D.N.Y. Aug. 1, 2008) (Swain, D.J.), citing Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

"[T]o be entitled to reargument under Local [Civil Rule 6.3, a party] must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." Am. Alliance Ins. Co. v. Eagle Ins. Co., 163 F.R.D. 211, 213 (S.D.N.Y. 1995) (Sweet, D.J.), rev'd on

13

other grounds, 92 F.3d 57 (2d Cir. 1996), citing Ameritrust Co.
Nat'l Ass'n v. Dew, 151 F.R.D. 237, 238 (S.D.N.Y. 1993) (Sweet,
D.J.); Fulani v. Brady, 149 F.R.D. 501, 503 (S.D.N.Y. 1993)
(Sweet, D.J.), aff'd sub nom., Fulani v. Bentsen, 35 F.3d 49 (2d
Cir. 1994); E. Coast Novelty Co. v. City of N.Y., 141 F.R.D. 245,
245 (S.D.N.Y. 1992) (Sweet, D.J.); B.N.E., Swedbank, S.A. v.
Banker, 791 F. Supp. 1002, 1008 (S.D.N.Y. 1992) (Sweet, D.J.);
Novak v. Nat'l Broad. Co., 760 F. Supp. 47, 48 (S.D.N.Y. 1991)
(Sweet, D.J.); Ashley Meadows Farm, Inc. v. Am. Horse Shows
Ass'n, 624 F. Supp. 856, 857 (S.D.N.Y. 1985) (Sweet, D.J.).
Thus, "a party in its motion for reargument 'may not advance new
facts, issues or arguments not previously presented to the
court.'"   In re Integrated Res. Real Estate Ltd. P'ships Sec.
Litig., 850 F. Supp. 1105, 1151 (S.D.N.Y. 1993) (Sweet, D.J.),
quoting Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 86
Civ. 6447 (JMC), 1989 WL 162315 at *4 (S.D.N.Y. Aug. 4, 1989)
(Cannella, D.J.), rev'd on other grounds, 967 F.2d 742 (2d Cir.
1992); accord Caribbean Trading & Fid. Corp. v. Nigerian Nat'l
Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991); see also
Woodard v. Hardenfelder, 845 F. Supp. 960, 966 (E.D.N.Y. 1994).
"These limitations serve to ensure finality and to prevent losing
parties from using motions for reconsideration as a vehicle by
which they may then plug the gaps of a lost motion with addi-

14

tional matters."  <u>In re City of N.Y., as Owner & Operator of M/V</u>
<u>Andrew J. Barberi</u>, 03 Civ. 6049 (ERK)(VVP), 2008 WL 1734236 at *1
(E.D.N.Y. Apr. 10, 2008), <u>citing</u> <u>Zoll v. Jordache Enter. Inc.</u>, 01
Civ. 1339 (CSH), 2003 WL 1964054 at *2 (S.D.N.Y. Apr. 24, 2003)
(Haight, D.J.); <u>Cohn v. Metropolitan Life Ins., Co.</u>, 07 Civ. 0928
(HB), 2007 WL 2710393 at *1 (S.D.N.Y. Sept. 7, 2007) (Baer,
D.J.); <u>In re Rezulin Prods. Liab. Litig.</u>, 224 F.R.D. 346, 349
(S.D.N.Y. 2004) (Kaplan, D.J.); <u>Horsehead Res. Dev. Co., Inc. v.</u>
<u>B.U.S. Envtl. Servs., Inc .</u>, 928 F. Supp. 287, 289 (S.D.N.Y.
1996) (Scheindlin, D.J.).

    B.  <u>Application</u>

        1.  The ABC Plaintiffs'
           <u>Motion for Reconsideration</u>

    The ABC Plaintiffs contend that reconsideration of
paragraph 1 of my March 29 Order is warranted for two reasons.  I
conclude that both are without merit.

        a.  Purported Misstatement of
           <u>the ABC Plaintiffs' Argument</u>

    First, the ABC Plaintiffs claim that reconsideration is
warranted because my March 29 Order was based on Aereo's
mischaracterization of the ABC Plaintiffs' theory of the harm

posed by Aereo.  The ABC Plaintiffs claim that Aereo misstated
their position when it argued that one of the plaintiffs' execu-
tives had testified at a deposition that Aereo or a similar
service is affecting retransmission negotiations (Keller Ltr. at
2-3; Hr'g Tr. at 24:5-20).  The ABC Plaintiffs contend that their
argument is not that Aereo is currently having a measurable
adverse effect on the negotiation of retransmission agreements.
Rather, according to the ABC Plaintiffs, Aereo merely presents a
threat of such harm until it is widely available:  "were Aereo or
services like it to become widespread, multichannel providers
will pay less for the ABC Plaintiffs' programming if those same
programs are available at cut rates from a free-rider such as
Aereo" (Keller Ltr. at 2).

        Aereo disputes that it misstated the nature of the
deposition testimony referred to during oral argument (April 5
Elkin Ltr. at 3-4).  Moreover, it contends that the ABC Plain-
tiffs have not identified any factual matter or controlling
decision that was overlooked (April 5 Elkin Ltr. at 3-5).

