UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WNET, THIRTEEN, FOX TELEVISION STATIONS, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WPIX, INC., UNIVISION TELEVISION GROUP, INC., THE UNIVISION NETWORK LIMITED PARTNERSHIP, and PUBLIC BROADCASTING SERVICE, | ECF Case <br><br> Case No. 12-civ-1543 |
| *Plaintiffs*, | [Related Case No. 12-civ-1540] |
| v. | PUBLICLY REDACTED DOCUMENT |
| AEREO, INC. f/k/a BAMBOOM LABS, INC., | |
| *Defendant*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
FOX'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE
DIRECT LIABILITY FOR WATCH NOW COPIES**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II.  RELEVANT FACTS ................................................................................................. 2

    A.  Fox's Copyrighted Programs ........................................................................... 2

    B.  Aereo's Watch Now Copies............................................................................. 3

III.  ARGUMENT ............................................................................................................ 5

    A.  Summary Judgment Standard For Copyright Infringement ............................ 5

    B.  In Making The Watch Now Copies, Aereo Infringes Fox's Exclusive Reproduction Rights Under the Copyright Act As A Matter Of Law .................................... 6

        (1)  Aereo Is A Direct Infringer ...................................................................... 6

        (2)  The Watch Now Copies Are Not Fair Use As A Matter Of Law ............................ 13

IV.  CONCLUSION........................................................................................................ 16

   PUBLICLY REDACTED DOCUMENT

## TABLE OF AUTHORITIES

Page(s)

CASES

*Am. Broad. Co., Inc. v. Aereo, Inc.,*
    874 F. Supp. 2d 373 (S.D.N.Y. 2012).................................................................................4, 6

*Am. Geophysical Union v. Texaco, Inc.,*
    60 F.3d 913 (2d Cir. 1994).............................................................................................14, 16

*Arista Records LLC v. Usenet.com, Inc.,*
    633 F. Supp. 2d 124 (S.D.N.Y. 2009)............................................................................10, 11

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994)........................................................................................................15, 16

*Capitol Records, Inc. v. MP3Tunes, LLC,*
    07 CIV. 9931 (WHP), 2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009).....................................10

*Capitol Records, LLC v. ReDigi Inc.,*
    12 CIV. 95 RJS, 2013 WL 1286134 (S.D.N.Y. Mar. 30, 2013)........................................10, 11

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
    536 F.3d 121 (2d Cir. 2008)............................................................................................. passim

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.,*
    150 F.3d 132 (2nd Cir. 1998)...........................................................................................6, 15

*CoStar Group, Inc. v. LoopNet, Inc.,*
    373 F.3d 544 (4th Cir. 2004) .........................................................................................11, 12

*Davis v. The Gap, Inc,*
    246 F.3d 152 (2d Cir. 2001).................................................................................................15

*Infinity Broad. Corp. v. Kirkwood,*
    150 F.3d 104 (2nd Cir. 1998)........................................................................................... passim

*Los Angeles News Serv. v. Tullo,*
    973 F.2d 791 (9th Cir. 1992) ...............................................................................................13

*Perfect 10, Inc. v. Megaupload, Ltd.,*
    11CV0191-IEG BLM, 2011 WL 3203117 (S.D. Cal. July 27, 2011) .....................................10

*Princeton Univ. Press v. Michigan Document Servs., Inc.,*
    99 F.3d 1381 (6th Cir. 1996) ...............................................................................................13

PUBLICLY REDACTED DOCUMENT

2191130.14

*Religious Technology Center v. Netcom On-Line Comm. Svcs., Inc.,*
    907 F.Supp. 1361 (N.D. Cal. 1995) ..............................................................................11, 12, 13

*Ringgold v. Black Entm't Television, Inc.,*
    126 F.3d 70 (2d Cir. 1997).......................................................................................................16

*Rogers v. Koons,*
    960 F.2d 301 (2d Cir. 1992)....................................................................................................5, 6

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984).................................................................................................................15

