UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                          )
WNET, THIRTEEN, FOX TELEVISION      )
STATIONS, INC., TWENTIETH CENTURY  )
FOX FILM CORPORATION, WPIX, INC.,     )
UNIVISION TELEVISION GROUP, INC., THE )   ECF Case
UNIVISION NETWORK LIMITED                )
PARTNERSHIP, and PUBLIC                      )
BROADCASTING SERVICE,                        )   Case No. 12-civ-1543
                                                          )
*Plaintiffs*,                                              )   [Related Case No. 12-civ-1540]
                                                          )
            v.                                            )
                                                          )
AEREO, INC. f/k/a BAMBOOM LABS, INC.,  )
                                                          )
*Defendant*.                                          )
                                                          )
_____  )


**REPLY IN SUPPORT OF FOX'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT RE DIRECT LIABILITY FOR WATCH NOW COPIES**

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*American Broad. Cos. v. Aereo, Inc.*,
    874 F. Supp. 2d 373 (S.D.N.Y. 2012) ........................................................................ 5

*Arista Records LLC v. Usenet.com, Inc.*,
    633 F. Supp. 2d 124 (S.D.N.Y. 2009) ................................................................... 7, 8

*Bryant v. Europadisk, Ltd.*,
    2009 WL 1059777 (S.D.N.Y. Apr. 15, 2009) .......................................................... 2

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ............................................................................................. 8, 9

*Capital Cities Cable, Inc. v. Crisp*,
    467 U.S. 691 (1984) ................................................................................................ 10

*Capitol Records, Inc. v. MP3Tunes, LLC*,
    2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009) ................................................... 3, 7, 8

*Capitol Records, LLC v. ReDigi, Inc.*,
    2013 WL 1286134 (S.D.N.Y. Mar. 30, 2013) .................................................. passim

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008) .............................................................................. passim

*Costar Group, Inc. v. Loopnet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) .................................................................................... 3

*Crowder v. FCC*, 399 F.2d 569 (D.C. Cir. 1968). ............................................................... 10

*Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ............................................................ 9

*Faulkner v. National Geographic Society*,
    576 F. Supp. 2d 609 (S.D.N.Y. 2008) .................................................................. 2, 4

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
    807 F.2d 1110 (2d Cir. 1986) ............................................................................ 2, 4, 6

*Infinity Broad. Corp. v. Kirkwood*,
    150 F.3d 104 (2d Cir. 1998) .......................................................................... 8, 9, 10

*Los Angeles News Serv. v. Tullo*,
    973 F.2d 791 (9th Cir. 1992) .................................................................................. 10

*National Ass'n of Indep. Television Producers & Distribs. v. FCC*,
    516 F.2d 526 (2d Cir. 1975)..................................................................................... 10

*Prosser and Keeton on Torts*, (5th ed. 1984).......................................................................... 6

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ........................................................................ 3

*Robinson v. Random House*,
    877 F. Supp. 830 (S.D.N.Y. 1995) .......................................................................... 9

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*,
    453 F.2d 552 (2d Cir. 1972) ..................................................................................... 6

*Society of Holy Transfiguration Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012) ...................................................................................... 6

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984).................................................................................................. 6

*UMG Recordings, Inc. v. MP3.com, Inc.*,
    92 F. Supp. 2d 349 (S.D.N.Y. 2000)......................................................................... 9

*Warner Bros. Entm't Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008) ...................................................................... 9

*Zomba Enters. v. Panorama Records*,
    491 F.3d 574 (6th Cir. 2007) ................................................................................... 10

**Statutes**

17 U.S. C. § 107............................................................................................................... 8

17 U.S.C. § 504................................................................................................................ 6

47 U.S.C. § 307................................................................................................................ 10

I.      Introduction

Under *Cablevision*, liability for direct copyright infringement turns on whether the infringer or infringers engaged in "volitional" conduct.  Tellingly, Aereo's opposition misstates rather than applies this controlling law and misapprehends both strict liability and volition.  Strict liability means that a defendant can be liable for infringement even if she did not *intend to infringe*.  The volition test addresses a separate question: whether the defendant *chose to make a copy*.  Volition does *not* address whether a defendant believed the copying was infringing.  Instead of applying the volition test, Aereo ignores the meaning of volition and proposes a bare button-pressing test that would impose liability for direct infringement on anyone who presses a button that activates a service, even if the button-presser was not choosing, ordering, or commanding the system to make a copy.  That is not volition.

