UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

AMERICAN BROADCASTING COMPANIES, INC.
ET AL.,

       Plaintiffs,

   -v-

AEREO, INC.,

       Defendant,

----------------------------------------------------------------X

WNET ET AL.,

       Plaintiffs,

   -v-

AEREO, INC.,

       Defendant,

----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: OCT 2 3 2014

12-cv-1540

OPINION AND ORDER

12-cv-1543

ALISON J. NATHAN, District Judge:

  In an Opinion and Order dated July 11, 2012, this Court, relying on the Second Circuit's

decision in *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008)

("*Cablevision*"), denied Plaintiffs' motion to "enjoin Defendant Aereo, Inc. ('Aereo') from

engaging in those aspects of its service that allow its users to access 'live' copyrighted content

over the internet." *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 375 (S.D.N.Y.

2012) ("*Aereo I*"). Plaintiffs appealed, and on April 1, 2013, the Second Circuit affirmed this

Court's ruling. *WNET v. Aereo, Inc.*, 712 F.3d 676, 696 (2d Cir. 2013) ("*Aereo II*"). Plaintiffs

sought review by the Supreme Court of the United States, and Aereo joined the Plaintiffs in

urging the Supreme Court to hear the case. On June 25, 2014, the Supreme Court reversed the

judgment of the Second Circuit and remanded the case for further proceedings consistent with its

opinion. *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2511 (2014) ("*Aereo III*"). Now,

1

consistent with the Supreme Court's decision in *Aereo III* and with the benefit of supplemental briefing and oral argument, the Court GRANTS Plaintiffs' motion for a preliminary injunction.

## I.   BACKGROUND

The factual background of this case is fully set forth in *Aereo I*, *Aereo II*, and *Aereo III*. The Court assumes familiarity with this material.

When this matter was last before this Court, the Plaintiffs sought a preliminary injunction covering retransmission of their copyrighted programming while that programming is still being broadcast based on a violation of their public performance right. In defense, Aereo argued that its retransmission of Plaintiffs' copyrighted programming did not constitute a public performance under the Copyright Act because of the way in which its service made individual copies of the programming from individually designated antennas at the direction of its users. Aereo also argued that Plaintiffs would not suffer irreparable harm if it continued to operate during the pendency of the action. The Court held a hearing over two days in late May 2012 at which it received evidence relating to the technical operation of Aereo's service and harm to both parties. Based on prevailing Second Circuit case law regarding the transmit clause and this Court's conclusions regarding harm, the Court denied Plaintiffs' motion to preliminarily enjoin Aereo from retransmitting Plaintiffs' copyrighted programming while that programming is still being broadcast. Plaintiffs appealed to the Second Circuit, which affirmed this Court's ruling. Plaintiffs then sought review in the Supreme Court, which addressed "whether respondent Aereo, Inc., infringes [Plaintiffs'] exclusive right by selling its subscribers a technologically complex service that allows them to watch television programs over the Internet at about the same time as the programs are broadcast over the air." *Aereo III*, 134 S. Ct. at 2503. Concluding that it does, the Supreme Court reversed the Second Circuit.

Thus, logic dictates that Plaintiffs should prevail on their request for a preliminary injunction without further ado. But Aereo has interposed a number of new arguments in opposition to the preliminary injunction and Plaintiffs have asked to broaden the scope of the preliminary relief from what they earlier sought. First, Aereo argues that in light of the Supreme

Court's holding in *Aereo III*, it should be considered a "cable system" that is entitled to a compulsory license under § 111 of the Copyright Act, 17 U.S.C. § 111. Second, even if it is not a cable system for purposes of § 111, Aereo argues that it should be considered a mere conduit entitled to the safe harbor protection of § 512(a) of the Copyright Act, 17 U.S.C. § 512(a). Third, even if it is not a cable system entitled to a compulsory license or a mere conduit entitled to a safe harbor, Aereo argues that a preliminary injunction should not issue because Plaintiffs presently are unable to show any imminent irreparable harm. Finally, Plaintiffs contend that the scope of the preliminary injunction should be expanded to cover all retransmissions of their copyrighted content, regardless of when those retransmissions occur, while Aereo argues that the scope of the preliminary injunction should be narrowed to a modest delay, such as ten minutes, following the commencement of a broadcast. The Court addresses each of these arguments in turn.