        I conclude that the ABC Plaintiffs' complaint about the
manner in which Aereo characterized their argument concerning
harm is not a basis for reconsideration.  At base, the ABC
Plaintiffs' motion for reconsideration relies on the same argu-
ments that were made and considered in both their memorandum of

law and at oral argument.  Even assuming the ABC Plaintiffs are correct that Aereo misrepresented their argument concerning harm,[5] they are not correct in their assertion that this purported mischaracterization was the basis of my March 29 Order. As I explained at oral argument, my Order directing the production of the Post May 2011 Retransmission Documents was based on Judge Nathan's finding that plaintiffs had shown that they will suffer irreparable harm because Aereo will damage their ability to negotiate retransmission agreements (Hr'g Tr. at 20:13-24). Moreover, if Aereo did mischaracterize the ABC Plaintiffs' damages theory, it was incumbent on the ABC Plaintiffs' counsel to correct that mischaracterization <u>at the oral argument</u>. Counsel's attempt to resurrect their argument by a motion for reconsideration is precisely the type of wasteful practice that the limitations on motions for reconsideration are intended to prevent.

---

[5]Both the ABC Plaintiffs and Aereo have submitted transcript excerpts from the deposition testimony of the witness to whom Aereo's counsel referred at oral argument.  I have carefully reviewed these excerpts.  Because the resolution of the present motion does not turn on this testimony, I express no opinion as to its appropriate characterization.

2.   <u>Undue Burden</u>

The ABC Plaintiffs' second basis for reconsideration -- that the production of the Post May 2011 Retransmission Documents is unduly burdensome -- is equally unavailing.

According to the ABC Plaintiffs, since May 2011, dozens of retransmission agreements have been renegotiated and these negotiations occur over the span of many months and produce voluminous correspondence (Keller Ltr. at 3).  The ABC Plaintiffs further argue that because retransmission agreements are often renegotiated at the same time as other unrelated agreements, production of the negotiation documents will require substantial effort to segregate the unrelated and unresponsive material (Keller Ltr. at 3-4).[6]  Finally, the ABC Plaintiffs claim that many of the documents would be subject to the attorney-client privilege and are commercially sensitive (Keller Ltr. at 4). Aereo responds that this burden does not justify reconsideration because the ABC Plaintiffs failed to raise it prior to this motion for reconsideration, and that any burden argument should be rejected given the relevancy of the Post May 2011 Retransmis-

--------

[6]Retransmission agreements are often renegotiated as part of the renegotiations associated with carriage agreements.  Carriage agreements concern other copyrighted material beyond the over-the-air broadcasts at issue here (Keller Ltr. at 3-4).

18

sion Documents (April 5 Elkin Ltr. at 5-6).  Finally, Aereo

counters that privilege or confidentiality concerns are not

justifications for reconsideration (April 5 Elkin Ltr. at 6).

　　　　The burden that the ABC Plaintiffs have now identified

does not warrant reconsideration because this concern was not

previously raised.  Although the ABC Plaintiffs stated in their

memorandum of law, in general terms, that Aereo's document

requests imposed an undue burden (see, e.g., Pls.' Mem. at 11-

12), they failed to elaborate on the nature of this burden.

Similarly, when asked at oral argument about the number of

retransmission agreements that had been renegotiated since May

2011, the ABC Plaintiffs did not provide a specific answer, nor

did they take the opportunity to indicate that the production of

these documents would create the burden that they have now

articulated (Hr'g Tr. at 23:9-14; 25:20-26:5).  Simply put, the

ABC Plaintiffs' burden argument comes too late.  Motions for

reconsideration are not an opportunity to press new arguments or

to expand upon prior arguments.

　　　　Second, the ABC Plaintiffs had an opportunity to avoid

the burden of production of which they now complain.  At oral

argument, I proposed that plaintiffs stipulate which retransmis-

sion agreements were renegotiated after Aereo's announcement in

May 2011 and which of those renegotiations Aereo did not impact

19

(Hr'g Tr. at 23:15-20; 27:11-17).  Plaintiffs' counsel were
unwilling to agree to the proposed stipulation.  Having rejected
a less burdensome alternative, the ABC Plaintiffs cannot now
resort to a motion for reconsideration to reclaim the proposal
that they, perhaps improvidently, turned down.

Accordingly, because the ABC Plaintiffs have not
identified any controlling law or factual matter that was over-
looked, their motion for reconsideration of paragraph 1 of my
March 29 Order is denied.


2.  The WNET Plaintiffs


As noted above, the WNET Plaintiffs also submitted a
letter setting forth their views of the ABC Plaintiffs' motion
for reconsideration (Fabrizio Ltr. at 1).  Although this letter
does not expressly seek reconsideration, the WNET Plaintiffs
state that they "share the concerns expressed by the ABC plain-
tiffs" and that the burden of complying with March 29 Order will
be substantial, involving an estimated one million pages to be
identified and reviewed and requiring approximately 2000 to 3000
lawyer and paralegal hours to complete production (Fabrizio
Letter at 1-2).  Like the ABC Plaintiffs, the WNET Plaintiffs
have proposed a stipulation in lieu of production of the Post May
2011 Retransmission Documents.  Aereo opposes the WNET Plain

20

tiffs' proposed stipulation for largely the same reasons it identified in opposing the ABC Plaintiffs' request (April 10 Elkin Ltr.).  Deeming the WNET Plaintiffs' letter to be a request for reconsideration, it is rejected for the same reasons that the ABC Plaintiffs' application is rejected.

IV.  <u>Conclusion</u>

For the reasons set forth above, the plaintiffs' motions for reconsideration of paragraph 1 of my March 29 Order are denied.

Dated:  New York, New York
        May 23, 2013

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All Counsel

21