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,*
    996 F.2d 1366 (2d Cir. 1993)..................................................................................................16

*UMG Recordings, Inc. v. MP3.com, Inc.,*
    92 F. Supp. 2d 349 (S.D.N.Y. 2000)........................................................................................15

*WNET, Thirteen v. Aereo, Inc.,*
    712 F.3d 676 (2d Cir. 2013).......................................................................................................6

*Zomba Enterprises, Inc. v. Panorama Records, Inc.,*
    491 F.3d 574 (6th Cir. 2007) ...................................................................................................13

**STATUTES**

17 U.S.C. § 106.................................................................................................................................6

17 U.S.C. § 107...............................................................................................................................14

17 U.S.C. § 410.................................................................................................................................6

**OTHER AUTHORITIES**

www.dictionary.reference.com/browse/volition...............................................................................8

www.merriam-webster.com/dictionary/volition................................................................................8

iv   PUBLICLY REDACTED DOCUMENT

## I.  INTRODUCTION

Plaintiffs Twentieth Century Fox Film Corporation and Fox Television Stations, Inc. (collectively, "Fox") previously sought to enjoin defendant Aereo, Inc.'s ("Aereo") unauthorized Internet streaming service as an infringement of Fox's exclusive right to publicly perform its copyrighted works.   This Motion addresses Fox's exclusive reproduction rights under the Copyright Act.  Whenever an Aereo subscriber watches "live" television over the Internet, Aereo makes three copies of the program being watched.  Aereo's continuous, wholesale copying of Fox's copyrighted programs directly infringes Fox's reproduction right – an issue never addressed by this Court or the Second Circuit Court of Appeals.

Aereo's streaming service is initiated by subscribers pressing an onscreen "Watch" button to watch live TV.  However, when a subscriber chooses to watch live television, ███████ ████████████████████████████████████████ (the "Watch Now Copies") ███████████████ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

But Aereo admits the Watch Now Copies are made even if the subscriber simply wants to watch live TV without pausing or rewinding.  Indeed, Aereo admits there is no way for a subscriber to watch live TV on Aereo's system without the Watch Now Copies being made, and there are no circumstances under which a subscriber could choose *not* to watch from a copy.

1

Under the Second Circuit's "volitional conduct" test for direct infringement of the reproduction right (set forth in the *Cablevision* case[1]), Aereo is clearly the one making the Watch Now Copies of each Fox program. As a matter of law, Aereo's subscribers are not volitionally making the Watch Now Copies. A subscriber cannot choose whether to make a copy or not, under any circumstances, and indeed, when subscribers press the "Watch" button to watch *live* TV, they are in effect choosing to watch the show, *not* record it for later playback.

Because Aereo, a commercial retransmission service, is the one making the unauthorized Watch Now Copies, its conduct cannot possibly be deemed a "fair use" under the Copyright Act. Without authorization, Aereo takes Fox's unaltered, creative works, copies them in their entirety, and retransmits them to its paying subscribers as part of a commercial service that competes directly with Fox. This is not fair use as a matter of law.[2] No court has ever stretched the fair use doctrine that far. And, it is well settled that Aereo cannot escape liability by attempting to derivatively avail itself of any claimed fair uses that its ultimate subscribers may make of the retransmitted programming.

For these reasons, Aereo is liable for direct infringement of Fox's exclusive reproduction right under the Copyright Act, and the Court should enter partial summary judgment on the Watch Now Copies.

## II. RELEVANT FACTS

### A.    Fox's Copyrighted Programs

Fox owns the copyrights in numerous broadcast television programs, including popular and critically-acclaimed series such as *Glee*, *The Simpsons*, *Family Guy*, *Touch*, and *Bones*

---

[1] *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*").
[2] *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 112 (2nd Cir. 1998).

2

PUBLICLY REDACTED DOCUMENT

("Fox's Copyrighted Programs").  SUF 2 (Brennan Decl. ¶ 2, McGuire Decl. ¶¶ 7-8 Exh. A).