When an Aereo subscriber presses the "button" to watch *live television* on Aereo's website, she is never given the choice to copy or not copy Fox's programs.  Nonetheless, for its own reasons, Aereo makes *three* copies of each program it streams live to subscribers ("Watch Now Copies").  This absence of subscriber volition is fundamentally different from a DVR user who chooses to record specific programs for later viewing and commands the system to do so.

And even if Aereo's subscribers were deemed  partly responsible for making the Watch Now Copies, the Copyright Act expressly provides for Aereo's joint and several liability as a direct infringer.  By choosing to make three copies that are not necessary for streaming live TV, Aereo is nothing like a passive Internet service provider who serves as a mere data conduit and whose computers incidentally copy all Internet traffic.  Aereo is, at least, a joint direct infringer.

Finally, as a matter of law, Aereo has no fair use defense to its *own* direct infringement.  When *Aereo* makes the Watch Now Copies it does so to profit from exploiting Fox's works, not

1

to time-shift programs for later viewing.

## II. Fox Is Entitled To Summary Judgment On Its Reproduction Right Claim.

### A. Under the Volition Test, "Volition" Means Choice.

Direct infringement is a strict liability offense, and an "innocent infringer" can be liable even if she believed she was authorized to copy the owner's works. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986). "Strict liability" under the Copyright Act means "that a plaintiff need not prove *wrongful intent* or *culpability* in order to prevail." *Faulkner v. National Geographic Society*, 576 F. Supp. 2d 609, 613 (S.D.N.Y. 2008) (emphasis added); *Bryant v. Europadisk, Ltd.*, 2009 WL 1059777, *5 (S.D.N.Y. Apr. 15, 2009) (same).

In *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"), the Second Circuit addressed a separate question: determining the "identity of the infringer" in today's world of automated systems when there is a "dispute as to the author of an allegedly infringing instance of reproduction." *Id.* at 130, 131. To answer this question, the Second Circuit requires district courts to identify "the *volitional* conduct that causes *the copy* to be made." *Id.* at 131 (emphasis added). "Volition" is universally defined as *choice*, and the ability to choose.[1] Therefore, a straightforward application of the volition test must ask whether the alleged infringer had the ability to and did *choose* to copy the work, and acted on that choice. For example, in *Cablevision*, the RS-DVR user who "order[ed] the system to produce a copy of a specific program" engaged in the necessary volitional conduct. 536 F.3d at 132.

Aereo asks the Court to ignore the plain English meaning of "volition" and instead adopt

---

[1] The Merriam-Webster Dictionary defines "volition" as "an act of making a *choice* or decision" or "the power of *choosing* or determining." *See* www.merriam-webster.com (emphasis added). The Oxford English Dictionary defines "volition" as "[a]n act of willing or resolving; a decision or *choice* made after due consideration or deliberation; a resolution or determination." *See* www.oed.com (emphasis added). Black's Law Dictionary (2009) defines "volition" as **"**[t]he ability to make a *choice* or determine something"; "[t]he act of making a *choice* or determining something" or "[t]he *choice* or determination that someone makes" (italics added). Dictionary.com defines "volition" as "the act of willing, *choosing*, or resolving" or "a *choice* or decision made by the will." *See* dictionary.reference.com (emphasis added).

2

a rule that whoever presses a button to activate a system is the volitional actor, even if the button-presser has no ability to choose whether to make a copy or not.  *Cablevision* did not hold that merely pressing a button to use a service equates to making any copy used in the service; rather, the Court focused on which party was acting *volitionally* to command or make the particular copy at issue.  536 F.3d at 131.  To watch live TV, no Aereo user issues any command to make a copy, and if she commanded the system to stop copying it would not respond.