## II.   DISCUSSION

Before addressing the merits of Aereo's new arguments on remand, the Court briefly discusses whether these defenses are properly raised at this stage. Normally, a party cannot interpose new claims or defenses in its briefs. *Cf. Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (collecting cases noting that a party generally cannot amend its pleadings through its opposition brief). Rather, the proper course generally is amendment of a party's pleadings under Federal Rule of Civil Procedure 15(a); indeed, one of the purposes of Rule 15(a) amendments is "to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint or answer." 6 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1473 (3d ed. 2010).

Plaintiffs initially asserted in a footnote in their opening brief that the § 111 defense is barred because "Aereo would need to move for leave to amend its answer to assert [this] defense and leave to do so would need to be granted." Pls.' Br. at 8 n.3. But at oral argument, Plaintiffs urged the Court to reach all of Aereo's defenses at this stage of the litigation and so the Court

understands Plaintiffs to have waived their earlier procedural objection. *See* 10/15/14 Tr. 9:18-10:4.

### A.      Plaintiffs' Likelihood of Success on the Merits

Turning to the substance of Aereo's arguments, Aereo contends that Plaintiffs are not entitled to an injunction because Plaintiffs remain unable to "demonstrate[] 'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff's] favor.'" *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004)). The Court disagrees. In light of the Supreme Court's holding, Plaintiffs have demonstrated a likelihood of success on the merits, and Aereo has not demonstrated a likelihood of success on the merits of its novel affirmative defenses.

### 1.      Section 111's Compulsory License

Among the bundle of rights accorded to a copyright owner in the Copyright Act is the exclusive right to "perform the copyrighted work publicly." 17 U.S.C. § 106(4). Congress defined that term in the "transmit clause" as including the right to "transmit or otherwise communicate a performance . . . of the [copyrighted] work . . . to the public, by means of any device or process, whether the members of the public capable of receiving the performance . . . receive it in the same place or in separate places and at the same time or at different times." *Aereo III*, 134 S. Ct. at 2502 (quoting 17 U.S.C. § 101). After analyzing the history of the 1976 Copyright Act in *Aereo III*, the Supreme Court held that Aereo publicly performs the Plaintiffs' copyrighted works when it retransmits those works while the broadcasts are still being broadcast. The Supreme Court based this conclusion on the fact that the 1976 Copyright Act's transmit clause was intended, in part, to overrule two prior rulings—*Fortnightly Corp. v. United Artists Television, Inc.*, 392 U.S. 390 (1968) and *Teleprompter Corp. v. Columbia Broadcasting System, Inc.*, 415 U.S. 394 (1974)—that had held community antenna television ("CATV") systems were beyond the reach of the then-existing Copyright Act. For the Supreme Court, this legislative abrogation indicated that "an entity that acts like a CATV system itself performs, even if when

4

doing so, it simply enhances viewers' ability to receive broadcast television signals." *Aereo III*, 134 S. Ct. at 2506.  The Supreme Court concluded that Aereo performs in ways similar to CATV systems when it retransmits broadcasts while those broadcasts are still being broadcast, and therefore its services are similarly covered by the transmit clause.  Doing its best to turn lemons into lemonade, Aereo now seeks to capitalize on the Supreme Court's comparison of it to a CATV system to argue that it is in fact a cable system that should be entitled to a compulsory license under § 111.  This argument is unavailing for a number of reasons.

To begin with, Aereo's argument suffers from the fallacy that simply because an entity performs copyrighted works in a way similar to cable systems it must then be deemed a cable system for all other purposes of the Copyright Act.  The Supreme Court's opinion in *Aereo III* avoided any such holding.

Indeed, the Supreme Court consistently stated throughout its opinion that Aereo's similarity to CATV systems informed its conclusion that Aereo performs, not that Aereo is a cable system.  *See, e.g., id.* at 2506 ("[A]n entity that acts like a CATV system itself performs . . . ."); ("Aereo's activities are substantially similar to those of the CATV companies that Congress amended the Act to reach."); *id.* at 2510 ("For one thing, the history of cable broadcast transmissions that led to the enactment of the Transmit Clause informs our conclusion that Aereo 'perform[s],' but does not determine whether different kinds of providers in different contexts also 'perform.'").  The earlier CATV cases had held that broadcasters perform while viewers do not and that third-party providers of amplifying equipment fell on the viewer side of the line.  *Id.* at 2505.  Congress's new definition of "perform" under § 101 was intended to erase this distinction: "[u]nder this new language, *both* the broadcaster *and* the viewer of a television program 'perform,' because they both show the program's images and make audible the program's sounds."  *Id.* at 2506 (citing H. R. Rep. No. 94-1476, p. 63 (1976)).  And Congress's addition of the transmit clause further clarified that "an entity performs publicly when it 'transmit[s] . . . a performance . . . to the public.'"  *Id.*  These two amendments captured entities like CATV systems that the Supreme Court had earlier held were mere equipment providers that