The main distribution channel for Fox's Copyrighted Programs is the FOX network, a national

broadcast television network.  SUF 3 (Brennan Decl. ¶ 3).  Fox also authorizes multichannel

video programming distributors ("MVPDs") the right to retransmit Fox's Copyrighted Programs

live on television to their paying subscribers.  SUF 4 (Brennan Decl. ¶ 6).  Some of these

MVPDs have also been authorized to stream Fox's programming to subscribers' mobile devices

in the home and/or outside the home over the Internet.  SUF 4 (Brennan Decl. ¶ 6).  One of Fox's

competitors – plaintiff ABC – has already launched a live streaming service for local ABC

stations in New York and Philadelphia.  SUF 5 (Brennan Decl. ¶ 6).[3]  Other television networks

have announced similar plans.  *Id.*

      After Fox's Copyrighted Programs air on primetime television, Fox makes them available

to consumers – either directly or through third-party licensees – in a variety of formats and media

such as syndication (i.e., daily reruns by local television stations), video-on-demand, Internet

streaming, and digital downloads for viewing on computers and mobile devices.  SUF 7

(Brennan Decl. ¶ 8).

**B.      Aereo's Watch Now Copies**

      As advertised on its website, subscribers who pay for Aereo's service can "watch live

broadcast television online" (the "Watch Now" mode).  SUF 8 (Singer Decl., Exh. A at page 3).

Aereo also offers its subscribers a "Record for Later" feature whereby the subscriber's scheduled

"recordings are saved 'in the cloud'" for later viewing (the "Record" mode).  (*Id.*)  Aereo

streams over the Internet Fox's Copyrighted Programs that are broadcast by Fox's New York

---

[3] Fox licenses some of its programs for first-run distribution on other broadcast and cable
networks, such as *Modern Family* which airs on ABC.  Brennan Decl. ¶ 4.

2191130.14                     PUBLICLY REDACTED DOCUMENT

television station affiliate, WNYW, as well as the New York broadcast signals of the other major broadcast networks.  SUF 10 (Singer Decl., Exh. A at page 4; Brennan Decl. ¶ 10).

     To watch a live broadcast television program using Aereo's Watch Now mode, an Aereo subscriber visits Aereo's Internet website and begins watching the program by clicking an onscreen "Watch Now" or "Watch" button.  SUF 11 (Singer Decl., Exh. A at pages 6-8 ██████████

██████████████████████████ Aereo has purposely designed its system so that each and every time an Aereo subscriber watches a television program in the Watch Now mode, ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

     Therefore, it is undisputed that every time an Aereo subscriber watches a "live" streaming broadcast of Fox's Copyrighted Programs using Aereo, ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

     According to Aereo, ████████████████████████████████████

---

[4] ██████████████████████████████████████████
██████████████████████████████ Aereo has argued and this Court previously found that the Watch Now Copies are not "buffer" copies because they are stored for the duration of the subscriber's viewing experience. *See Am. Broad. Co., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 392 (S.D.N.Y. 2012).

PUBLICLY REDACTED DOCUMENT

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████

On the same screen as the "Watch" button, Aereo posts an onscreen disclaimer in fine print that says: "Please note: When you press 'Watch' you will start recording this show, allowing you to pause and rewind the program." (Singer Decl. Exh. A at page 8 ████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

## III. ARGUMENT

**A.    Summary Judgment Standard For Copyright Infringement**

"To establish an infringement of a copyright, a plaintiff must show both ownership of a

---

[5] This disclaimer does not appear when a subscriber chooses to watch certain "featured" programs by pushing the "Watch Now" button, nor is there any similar notice when a subscriber uses the Record feature. Singer Decl., Exh. A.