Moreover, courts in this Circuit following *Cablevision* have properly rejected Aereo's button-pressing test.  *See*, *e.g., Capitol Records, LLC v. ReDigi, Inc.*, ---F. Supp. 2d ---, 2013 WL 1286134 at *12 (S.D.N.Y. Mar. 30, 2013) (noting that ReDigi's infringing service was "automated" but declining to "absolv[e] ReDigi of direct liability on that ground alone"); *Capitol Records, Inc. v. MP3Tunes, LLC*, 2009 WL 3364036 at *3 (S.D.N.Y. Oct. 16, 2009) (rejecting argument that website could not be a direct infringer because users had to "push[] a button" to upload, transfer, or stream songs).  To the extent Aereo claims that *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) and *Costar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004), support a button-pressing test, Aereo is wrong.  Neither of those cases say that the volitional actor is determined by who "presses the button."  Rather, in both of those cases the user of the automated system engaged in volitional conduct – for example, posting copyrighted material on an Internet website.  *E.g., Netcom*, 907 F. Supp. at 1369 ("It is not difficult to conclude that Erlich (the user) infringes by copying a protected work onto his computer and by posting a message to a newsgroup."); *Loopnet*, 373 F.3d at 555 (no direct liability for online real estate listing service where third-party subscribers uploaded copyrighted photographs to be shared on defendant's website).

### B.     The Watch Now Copies Are Not Created By The Subscriber's Volition.

Here, it is undisputed that the Watch Now Copies are not the product of subscriber choice or volitional conduct.  There are no circumstances under which an Aereo subscriber can watch live broadcast TV on Aereo without copies being made.  SUF 18.  Whenever an Aereo subscriber watches live TV on Aereo, Aereo *always* makes three copies of the program being watched, even if the subscriber has no interest in making copies.  SUF 13, 17.  The subscriber cannot do anything to prevent those copies from being made and cannot access or watch any of them at a later time.  SUF 19.[2]  Because the subscriber has no choice whatsoever, she cannot be a volitional actor.  This is nothing like the Cablevision RS-DVR user who "order[s] that system to produce a copy of a specific program."  *Cablevision*, 536 F.3d at 131.

To sidestep the volition test, Aereo argues that copyright infringement is strict liability and that a defendant's "knowledge" and "intent" are irrelevant.  Opp. Br. at 8.  This is a red herring.  As noted above, strict liability means there is no requirement of "willfulness" or "wrongful intent."  *Faulkner*, 576 F. Supp. 2d at 613; *Fitzgerald*, 807 F.2d at 1113.  But asking whether a subscriber had any choice in making a copy is different from asking whether she knew she would be infringing a copyright in doing so.  Likewise, volition does not require an inquiry into whether Aereo subscribers intend to make three copies when they press "Watch Now," or whether they understand the copies will be made.  The Watch Now Copies can *never* be the product of the subscriber's volition or choice because Aereo *always* makes those copies regardless of what the subscriber intends, understands, or chooses.  By ignoring volition, Aereo is simply cherry-picking those elements of *Cablevision* it likes, while ignoring those it does not.[3]

---

[2] Although Aereo quibbles with Fox's terminology and tries to dismiss central facts as "immaterial," it fails to cite evidence establishing a true factual dispute as to any of the undisputed facts identified by Fox in its SUF.

[3] Aereo's alarmist predictions of "industry chaos" are unfounded and irrelevant.  First, file and photo storage services (like Shutterfly) are *copying* services where the users order copies to be made.  They are easily

### C.     Aereo Is Choosing To Make the Watch Now Copies

Aereo exercises volition when it makes three copies every time a subscriber watches live TV, and it volitionally designed a system that precludes any choice by the user. These infringing copies are the product of Aereo's choice to make the Watch Now Copies so it can offer features to subscribers such as pause and rewind. SUF 12, 13, 16. That is volition.[4] The subscriber, on the other hand, exercises *no volition at all*. Thus, the three Watch Now Copies can only be a product of Aereo's volitional acts, not the subscriber's. *ReDigi*, 2013 WL 1286134 at *12 ("The fact that ReDigi's founders programmed their software to choose copyrighted content satisfies the volitional conduct requirement.").