only enhanced viewers' viewing capabilities. Congress also added § 111 to regulate cable companies' public performances of copyrighted works. Together, the definition of perform, the transmit clause, and § 111 evinced congressional intent to bring the activities of cable systems within the purview of the Copyright Act. Congress thereby intended to overrule the Supreme Court's holdings in *Fortnightly* and *Teleprompter* regarding what it means to perform, and at the same time it established a structure for regulating cable systems, like CATV systems, that perform publicly.

But the Supreme Court in *Aereo III* did not imply, much less hold, that simply because an entity performs publicly in much the same way as a CATV system, it is necessarily a cable system entitled to a § 111 compulsory license. *Accord CBS Broad., Inc. v. FilmOn.com, Inc.*, No. 10 Civ. 7532 (NRB), 2014 U.S. Dist. LEXIS 101894, at *11 (S.D.N.Y. July 24, 2014) ("*FilmOn*") ("A series of statements that Aereo . . . is very similar to a cable system is not the same as a judicial finding that Aereo and its technological peers are, in fact, cable companies entitled to retransmission licenses under § 111 of the Copyright Act."). Stated simply, while all cable systems may perform publicly, not all entities that perform publicly are necessarily cable systems, and nothing in the Supreme Court's opinion indicates otherwise.

Implicitly acknowledging that the Supreme Court's opinion did not expressly hold that Aereo is a cable system, much less that it is entitled to the § 111 compulsory license, Aereo argues that such a holding can be inferred from the questions and statements of the Justices at oral argument. But the commentary of individual Justices at oral argument has no such legal effect; only the Justices' written opinions have the force of law. Thus, Aereo's references to oral argument provide no basis for this Court to interpret the Supreme Court's opinion and will not be considered here. In any event, Aereo's references to the statements of the Justices at oral argument cut against its position because the statements indicate that the Justices were certainly aware of the possibility of the § 111 defense and did not address it in the opinion. This awareness at oral argument coupled with silence in the opinion could just as easily imply that the Court did not conclude that the defense was applicable on the facts here. Furthermore, the full

quotation from Justice Sotomayor that Aereo relies on asks: "Do we have to go to all of those other questions if we find that they're a cable company? We say they're a cable company, they get the compulsory license." Hosp Decl. Ex. 1 (04/22/14 Oral Arg. Tr. 5:1-4). The Supreme Court reached the "other questions" and said nothing about Aereo being a cable company for purposes of a § 111 license, further undermining Aereo's argument that the Supreme Court concluded that it is a cable company entitled to such a license. Again, the Justices' questions and commentary at oral argument have no legal effect, but even if they did, they would provide no support for Aereo's position.

The void left by *Aereo III*'s silence on § 111 is filled by on-point, binding Second Circuit precedent, which has already resolved the issue presented here: "whether . . . a service that streams copyrighted television programming live and over the Internet[] constitutes a cable system under § 111 of the Copyright Act." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 279 (2d Cir. 2012). Concluding that "Congress did not . . . intend for § 111's compulsory license to extend to Internet transmissions," *id.* at 282, the Second Circuit determined that deference should be accorded to the Copyright Office's interpretation of § 111 under the two-step process outlined in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). More precisely, the Second Circuit held that:

> (1) the statutory text is ambiguous as to whether ivi, a service that retransmits
> television programming over the Internet, is entitled to a compulsory license; (2)
> the statute's legislative history, development, and purpose indicate that Congress
> did not intend for § 111 licenses to extend to Internet retransmissions; (3) the
> Copyright Office's interpretation of § 111—that Internet retransmission services
> do not constitute cable systems under § 111—aligns with Congress's intent and is
> reasonable . . . .

*Id.* at 284. Aereo contends that the Supreme Court implicitly overruled *ivi* when it compared Aereo to a CATV system.[1] But the Supreme Court did not mention *ivi* or *ivi*'s holding, and as discussed extensively above, nothing in the Supreme Court's opinion can be read as abrogating

---

[1] Aereo variously contended at oral argument that it did not believe *Aereo III* overruled *ivi*'s holding, 10/15/14 Tr. 34:16-24, and that *Aereo III* did overrule *ivi*'s holding, *id.* at 34:25-36:4, depending on how one framed the holding. The Court understands the Second Circuit to mean what it said when it stated that "applying *Chevron*, we hold that . . . Congress did not intend for § 111 licenses to extend to Internet retransmissions . . . ." *ivi*, 691 F.3d at 284.