PUBLICLY REDACTED DOCUMENT

2191130.14

copyright and that defendant copied the protected material without authorization." *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992). Copyright infringement can be decided on a motion for summary judgment. *Id.* at 307. Summary judgment is appropriate if the copyright owner can show there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132 (2nd Cir. 1998). A defendant opposing summary judgment can assert fair use as a defense to copyright infringement. However, "since fair use is an affirmative defense to a claim of infringement, the burden of proof is on its proponent." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2nd Cir. 1998). When the underlying material facts are undisputed, a finding of no fair use can be made as a matter of law on summary judgment. *Id.*

**B.    In Making The Watch Now Copies, Aereo Infringes Fox's Exclusive Reproduction Rights Under the Copyright Act As A Matter Of Law.**

It is undisputed that Fox owns the copyrights to Fox's Copyrighted Programs. SUF 2 (McGuire Decl. ¶¶ 7-8 and Exh. A; Brennan Decl. ¶ 2).[6] Unauthorized copying of Fox's Copyrighted Programs violates Fox's exclusive reproduction right under the Copyright Act. *See* 17 U.S.C. § 106(1).

**(1)    Aereo Is A Direct Infringer.**

Aereo has argued that under *Cablevision* it cannot be liable for direct infringement because the subscriber, not Aereo, makes the Watch Now Copies when she clicks the onscreen "Watch" button.[7] This argument fails as a matter of law because the Watch Now Copies are not

---

[6] A certificate of registration is *prima facie* evidence of copyright ownership. 17 U.S.C. § 410(c); *Rogers*, 960 F.2d at 306.

[7] This Court had no occasion to consider Fox's reproduction right claim or the volition question in its preliminary injunction ruling, which was limited to the plaintiffs' claim that Aereo infringed the public performance right. *Am. Broad. Co.*, 874 F. Supp. 2d at 376 n.1, 396. On appeal, the Second Circuit confirmed that Fox's reproduction right claims "are therefore not

6

PUBLICLY REDACTED DOCUMENT

produced as a result of any volitional conduct by Aereo subscribers.

When there is a dispute as to the author of an allegedly infringing instance of reproduction, *Cablevision* instructs the court to "direct [its] attention to the volitional conduct that causes the copy to be made." 536 F.3d at 131. *Cablevision* does not define "volitional conduct." However, the Court's analysis provides guidance for how to conduct the volitional conduct inquiry in a case like this one where a defendant claims it is not legally responsible for copies produced by a system it designed, maintains, and controls.

*Cablevision* involved a remote storage DVR ("RS-DVR") that Cablevision subscribers could use to record programs and play them back. 536 F.3d at 125. The RS-DVR operated like a set-top DVR or VCR in that the viewer could use a remote control to select and record any program on any channel included in her Cablevision subscription. *Id.* In analyzing whether copies made using the DVR were the result of Cablevision's volitional conduct or the subscriber's, the Court focused on the "customer's conduct in ordering that system to produce a copy of a specific program." *Id.* at 131. Finding the RS-DVR to be functionally equivalent to a VCR, the Court reasoned that "the operator of the VCR, the person who actually presses the button to make the recording, supplies the necessary element of volition." *Id.* Thus, the court concluded: "We do not believe that an RS–DVR customer is sufficiently distinguishable from a VCR user to impose liability as a direct infringer on a different party for copies that are made automatically upon that customer's command." *Id.* at 131.

In its discussion of volitional conduct and determination of "who actually 'makes' a copy," the Court characterized the RS-DVR user as "issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Id.* Therefore, the

---

before us and we will not consider them." *WNET, Thirteen* v. *Aereo, Inc.*, 712 F.3d 676, 686 n.9 (2d Cir. 2013).

linchpin to volition was whether the consumer was using the device in order to make copies.