Aereo contends that, under *Cablevision*, it cannot be directly liable for the infringing Watch Now Copies because it merely designed and maintains a system that automatically makes those copies whenever a subscriber presses the Watch Now button. Opp. at 5. However, *Cablevision* does not hold that any entity that designs and maintains a system that makes copies can never be engaged in volitional conduct sufficient for direct liability. *Cablevision* simply holds that as between the "two instances of volitional conduct" present in that case, i.e., "Cablevision's conduct in designing, housing, and maintaining a system that exists only to produce a copy, and a customer's conduct in ordering the system to produce a copy of a specific program," the person who commands the machine to make a copy supplies the element of volition necessary for direct liability. 536 F.3d at 131. This case presents vastly different facts. Aereo, unlike Cablevision, has not designed and maintained a system that exists only to produce

---

distinguishable from Aereo's *live TV* service. Second, it is irrelevant that ordinary DVRs may copy programming when a user is watching live TV because this lawsuit does not address DVRs per se. Furthermore, the fact that strict adherence to *Cablevision* might disrupt existing business models has not prevented courts from applying it. Indeed, this Court was "constrained" to apply *Cablevision*, despite the irreparable harm to Fox's existing business. *American Broad. Cos. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 385, 397 (S.D.N.Y. 2012).

[4] Of course, as the Court knows, the *other* reason Aereo chooses to make the Watch Now Copies also is not technologically necessary; it is to serve Aereo's *legal strategy* of contriving a service to take advantage of a perceived loophole in copyright law created by *Cablevision*.

copies. Aereo designed and maintains a subscription service that delivers live television over the Internet. Aereo's subscribers do not "command" the Aereo system to "produce a copy" when they select "Watch Now" to view live programming over the Internet. Aereo chose to have its system make three copies of every program a subscriber watches live, and the subscriber has no choice in the matter.

### D. At Minimum, Aereo Is Jointly Liable With Its Subscribers.

Even if pressing the "Watch" button is sufficient to make an Aereo subscriber directly liable for the Watch Now Copies, that does not preclude direct infringement liability against Aereo. Under the Copyright Act, "two or more infringers" can be "liable jointly and severally." 17 U.S.C. § 504; *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434-35 (1984) (Copyright Act addresses direct infringement, not contributory infringement); *Fitzgerald*, 807 F.2d at 1116 (where infringement "flowed from . . . joint action, ... liability is necessarily joint and several").[5]

*Cablevision* likewise acknowledged there can be more than one direct infringer, explaining that the goal of the volition inquiry is to "identify the actor (*or actors*) whose 'conduct has been so significant and important a cause [of the infringement] that [he or she] should be legally responsible." 536 F.3d at 132 (citing W. Page Keeton et al., *Prosser and Keeton on Torts* § 42, at 273 (5th ed. 1984)) (emphasis added). By referring to multiple "*actors*" causing an infringement, *Cablevision* recognized that direct infringement, like any other tort, can have "two or more causes." Prosser, § 41, at 268. Because Aereo chooses to make the Watch

---

[5] *See also Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972) ("Copyright infringement is in the nature of a tort, for *which all who participate in the infringement* are jointly and severally liable."); *Society of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 56-57 (1st Cir. 2012) (rejecting argument that "personal involvement in the alleged infringement is required," and noting that direct infringer is "'not merely one who uses a work without authorization' but "also one who authorizes the use of the copyrighted work without" authorization) (citing *Sony*, 464 U.S. at 435 n.17).

Now Copies, it is a direct infringer regardless of whether subscribers are also liable.

> E. **Even If The Subscriber Is The Volitional Actor, Aereo's Contribution To The Copying Is Sufficient To Find Direct Liability.**

*Cablevision* left open the possibility that Aereo could be directly liable even if this Court finds that the subscriber "makes" the infringing Watch Now Copies: "We need not decide today whether one's contribution to the creation of the infringing copy may be so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy." 536 F.3d at 133.