*ivi* because the Supreme Court limited its holding to a finding that Aereo performs like a cable system for purposes of the transmit clause, not that it is a cable system entitled to a § 111 license. Thus, *ivi* remains good law and binding precedent here. *Accord FilmOn*, 2014 U.S. Dist. LEXIS 101894, at *12 ("Moreover, given that *Aereo* never mentioned *ivi*, let alone purported to overrule it, *ivi* remains controlling precedent here." (citing *United States v. Mason*, 412 U.S. 391, 395 (1973)).

Aereo also argues that even if *ivi* remains good law, the case is still distinguishable from the facts here based on what it believes is the limited geographic reach of Aereo's services; i.e., Aereo's "technology does not give its subscribers access to broadcasts outside of their home DMA [Designated Market Area] . . . ." Opp'n at 16. Before addressing the legal significance of this point, the Court notes that the technological safeguards designed to ensure that subscribers cannot access broadcasts outside of their home DMA are easily overridden. *See, e.g.,* 05/31/2012 Tr. 331:13-332:4 (noting that an Aereo user associated with one DMA, such as Boston, can access content even while outside the DMA, such as from the Virgin Islands). Setting that aside, according to Aereo, "the unrestricted nature of ivi's transmissions was the determinative fact for the Second Circuit, which noted that Section 111's compulsory license scheme was intended to support local market—rather than national market—systems." Opp'n at 16 (citing *ivi*, 691 F.3d at 282-83). To the contrary, the geographic reach of internet retransmission services was but one of many factors the Second Circuit considered in reaching its holding that § 111 does not cover internet retransmission services. In the first part of its *Chevron* analysis, the Second Circuit emphasized that "the legislative history indicates that if Congress had intended to extend § 111's compulsory license to Internet retransmissions, it would have done so expressly—either through the language of § 111 as it did for microwave retransmissions or by codifying a separate statutory provision as it did for satellite carriers." *ivi*, 691 F.3d at 282 (citing 17 U.S.C. §§ 111, 119). In the second part of its *Chevron* analysis, the Second Circuit noted that "[t]he Copyright Office has consistently concluded that Internet retransmission services are not cable systems and do not qualify for § 111 compulsory licenses,"

and cited pronouncements from the Copyright Office to this effect in 1997, 2000, and 2008. *Id.* at 283. Only at the end of its step two analysis did the Second Circuit note that "[m]ore broadly, the Copyright Office has maintained that § 111's compulsory license for cable systems is intended for localized retransmission services; under this interpretation, Internet retransmission services are not entitled to a § 111 license." *Id.* at 284 (citing 57 Fed. Reg. 3284 (Jan. 29, 1992) (codified at 37 C.F.R. § 201.17)). This reference to the possible geographic reach of ivi's system provided an additional point of distinction between Internet retransmission and traditional cable systems, but it was not "the determinative fact" for the Second Circuit. Furthermore, that Aereo may voluntarily limit its services to certain geographic areas does not change the fact that Internet retransmissions are still *capable* of reaching much farther afield than the localized cable systems that Congress intended § 111 to cover.[2] The upshot of *ivi*, which remains unchanged after *Aereo III*, is that "'if there were to be a compulsory license covering [Internet] retransmissions, it would have to come from newly-enacted legislation and not existing law.'" *Id.* at 283 (quoting *Copyright Broad. Programming on the Internet: Hr'g Before the Subcomm. on Courts and Intellectual Property of the Comm. on the Judiciary*, 106th Cong. 25-26 (2000) (statement of Marybeth Peters, The Register of Copyrights) (quoting *Letter of Marybeth Peters, Register of Copyrights, to the Honorable Howard Coble* (Nov. 10, 1999))).[3]

Finally, and as observed in *ivi*, this conclusion is further supported by the Copyright Act's treatment of other transmission technologies that perform publicly in ways similar to cable systems. For example, in the late 1980s, satellite carriers also attempted to argue that they

---

[2] It is worth noting that Congress addressed nationwide and localized satellite retransmissions through two distinct provisions of the Copyright Act: §§ 119 and 122.