Here, unlike in *Cablevision*, the Aereo subscriber who presses the "Watch" or "Watch Now" button to watch live television is not *ordering* the Aereo system to copy the program, pressing a button *for the purpose* of making a recording, or *commanding* the system to make a copy. Instead, she is directing the Aereo system to *play the program live*. *Cablevision* never addressed the issue of volition when a subscriber watches *live* television through the RS-DVR. If an Aereo subscriber *does* want a particular program to be copied so that it can be viewed at a later time, the subscriber must take the *further* step of activating Aereo's separate "Record" mode – ███████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████ [8]

"Volition" is commonly understood to mean "the power of choosing or determining: will" (*see* www.merriam-webster.com/dictionary/volition) or "the act of willing, choosing, or resolving; the exercise of willing" (*see* www.dictionary.reference.com/browse/volition). In the context of a remote DVR, VCR, or photocopy machine, it makes sense to say the user's volitional conduct causes the copy to be made, since the user chooses a specific item to copy and voluntarily commands the machine to make a copy (for example, by pressing a "copy" or "record" button). But to say that Aereo's Watch Now Copies are made at the subscriber's volition would strip the word "volition" of all meaning. The subscriber using Watch Now mode never affirmatively requests that a copy be made of a specific program (let alone three copies), cannot do anything to prevent the copies from being made, and cannot access or watch the

---

[8] The copying of Fox's Copyrighted Programs onto Aereo hard drives that occurs in "Record" mode also violates Fox's exclusive reproduction right. Fox intends to address that claim in its opposition to Aereo's summary judgment motion. Accordingly, Fox has limited this Motion to the Watch Now Copies.

Watch Now Copies at a later time. In fact, the subscriber who chooses to "Watch" as opposed to "Record" has affirmatively chosen *not* to record the program she is watching – *yet Aereo's system makes three copies of the program anyway*. This is not volition; it is the opposite of volition.

The fact that Aereo posts a message onscreen that *tells* the subscriber about the Watch Now Copies does not mean that those copies are made as a result of the subscriber's volition. But for this fine-print disclaimer that is not always shown, the subscriber would have no reason even to suspect even one copy – let alone three – is being made behind the scenes in the Watch Now mode. The message might be enough to give the subscriber *notice* of the copying, but knowing that something is happening is not the same thing as making it happen. The person who approaches the entrance of a bank, sees a sign about video surveillance, and proceeds into the bank may be on notice that there is a camera, but that does not mean she is directing the surveillance camera to film her.

Tellingly, Aereo provides no disclaimer for when a subscriber presses the "Record" button. This proves Fox's point. Of course, any such disclaimer would make no sense because a subscriber who chooses to "Record" something is clearly choosing to make a copy. The fact that Aereo felt compelled to include a disclaimer about the Watch Now mode demonstrates that Aereo is trying to manufacture volition where none exists. More importantly, Aereo's disclaimer proves that Aereo, not the subscriber, is choosing to make the Watch Now Copies. If the subscriber were using Aereo's system to make copies like a photocopier, there would be no need for a disclaimer. By acting to force its subscribers to watch "live" streaming television from a copy, Aereo supplies the necessary element of volition under *Cablevision* and is a direct infringer. 536 F.3d at 131.

PUBLICLY REDACTED DOCUMENT

Aereo also argues that, under *Cablevision*, it cannot be directly liable because the Watch Now Copies are produced automatically. But there is no "automation" defense to a copyright infringement claim. Applying *Cablevision*'s volitional conduct requirement, other courts in this District have held that where a defendant designs and maintains a copying process that is entirely automated, it nonetheless can be liable for direct infringement where its contribution to the creation of the unauthorized copies is sufficiently great. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149 (S.D.N.Y. 2009) ("*Usenet*") (finding website operators liable for direct infringement where their design and implementation of an automated process "transformed [them] from passive providers of a space in which infringing activities happened to occur to active participants in the process of copyright infringement"); *Capitol Records, Inc. v. MP3Tunes, LLC*, 07 CIV. 9931 (WHP), 2009 WL 3364036 at *3 (S.D.N.Y. Oct. 16, 2009) (rejecting argument that website could not be a direct infringer because users had to "push[] a button" to upload, transfer, or stream songs).[9]

Most recently, in *Capitol Records, LLC v. ReDigi Inc.*, 12 CIV. 95 RJS, 2013 WL 1286134 (S.D.N.Y. Mar. 30, 2013) (Sullivan, J.) ("*ReDigi*"), another court in this District applied *Cablevision* and rejected a similar "automation" defense. Granting summary judgment for the plaintiffs against the infringing service, Judge Sullivan held that where the defendant's "contribution to the creation of an infringing copy" is sufficiently great, it will be liable for direct infringement – even if the system it has designed, housed, and maintained is fully automated.