Since then, three courts in this District have held that where a defendant designs and maintains an automated system, it nonetheless can be liable for direct infringement where its contribution to the creation of the unauthorized copies is sufficiently great. *See ReDigi Inc.*, 2013 WL 1286134 at *12 (service that scanned customers' computers and created a list of copyrighted songs eligible to be copied was directly liable even though its system was entirely automated); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 148 (S.D.N.Y. 2009) (website operators were active participants in unauthorized copying of music files because they designated separate servers to store music files, filtered content, and controlled which newsgroups their servers accept); *MP3Tunes, LLC*, 2009 WL 3364036 at *3 (service was deemed direct infringer where it collected and organized links to music files and increased the number of songs available to users). Here, Aereo's contribution to the infringement is far greater than these other cases because Aereo is not just making it easier for users to copy Fox's programs; Aereo affirmatively decided to make *three separate copies* of each live streaming program as a predicate to use its own for-profit streaming service. SUF 9, 12, 13, 16.

Aereo's attempt to distinguish these cases fails. Aereo contends that in all of these cases, "the holding depended on the fact that consumers were knowing infringers, the defendant knew

7

the copies were infringing, and the defendant took affirmative steps to encourage the knowing infringement." Opp. Br. at 12. First, in none of these cases did the court ever mention whether the consumer knew the copies were infringing or cite that as a factor supporting the finding of direct liability for the service provider. In fact, *ReDigi* suggests the consumers did *not* know the copies were infringing, since ReDigi boasted on its website that it was "The Legal Alternative" and insisted "YES, ReDigi is LEGAL." 2013 WL 1286134 at *13. Second, Aereo's attempt to distinguish *ReDigi*, *MP3Tunes*, and *Arista Records* based on the defendant's supposed knowledge of wrongdoing ignores the strict liability rule of copyright infringement and Aereo's own argument that a defendant's "state of mind" is irrelevant.

### F. Aereo's Conduct Is Not Protected By The Fair Use Defense.

Because the focus of Fox' cross-motion is on *Aereo*'s undisputed conduct in making the Watch Now Copies, any attempt by Aereo to establish a fair use defense also must focus on *Aereo*'s conduct – not on the conduct of its subscribers. Tellingly, Aereo makes no attempt to establish that its own conduct in making the Watch Now Copies qualifies as a fair use under the first, second, or third statutory factors. *See* 17 U.S.C. § 107.

Aereo does not attempt to argue that its copying is transformative under the first factor – recognizing that where, as here, the copier is duplicating the entire work for the same entertainment purpose as the original, the copies "supersede[] the objects of the original" and the use is not transformative. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998) ("merely repackag[ing] or republish[ing] the original" or providing a "change of format" is not transformative).[6] The second and third fair use factors likewise favor Fox. The copyrighted programs at issue consist

---

[6] The first factor also favors Fox because Aereo's service is undisputedly commercial: Aereo charges its customers a fee to provide them with access to live broadcast television programs over the Internet. *See* SUF 8-9 and Aereo Response; *see also* Fox Cross-Motion at 15.

8

of comedies and dramas – expressive works "within the core of copyright's protective purposes." *Campbell*, 510 U.S. at 586. And copying the programs in their entirety weighs heavily against fair use where, as here, the use is non-transformative. *E.g.*, *Infinity*, 150 F.3d at 109; *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349, 352 (S.D.N.Y. 2000); *see also* Fox Cross-Motion at 15. For the fourth factor, Aereo ignores its burden and severely misreads the Supreme Court's *Campbell* decision in the process. Contrary to Aereo's assertion, in *Campbell* the Court preserved the presumption of market harm for commercial uses of copyrighted works, first recognized in *Sony*, in the context of *non*-transformative uses of the works. *See* 510 U.S. at 591. As the Court explained, when a commercial use duplicates the original in its entirety, the copy "serves as a market replacement for it, making it likely that cognizable market harm to the original will occur." *Id.*; *Davis v. The Gap, Inc.*, 246 F.3d 152, 176 (2d Cir. 2001) (same); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 550-51 (S.D.N.Y. 2008) (same).[7]