[3] The Copyright Office has not changed its interpretation of § 111 since *ivi* and, in fact, recently informed Aereo that it "do[es] not see anything in the Supreme Court's recent decision in [*Aereo III*] that would alter" *ivi*'s conclusion that "Section 111 is meant to encompass 'localized retransmission services' that are 'regulated as cable systems by the FCC.'" Pls.' Br. Ex. C (*Letter of Jacqueline C. Charlesworth, General Counsel and Associate Register of Copyrights, to Yelena Calendar* (July 16, 2014)). Although Aereo informed the Court that the FCC may be reviewing its current regulations affecting Internet retransmissions, the Court is unaware of any actual changes that the FCC has made to date. Nor has the Court been informed that the Copyright Office has altered its interpretation of § 111—an interpretation to which the Second Circuit has already accorded *Chevron* deference—in light of the FCC's possible review of its current regulations.

should be entitled to the § 111 compulsory license based on their similarity to cable systems. *See*

*Nat'l Broad. Co., Inc. v. Satellite Broad. Networks, Inc.*, 940 F.2d 1467 (11th Cir. 1991). But

"Congress determined that 'the public interest' will be served by creating a new statutory license

that is tailored to the specific circumstances of satellite-to-home distribution." 2-8 Melville B.

Nimmer and David Nimmer, *Nimmer on Copyright* § 8.18[F][1][*a*] (2014) (citing H.R. Rep. 100-

887(I), 100th Cong., 2d Sess. 1988, 1988 U.S.C.C.A.N. 5577, 1988 WL 169834 (Leg.Hist.), p.

14)). Consequently, Congress passed the Satellite Home Viewer Act of 1988, which created an

"interim" compulsory licensing scheme under § 119 of the Copyright Act akin to the compulsory

licensing scheme for cable systems under § 111. *See generally* 2-8 *Nimmer on Copyright* § 8.18.

Although originally set to expire in 1994, the interim license has been continuously renewed ever

since.[4] Congress also expressly amended § 111 in 1994 to add "'microwave' as an acceptable

communications channel for retransmissions.'" *ivi*, 691 F.3d at 282 (citing § 111(f)(3)). These

statutory amendments only further confirm that not all entities that perform publicly in ways

similar to cable systems are entitled to the § 111 license.

### 2.    Section 512(a)'s Safe Harbor

Aereo next argues that its "Watch Now" feature falls within the § 512(a) safe harbor as a

"transitory digital network communication." "As used in subsection (a), the term 'service

provider' means an entity offering the transmission, routing, or providing of connections for

digital online communications, between or among points specified by a user, of material of the

user's choosing, without modification to the content of the material as sent or received."

§ 512(k)(1)(A).[5] Aereo's opposition brief only declares that it qualifies as a service provider, but

does not explain how it satisfies the statutory definition. The Second Circuit has noted, for

example, that to qualify as a service provider for purposes of § 512(a), an entity must be a mere

"conduit." *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39 (2d Cir. 2012). The Eighth

---

[4] It is currently set to expire on December 31, 2014. 2-8 *Nimmer on Copyright* § 8.18[F][5][*e*] (citing Pub. Law
111-175, tit. I, Sec. 107(a), 124 Stat. 1245 (May 27, 2010)).
[5] A much broader definition of service provider applies to other § 512 safe harbors. § 512(k)(1)(B); *see also Capitol
Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 510-11 (S.D.N.Y. 2013).

Circuit similarly explained that § 512(a) "limits the liability of an [Internet service provider] when it merely acts as a conduit for infringing material without storing, caching, or providing links to copyrighted material." *Recording Indus. Ass'n v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 393 F.3d 771, 776 (8th Cir. 2005). As previously described, Aereo's service uses antennas to capture over-the-air broadcasts and then transcodes and buffers the broadcasts before sending them to a "server, where a copy of the program is saved to a large hard drive in a directory reserved for [a given] Aereo user." *Aereo II*, 712 F.3d at 682. In other words, Aereo stores and provides links to copyrighted material. *In Re Charter Communs., Inc.*, 393 F.3d at 776.

Plaintiffs also identified a number of ways in which Aereo fails to satisfy the five eligibility requirements applicable to § 512(a). *See* §§ 512(a)(1)-(5). For example, § 512(a)(1) states that the safe harbor will only be available if "the transmission of the material was initiated by or at the direction of a person other than the service provider." This was essentially the defense that Aereo has asserted all along: it only acts at the direction of its users, who do the "performing" when they click play on Aereo's site. The Supreme Court rejected this defense and expressly held that Aereo performs.