---

[9] *See also Perfect 10, Inc. v. Megaupload, Ltd.*, 11CV0191-IEG BLM, 2011 WL 3203117, *4 (S.D. Cal. July 27, 2011) *vacated pursuant to settlement*, 11CV0191-IEG BLM, 2011 WL 10618723 (S.D. Cal. Oct. 11, 2011) (finding the volition requirement satisfied where the defendant participated in the unauthorized copying as more than a mere "passive conduit" or "storage" service).

10   PUBLICLY REDACTED DOCUMENT

*See id.* at \*12 (quoting *Cablevision*, 536 F.3d at 133).

In *ReDigi*, the operator of a virtual marketplace for pre-owned digital music provided users with software that would scan their computers and create a list of copyrighted songs eligible to be copied to ReDigi's remote server and then sold to other ReDigi users. ReDigi argued – as Aereo will here – that it did not engage in any volitional conduct because its service was automated. *Id.* at \*1-2, 12. Judge Sullivan rejected this argument, calling it "a distinction without a difference." *Id.* at 12. The court further explained: "The fact that ReDigi's founders programmed their software to choose copyrighted content satisfies the volitional conduct requirement and renders ReDigi's case indistinguishable from those where human review of content gave rise to direct liability." *Id.*[10]

As in *ReDigi*, Aereo has designed its system deliberately to copy copyrighted content – specifically, to copy all broadcast television programs that its subscribers watch live in the Watch Now mode. Under the courts' analyses in *Cablevision*, *Usenet*, and *ReDigi*, Aereo is a sufficiently active participant in the making of the Watch Now Copies to be liable as a direct infringer.

Finally, the Internet service provider ("ISP") cases cited by Aereo in its motion are easily distinguishable and, if anything, illustrate why Aereo – not the subscriber – is the one making the Watch Now Copies. *Religious Technology Center v. Netcom On-Line Comm. Svcs., Inc.*, 907 F.Supp. 1361 (N.D. Cal. 1995) ("*Netcom*") and *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d

---

[10] To the extent *Cablevision* considered whether a commercial intermediary like Aereo should face copyright liability for systematically copying every program its customers watch, the Second Circuit strongly indicated the answer is yes. As the court emphasized at the conclusion of its opinion, "[t]his holding, we must emphasize, *does not generally permit content delivery networks to avoid all copyright liability by making copies of each item of content and associating one unique copy with each subscriber to the network* ...." *Cablevision*, 536 F.3d at 139 (emphasis added).

544 (4th Cir. 2004) ("*LoopNet*") each involved the uploading and dissemination of copyrighted works over the Internet by individuals and addressed whether ISPs – i.e., the owners of the computers the individuals used to connect to the Internet – were directly liable for the infringement. In *Netcom*, a former Church of Scientology minister uploaded church materials to an online bulletin board for others to read. 907 F.Supp. at 1365-1366. In *LoopNet*, real estate brokers uploaded photographs of commercial real estate to a real estate website for prospective buyers to see. 373 F.3d at 547-548. In both cases, the courts held that ISPs are not liable for direct infringement "where a defendant's system is merely used to create a copy by a third party." *Netcom*, 907 F.Supp. at 1370; *LoopNet*, 373 F.3d at 550 (comparing ISP to an owner of a copy machine and the person who posts materials online to the customer who uses the photocopier "to make copies").