In response, all that Aereo musters is a statement by plaintiffs that they have not suffered "measurable, quantifiable" harm to date from Aereo's nascent service (Aereo SAMF 15; Hosp. Decl. Exs. 22, 23). But that "fact" is immaterial. As the Supreme Court explained in *Sony*, "[a]ctual present harm need not be shown; such a requirement would leave the copyright holder with no defense against predictable damage." 464 U.S. at 451 (all that the copyright holder is required to show is "some meaningful likelihood that future harm exists").[8]

Instead of meeting its burden of proof on fair use, Aereo attempts to invoke the "policy considerations" that supposedly guided the Supreme Court's analysis in *Sony* and the "public

---

[7] *See also Robinson v. Random House*, 877 F. Supp. 830, 843 (S.D.N.Y. 1995) ("[w]hen a secondary work is substantially a nontransformative duplication of the original that was made for commercial purposes, there is a presumption or inference of market harm to the original work") (citing *Campbell*, 510 U.S. at 591).

[8] *See* Response to SAMF 14. The only other "evidence" that Aereo submits – regarding Nielsen ratings measurement – is utterly irrelevant, for two reasons. First, the testimony that Aereo quotes (from a non-Fox witness) does not even refer to Aereo's Internet streaming service; it instead responds to an abstract question about "over the air antennas." Opp. at 16-17; SAMF 15. Second, Aereo concedes that, in any event, television viewing by *Aereo* subscribers is *not* being measured by Nielsen ratings. *See* Opp. at 17; SAMF 16; Response to SAMF 15-16.

9

interest" standard in the Communications Act of 1934 for broadcaster licensing by the FCC. Neither has any bearing on this Motion.

Aereo fails to cite any authority applying *Sony*'s "policy considerations" to immunize the copying activities of a commercial intermediary like Aereo. To the contrary, courts consistently have distinguished between what consumers can lawfully do on their own and what businesses can do for large numbers of consumers for profit. That is why a consumer can use a VCR to record a movie to watch later, but a business cannot use a VCR to make thousands of copies of a movie and sell them. *See Infinity*, 150 F.3d at 112 ("courts have rejected attempts by for-profit users to stand in the shoes of their customers" for purposes of the fair use defense); *see also Zomba Enters. v. Panorama Records*, 491 F.3d 574, 582-83 (6th Cir. 2007) (commercial CD makers could not benefit from fair use arguments its customers might have); *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 797 (9th Cir. 1992) (seller of unauthorized tapes of news footage liable for direct infringement, regardless that customers made fair uses of tapes after purchase).

Aereo's "public interest" argument is also wildly off base. The broadcaster licensing provision of the Communications Act that Aereo cites refers to a broadcaster's obligation to provide programming *content* that serves the "public interest, convenience and necessity." 47 U.S.C. § 307. Aereo cannot cite any authority that has ever applied this provision to require a broadcaster to assist a competitor or allow a business to retransmit its broadcast signal without statutory retransmission consent,[9] or to require a *copyright owner* to permit unauthorized copying by a competing business.[10]

---

[9] To the contrary, courts repeatedly have recognized that broadcasters are free to act in their own economic interests as free market competitors, notwithstanding the Communication Act's public interest standard. *See Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 709-10 (1984); *National Ass'n of Indep. Television Producers & Distribs. v. FCC*, 516 F.2d 526, 532-33 (2d Cir. 1975); *Crowder v. FCC*, 399 F.2d 569, 572 (D.C. Cir. 1968).

[10] Indeed, one of the two moving parties here, and the primary copyright holder, is Twentieth Century Fox Film Corporation, which is not a broadcaster at all. *See* Response to SAMF 13.

DATED:  July 23, 2013                                      Respectfully submitted,


                                                         By:_____/s/_____
                                                              Richard L. Stone



Richard L. Stone (*pro hac vice*)
Kenneth D. Klein (*pro hac vice*)
Julie A. Shepard (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street
Suite 3600
Los Angeles, CA 90071-2054
Telephone (213) 239-5100
Facsimile (213) 239-5199

*Attorneys for Plaintiffs*

11