But the Court need not reach any of these issues because Aereo never so much as asserts in its opposition brief—or anywhere else for that matter—that it has satisfied all the eligibility conditions for the § 512 safe harbors stated in § 512(i). For example, to qualify for a § 512 safe harbor, the service provider must have in place a policy for terminating repeat infringers. § 512(i)(1)(A). Congress could not have been clearer when it said that "[t]he limitations on liability established by this section shall apply to a service provider only if the service provider" adopts, reasonably implements, and informs its subscribers of a policy providing for the termination of repeat infringers. *Id.* Failure to have in place such a policy is thus an absolute bar to asserting any defense under § 512. Aereo asserts that it satisfies the other eligibility condition under § 512(i)(1)(B), but conspicuously omits any assertion that it has a repeat infringer policy in place as required by § 512(i)(1)(A). *See* Opp'n at 18 n.19.

### B.    Irreparable Harm

Aereo next argues that the Court should revisit its earlier findings regarding Aereo's harm to Plaintiffs' retransmission consent negotiations and harm caused by the inability of Nielsen to measure Aereo's viewership, because it contends that there is no *present* basis for a finding that Plaintiffs will be irreparably harmed on these two grounds.  The Court first notes that Aereo did not interlocutorily cross-appeal this Court's preliminary irreparable harm findings and so the Court need not revisit its earlier factual conclusions regarding Aereo's likely damage to Plaintiffs for purposes of entry of the *preliminary* injunction.[6]  Aereo may soon re-litigate the issue of irreparable harm to Plaintiffs when the Court considers the possibility of a permanent injunction.

Second, Aereo does not challenge any of the Court's other findings of irreparable harm to Plaintiffs based on loss of subscribers due to cord cutting, loss of control over copyrighted content, and damage to relationships with content providers, advertisers, or licensees. *Aereo I*, 674 F. Supp. 2d at 397-99.  Thus, even putting aside the two factual findings that Aereo now seeks to relitigate, there is still substantial evidence of irreparable harm to Plaintiffs that Aereo does not challenge.

Third, and perhaps most importantly, the Court's earlier conclusion that the balance of hardships did not tip decidedly in Plaintiffs' favor was driven largely by its conclusion that Plaintiffs were unlikely to succeed on the merits. *Id.* at 403.  The Court earlier found that Aereo would suffer significant hardship if an injunction issued as this would likely mean the end of its

---

[6] Aereo states in its opposition brief that "the Court must make *current* findings on whether there is a *present* 'threat' of 'imminent and non-speculative' irreparable harm sufficient to support a preliminary injunction," Opp'n Br. at 19, and cites a number of cases, none of which support this proposition.  In *Agostini v. Felton*, the Supreme Court stated that "it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.'"  521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk Cnty.*, 502 U.S. 367, 384 (1992)).  The present circumstances, involving neither a permanent injunction nor a Rule 60(b)(5) motion for relief from such an injunction, are factually inapposite.  In *NAACP v. North Hudson Regional Fire & Rescue*, the Third Circuit remanded the case to the district court and instructed it "to evaluate its factual and legal findings" in light of an intervening decision.  707 F. Supp. 2d 520, 523 (D.N.J. 2010).  Similarly, in *City of Pontiac Retired Employees Association v. Schimmel*, the Sixth Circuit remanded the case to the district court with specific instructions to "consider whether injunctive relief is proper in light of the equitable considerations now facing the parties and the public."  751 F.3d 427, 433 (6th Cir. 2014).  The Second Circuit issued no such instructions here.

business. *See Aereo II*, 712 F.3d at 696 (citing *Aereo I*, 874 F. Supp. 2d at 397-403). But, as the Second Circuit has held, "[i]t is axiomatic that an infringer of a copyright cannot complain about the loss of ability to offer its infringing product." *ivi*, 691 F.3d at 287. The Supreme Court has concluded that Aereo performs publicly when it retransmits Plaintiffs' content live over the Internet and thus infringes Plaintiffs' copyrighted works. In light of this conclusion, Aereo cannot claim harm from its inability to continue infringing Plaintiffs' copyrights. In addition, in light of the fact that Plaintiffs have shown a likelihood of success on the merits rather than just sufficiently serious questions going to the merits, they need no longer show that the balance of hardships tips *decidedly* in their favor. *Salinger*, 607 F.3d at 79; *see also Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). Therefore, even without addressing the two factual findings that Aereo seeks to reopen, Aereo cannot claim significant hardship if an injunction issues, while Plaintiffs can still claim harm if an injunction does not issue. Thus, the balance of hardships tips in Plaintiffs favor.[7]