This case presents the inverse of the ISP cases. Here, Aereo's subscribers are *not* uploading or posting copies of anything for others to see or read. Instead, Aereo's subscriber use the Aereo service to *watch* content (e.g., Fox's Copyrighted Programs) not share it. Indeed, Aereo has steadfastly argued that each time a subscriber watches TV on Aereo's website, it is a *private* transmission. In *Netcom* and *LoopNet*, the courts regarded the ISPs as nothing more than passive conduits that were being used by third parties to make copies. *LoopNet*, 373 F.3d at 548 ("an ISP serving as a passive conduit for copyrighted material is not liable as a direct infringer"); *Netcom*, 907 F.Supp. at 1372 ("It would be especially inappropriate to hold liable a service that acts more like a conduit"). Here, by contrast, subscribers use Aereo to "Watch" live television. Aereo is not a passive conduit used by third parties to share copyrighted material; it actively copies broadcast television programs in order to provide an entertainment service to its subscribers. If anything, Aereo's role is most analogous to the person uploading or posting the

PUBLICLY REDACTED DOCUMENT

copies in the ISP cases.

The chief reason for the courts' reluctance to impose liability on ISPs is not present in this case. In the ISP cases, imposing liability on the owners of Internet servers would have led to an unreasonable and absurd outcome that could conceivably bring the Internet to a halt. The *Netcom* court warned that holding an ISP directly liable for infringement would "lead to unreasonable liability . . . for every single Usenet server" on the Internet. *Netcom*, 907 F. Supp. at 1369. The court explained:

> Where the infringing subscriber is clearly directly liable for the same act, it does not make sense to adopt a rule that could lead to the liability of countless parties whose role in the infringement is nothing more than setting up and operating a system that is necessary for the functioning of the Internet.

*Id.* at 1372. Unlike the automatic copying that is done by an ISP's servers, the Watch Now Copies are not necessary for the Internet to function; Aereo makes them to improve the entertainment experience of its paying subscribers.

**(2)     The Watch Now Copies Are Not Fair Use As A Matter Of Law.**

To begin with, Aereo cannot assert any valid fair use defense by claiming that its *subscribers* might be engaged in conduct that would qualify as a fair use. Courts uniformly have held that the provider of a commercial service like Aereo cannot shield itself from direct liability for copyright infringement by asserting fair use defenses based on the motivations of its downstream customers. *See*, *e.g.*, *Infinity Broadcasting*, 150 F.3d at 108 ("it is [defendant]'s own retransmission of the broadcasts, not the acts of his end-users, that is at issue here and all [defendant] does is sell access to unaltered radio broadcasts"); *see also Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1389 (6th Cir. 1996) (for-profit copy service could not assert fair use defenses that its student customers might have been able to raise).

 PUBLICLY REDACTED DOCUMENT

As the court explained in *Princeton Univ. Press*, "courts have ... properly rejected attempts by for-profit users to stand in the shoes of their customers making non-profit or noncommercial uses." *Id.* at 1389; *accord Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582-83 (6th Cir. 2007) (for-profit commercial maker of karaoke CDs could not stand in the shoes of its customers or benefit from fair use arguments they might have); *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 797-98 (9th Cir. 1992) (defendant who copies video for commercial purposes is not protected by fair use, even if its customers viewing the video at home might be).

With respect to Aereo's *own* conduct – copying all of Fox's programs in their entirety for subscribers to watch as part of a commercial service – it cannot demonstrate fair use as matter of law.[11] Based on the undisputed facts described above, the Watch Now Copies plainly do not fall within any of the illustrative uses – *e.g.*, criticism, comment, news reporting, teaching, scholarship or research – listed in the statutory preamble. *See* 17 U.S.C. § 107; *Infinity Broadcasting*, 150 F.3d at 107 (considering the illustrative uses and finding that none applied).

---

[11] It is well settled that fair use is an affirmative defense on which Aereo must bear the burden of proof. *See, e.g.*, *Infinity Broadcasting*, 150 F.3d at 107; *Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 918 (2d Cir. 1994).