### C.     The Preliminary Injunction's Scope

As this Court noted in *Aereo I*, the preliminary injunction sought by the Plaintiffs was "quite limited" in scope, as Plaintiffs "move[d] to enjoin [Aereo] from engaging in those aspects of its service that allow its users to access 'live' copyrighted content over the internet." 874 F. Supp. 2d at 375.[8] That was the scope of the injunction sought at the time of the evidentiary hearing held by this Court and at the time this Court issued its decision on that preliminary injunction motion in *Aereo I*. The Second Circuit similarly understood Plaintiffs' preliminary injunction motion to be limited to "barring Aereo from transmitting programs to its subscribers

---

[7] Both parties filed multiple declarations from various experts and individuals regarding the two showings of harm that Aereo seeks to challenge. The Court determined that it did not need to revisit its earlier findings to conclude that the balance of hardships tips in Plaintiffs' favor, and so it did not rely on any of these declarations in resolving the issues raised in the supplemental briefing. Because they are not properly before the Court on remand following the Supreme Court's reversal of this Court's denial of the preliminary injunction, they are ordered struck from the record at this stage.

[8] *See also* 05/31/2012 Tr. 391:17-392:7 ("So what we'll do is, as you've articulated it, the scope of the injunction you seek is with respect to transmissions that are being transmitted by Aereo while your clients' content is still being live broadcasted. That's what you're after. That's what you are defining as the public performance.").

while the programs are still airing . . . ." *Aereo II*, 712 F.3d at 680.  Likewise, the narrow issue before the Supreme Court was "whether respondent Aereo, Inc., infringes [Plaintiffs'] exclusive right by selling its subscribers a technologically complex service that allows them to watch television programs over the Internet at about the same time as the programs are broadcast over the air." *Aereo III*, 134 S. Ct. at 2503.  Thus, at every stage of litigating the *preliminary* injunction motion, this Court, the Second Circuit, and the Supreme Court understood Plaintiffs' motion to be limited in scope to barring the retransmission of Plaintiffs' copyrighted programs while those programs are still being broadcast.[9]  Now, however, Plaintiffs seek to preliminarily enjoin Aereo "from streaming, transmitting, retransmitting, or otherwise publicly performing any Copyrighted Programming over the Internet (through websites such as aereo.com), or by means of any device or process throughout the United States of America." Pls.' Br. Ex. A ([Proposed] Preliminary Injunction).  This language captures the retransmission of Plaintiffs' copyrighted works while still being broadcast, that is live or near-live retransmission, but could also capture the entirely time-shifted retransmission of Plaintiffs' copyrighted works that was beyond the scope of the preliminary injunction motion.

Plaintiffs contend that the Supreme Court's reasoning in *Aereo III* "makes clear that Aereo's retransmission of the same programs to its subscribers are public performances, regardless of whether the retransmissions are made at the 'same time' or at 'different times.'" Pls.' Br. at 13.  Plaintiffs may have a valid argument that the Supreme Court's reasoning casts doubt on any distinction between near-simultaneous and fully time-shifted retransmission of copyrighted works for the purposes of determining whether Aereo performs publicly.  But the Supreme Court was careful to limit its holding to the case that the Plaintiffs decided to put before this Court, the Second Circuit, and the Supreme Court at this preliminary injunction stage—

---

[9] Plaintiffs not only limited the scope of their preliminary injunction motion, they also limited the grounds on which it rested. *See, e.g., Aereo II*, 712 F.3d at 686 n.9 ("Plaintiffs assert that Aereo's transmissions of recorded programs when the original program is no longer airing on broadcast television are also public performances and that Aereo's system infringes other exclusive rights granted by the Copyright Act, such as the reproduction right.  Plaintiffs did not, however, present these claims as a basis for a preliminary injunction.  They are therefore not before us and we will not consider them.").

namely, a preliminary injunction request involving near-simultaneous retransmissions. On this point, the Supreme Court was clear: "The subscriber may instead direct Aereo to stream the program at a later time, but that aspect of Aereo's service *is not before us*." 134 S. Ct. at 2503 (emphasis added). And there may be both factual and legal nuances unique to fully time-shifted retransmission that have not been fleshed out that may influence this Court's application of the Supreme Court's holding to what is essentially the remote DVR aspect of Aereo's operations. *See, e.g., id.* at 2517 (Scalia, J., dissenting) ("But it is impossible to say how the issue will come out under the Court's analysis, since cable companies did not offer remote recording and playback services when Congress amended the Copyright Act in 1976.").