████████████████████████████████████████████████

████████████████████████

In *Infinity Broadcasting*, for example, the Second Circuit held that a commercial service that retransmitted radio broadcasts over telephone lines was not protected by the fair use defense because the defendant's retransmissions "leave the character of the original broadcasts unchanged" without adding any new expression, new meaning, or new message. *See* 150 F.3d at 108; *accord UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000) (converting copyrighted songs into mp3 files to facilitate transmission over the Internet was "not transformative"); *see also Castle Rock*, 150 F.3d at 142-43 (2d Cir. 1998) (quiz book called the "Seinfeld Aptitude Test" was not transformative when its purpose was "to repackage [the television show] *Seinfeld* to entertain *Seinfeld* viewers).

The fact that Aereo is making the Watch Now Copies as part of a commercial service further rebuts any claim of fair use, especially where the copying is nontransformative. *See, e.g., Davis v. The Gap, Inc*, 246 F.3d 152, 175 (2d Cir. 2001); *Castle Rock*, 150 F.3d at 146. The second and third fair use factors clearly cut against Aereo. The Fox Copyrighted Programs consist of comedies and dramas – expressive works "within the core of copyright's protective purposes." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). And Aereo's copying of the programs in their entirety weighs heavily against fair use. *E.g., Infinity Broadcasting*, 150 F.3d at 109; *see also UMG Recordings, Inc. v. MP3.Com*, Inc., 92 F. Supp. 2d at 352.

The fact that Aereo's wholesale copying is commercial also means that the fourth statutory factor, potential market harm, presumptively weighs against fair use. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984). Under this factor, courts must

PUBLICLY REDACTED DOCUMENT

consider harm to "not only the primary market for the copyrighted work, but the current and potential market for derivative works" as well. *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1377 (2d Cir. 1993). Potential derivative uses include those that the creators of the original works "would in general develop or license others to develop." *Campbell*, 510 U.S. at 592. The fourth factor will favor the copyright holder "if she can show a 'traditional, reasonable, or likely to be developed' market for licensing her work." *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 81 (2d Cir. 1997) (quoting *Am. Geophysical*, 60 F.3d at 930). Here, the fourth fair use factor necessarily favors Fox because it is undisputed that Fox already has entered the market for Internet delivery of its copyrighted programs. SUF 4, 7 (Brennan Decl. ¶¶ 6, 8).

In short, Aereo's Watch Now Copies are not, by any stretch, protected by the fair use doctrine, and Fox is unaware of any court in this Circuit or elsewhere that has ever applied the fair use doctrine under these circumstances.

## IV. CONCLUSION

For the foregoing reasons, by making the Watch Now Copies, Aereo is liable for direct infringement of Fox's exclusive reproduction right under the Copyright Act, and the Court should enter partial summary judgment for Fox.

DATED: June 6, 2013                          Respectfully submitted,

By:_____/s/_____
                     Richard L. Stone

Steven B. Fabrizio (SF-8639)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC  20001

PUBLICLY REDACTED DOCUMENT

Telephone (202) 639-6040
Facsimile (202) 6661-4823
Richard L. Stone (*pro hac vice*)
Kenneth D. Klein (*pro hac vice*)
Julie A. Shepard (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street
Suite 3600
Los Angeles, CA 90071-2054
Telephone (213) 239-5100
Facsimile (213) 239-5199

*Attorneys for Plaintiffs*

PUBLICLY REDACTED DOCUMENT

## CERTIFICATE OF SERVICE

I, Richard L. Stone, hereby certify that on June 6, 2013, I caused a true copy of the foregoing to be served on all parties via e-mail.

June 6, 2013                     _____/s/_____
                                 Richard L. Stone

                                 JENNER & BLOCK LLP
                                 633 West 5th Street, Suite 3600
                                 Los Angeles, CA 90071-2054
                                 Telephone (213) 239-5100
                                 Facsimile (213) 239-5199

PUBLICLY REDACTED DOCUMENT

2191130 14