Therefore, while Plaintiffs may have a viable argument that even Aereo's fully time-shifted retransmission of Plaintiffs' copyrighted works violates Plaintiffs' public performance right, the Court will not reach the issue at this preliminary stage of the litigation. Plaintiffs will be held to their earlier decision, strategic or otherwise, to seek a preliminary injunction limited in scope to enjoining retransmission of their copyrighted works while the works are still being broadcast.

Likewise, Aereo cannot limit the scope of the preliminary injunction to anything short of the complete airing of the broadcast despite its contention at oral argument that the Supreme Court intended "near-live retransmission" to mean something less than a ten-minute delay. *See, e.g.,* 10/15/14 Tr. 27:22-24 ("So that nothing is transmitted within ten minutes of the beginning of the program, for example. That would be one way theoretically to handle it."). The preliminary injunction that was before the Supreme Court contemplated enjoining retransmission of Plaintiffs' copyrighted works while the works are still being broadcast and that is the injunction that will issue now. The questions involving the scope of the *permanent* injunction that Plaintiffs seek in this litigation can be addressed quickly, and finally, by this Court in short order following the close of discovery. As a matter of sound case management, the Court declines to address the broader scope question now, before the factual record is closed, and without the benefit of fuller briefing on the matter.

Plaintiffs also seek a nationwide injunction as provided in § 502(b) of the Copyright Act. 17 U.S.C. § 502(b) (stating that an injunction granted under § 502(a) "shall be operative throughout the United States"). Following this Court's initial denial of Plaintiffs' request for a preliminary injunction, but prior to *Aereo III*, other courts across the country granted injunctions against Aereo and entities offering similar services. Based on principles of comity, those courts declined to issue nationwide injunctions that might conflict with then-prevailing Second Circuit law. *See Cmty. Television of Utah v. Aereo, Inc.*, No. 2:13CV910DAK, 2014 U.S. Dist. LEXIS 21434, at *28-29 (D. Utah Feb. 19, 2014) (limiting injunction to the Tenth Circuit in light of conflicting decisions of the Second Circuit and District of Massachusetts); *Fox TV Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 51-52 (D.D.C. 2013) (excluding the Second Circuit from a nationwide injunction applied to a service that is "technologically analogous" to Aereo's); *Fox TV Stations v. BarryDiller Content Sys.*, 915 F. Supp. 2d 1138, 1148 (C.D. Cal. 2012) (limiting injunction to the Ninth Circuit). Following the Supreme Court's decision, this Circuit's law with respect to Aereo's live or near-live retransmission no longer conflicts with the law of its sister circuits. Plaintiffs are entitled to a nationwide injunction.

## III.   CONCLUSION

In light of the Supreme Court's decision, Plaintiffs are now able to demonstrate a likelihood of success on the merits. The balance of hardships also now tips in their favor and, as previously held, an injunction would not disserve the public interest, *Aereo I*, 874 F. Supp. 2d at 403-404. Therefore, the Court hereby holds that Plaintiffs' motion for a preliminary injunction barring Aereo from retransmitting programs to its subscribers while the programs are still being broadcast is GRANTED. An order granting the preliminary injunction will issue separately.

Within two weeks of this Opinion and Order, the parties shall submit a joint letter outlining how the case should proceed. In light of the extensive discovery period that has already taken place, this Court intends to set a rapid schedule for the completion of discovery, so that the case may proceed expeditiously to the final merits stage.

The Clerk of Court is directed to strike Dkt. Nos. 326, 327, 331, 333, and 334. *See supra* note 7. For the reasons stated in Plaintiffs' September 10, 2014 letter that was submitted via email pursuant to Rules 1.B and 4.A of this Court's Individual Practices in Civil Cases, Plaintiffs' request to file redacted versions of their reply memorandum of law is GRANTED. Plaintiffs shall promptly file the redacted version of their reply memorandum of law, but shall not file any of the supplemental declarations or exhibits submitted with the reply memorandum of law that go to showings of harm that the Court will not consider at this stage. Plaintiffs shall also promptly file the September 10, 2014 letter with appropriate redactions of commercially sensitive information as necessary. The Court will file the unredacted reply memorandum of law and the September 10, 2014 letter under seal. Dkt. No. 338 is resolved as moot.

SO ORDERED.

Dated: Oct 23, 2014
       New York, New York

ALISON J. NATHAN
United States District Judge

17